

**FILED**

# UNITED STATES DISTRICT COURT

AUG 1 6 2007

**EASTERN**   DISTRICT OF   **CALIFORNIA**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

oOo

### UNITED STATES OF AMERICA

v.

### IFTIKHAR AHMAD, MANPREET SINGH, and ROBERTO ORTIZ ALFARO

# SEALED

## CRIMINAL COMPLAINT

CASE NUMBER:

## 2:07 - MJ - 0261   DAD

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

▶ On or about September 29, 2003, in the Eastern District of California, and in connection with Rebecca W's purchase of real property at 533 N. Oro Street, Stockton, California, IFTIKHAR AHMAD engaged in, and aided and abetted, identity fraud in violation of Title 18, United States Code, Sections 2 and 1028(a);

▶ On or about October 13, 2004 and January 13, 2005, in the Eastern District of California, and in connection with the sale of real properties located at 952 N. Solari Avenue, Stockton, California and 1306 S. American Street, Stockton, California, defendants IFTIKHAR AHMAD and MANPREET SINGH committed two counts of mail fraud in violation of Title 18, United States Code, Sections 2 and 1341;

▶ On or about November 16, 2004 and January 11, 2005, in the Eastern District of California, and in connection with the sale of real properties located at 729 E. Sonora Street, Stockton, California and 2223 Mistletoe, Stockton, California, defendants IFTIKHAR AHMAD and ROBERTO ORTIZ ALFARO committed two counts of mail fraud in violation of Title 18, United States Code, Sections 2 and 1341;

▶ On or about September 30, 2003, IFTIKHAR AHMAD engaged in a monetary transaction involving more than $10,000 in proceeds of specified unlawful activity in violation of Title 18, United States Code, Section 1957, when he caused a check in the amount of approximately $142,029.01 to be deposited into I &R Investment Properties LLC's account at Bank of Stockton (#2114193220);

▶ On or about November 28, 2003, IFTIKHAR AHMAD engaged in a monetary transaction involving more than $10,000 in proceeds of specified unlawful activity in violation of Title 18, United States Code, Section 1957, when he caused a check in the amount of approximately $156,105.67 to be deposited into the I & R Investment Properties LLC's account at Bank of Stockton (#2114193220).

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

▸ **See Affidavit in Support of Complaint**

**X**  Continued on the attached sheet and made a part hereof.

Signature of Complainant KATHLEEN A. NICOLLS
Special Agent, Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

_8/15/07_

Date

**at**   Sacramento, California

City and State

DALE A. DROZD
United States Magistrate Judge

Name and Title of Judicial Officer

Signature of Judicial Officer

**Table of Contents for**
**Search and Arrest Warrants**
**and Criminal Complaint**

I.   INTRODUCTION . . . . . . . . . . . . . . . . .   1

     A.   Agent's Background and Experience . . . . .   1

     B.   Overviewf Investigation . . . . . . . . .   3

     C.   Premises to Be Searched . . . . . . . . . .   5

     D.   Charges . . . . . . . . . . . . . . . . . .   6

II.  THE FRAUD SCHEME . . . . . . . . . . . . . . .   8

     A.   Participants in the Scheme . . . . . . . .   8

          1.   The Family Members . . . . . . . . . .   12

          2.   The Fraudulent Purchasers/Borrowers . .   14

          3.   The Real Estate Professionals . . . . .   15

     B.   Victims of the Scheme . . . . . . . . . . .   19

     C.   Real Property Transaction
          History in Stockton, CA . . . . . . . . .   21

     D.   Initiation of Investigation . . . . . . .   22

     E.   Nature and Scope of Mortgage
          Fraud Scheme . . . . . . . . . . . . . . .   24

          1.   Explanation of Real Estate
               Terms and Concepts  . . . . . . . . .   24

          2.   Commonalities in the
               Subject Transactions . . . . . . . .   28

     F.   Specific Fraudulent
          Real Property Transactions . . . . . . .   40

          1.   533 N. Oro Avenue . . . . . . . . . .   40

          2.   1214 E. Lafayette Street  . . . . . .   49

               a.   November 2003 Transaction . . . .   49

b.  Rebecca Sells Property
to I & R . . . . . . . . . . . .  53

c.  I & R Flips Property . . . . . .  54

3.  2709 Bristol Avenue . . . . . . . .  57

4.  3315 E. Vine Street . . . . . . . .  61

5.  952 N. Solari Avenue  . . . . . . .  66

6.  1306 S. American Street . . . . . .  69

7.  2503 N. Oregon Street  . . . . . . .  74

8.  7903 S. Harlan Road,
French Camp, CA . . . . . . . . . .  79

9.  729 E. Sonora . . . . . . . . . . .  82

10. 2223 E. Mistletoe . . . . . . . . .  86

G.  Other Transactions, Including
Recent Transactions . . . . . . . . .  89

1.  Other Real Estate Transactions . . . .  89

2.  Recent Sale Transactions . . . . . . .  95

a.  Eduardo Rodriguez . . . . . . .  95

b.  Oscar Rivera . . . . . . . . .  97

c.  Israel Rivera . . . . . . . . .  98

3.  Recent Purchase Transactions . . . . .  100

III.  MONEY LAUNDERING ACTIVITIES . . . . . . . .  101

A.  Domestic Money Laundering . . . . . . .  101

B.  International Money Laundering . . . . .  104

1.  Recent Transfers to Pakistan . . . . .  104

2.  Prior Checks Negotiated
in Pakistan . . . . . . . . . . . . .  104

        3.   Prior Wire Transfers to Pakistan . . . 110

IV.  FURTHER INVESTIGATION CONCERNING
        5265 BARBADOS CIRCLE . . . . . . . . . . . . 111

     A.  Public Source Information on Occupancy
         of 5265 Barbados Circle . . . . . . . . .  111

     B.  Trash Covers . . . . . . . . . . . . . .  111

     C.  Surveillance . . . . . . . . . . . . . .  118

V.   FURTHER INVESTIGATION
        REGARDING 1516 E. MARIPOSA ROAD . . . . . .  119

     A.  Public Source Information on
         Occupancy of 1516 E. Mariposa Road . . . . .  119

     B.  Undercover Activity . . . . . . . . . . .  120

VI.  THE PREMISES TO BE SEARCHED . . . . . . . . . 124

VII. SEARCH OF COMPUTERS AND COMPUTER EVIDENCE . .  132

VIII.  CONCLUSION . . . . . . . . . . . . . . . . 138

IX.  SEALING REQUEST . . . . . . . . . . . . . . . 139

**Affidavit in Support of Search
and Arrest Warrants
and Criminal Complaint**

I.   INTRODUCTION

    A.   Agent's Background and Experience.

    1.   I, Kathleen A. Nicolls, Special Agent with the Federal
Bureau of Investigation (FBI), having been duly sworn, do hereby
depose and state as follows:

    2.   I am a Special Agent with the Federal Bureau of
Investigation (FBI), presently assigned to the Sacramento office.
I have been employed as a Special Agent since September 2006.
During that time, I have received training and have experience in
the investigation of fraud and other financial crimes.  As part
of my duties and responsibilities, I investigate loan and credit
fraud, mail fraud, wire fraud, bank fraud, and money laundering
under 18 U.S.C. §§ 1014, 1341, 1343, 1344, 1956 and 1957.  Prior
to my employment as a Special Agent, I worked as a Systems
Integration Test Engineer on a contract with the IRS through the
Lockheed Martin Corporation.

    3.   In connection with this investigation, I have consulted
with numerous other state and federal law enforcement agents,
including agents from the FBI and Internal Revenue Service -
Criminal Investigations (IRS-CI).  I have also consulted with a
Special Agent of Immigration and Customs Enforcement (ICE)
regarding the legal obligations federal law imposes on

1

individuals to file a Currency and Monetary Instrument Report (CMIR) in connection with the transnational transportation, mailing or shipment of currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time from the United States to any place outside the United States. *See* 31 U.S.C. §§ 5316 & 5324(c) & 31 C.F.R. §§ 103.23 103.27(b).

4. This affidavit is based upon my personal participation in this investigation, including my review of law enforcement reports and transcripts of testimony given in the course of this investigation, my discussions with law enforcement agents, investigators, and an FBI financial analyst, and with investigators with the State Department of Real Estate and the Office of Real Estate Appraisers. I have also obtained information from the Internal Revenue Service, California Franchise Tax Board, the County of San Joaquin, and through databases containing credit and public information, credit reporting agencies, law enforcement sensitive records maintained by the FBI, searches of records maintained by the California Department of Motor Vehicles (DMV) and the California Employment Development Department (EDD), mail and trash covers, surveillance, real estate closing documents maintained by escrow companies, loan files maintained by Washington Mutual Bank F.A., and bank records maintained by depository institutions, including Bank of Stockton, Bank of America, and Bank of the West.

2

B.   Overview of Investigation.

5.   I have probable cause to believe that beginning in  or
about January 13, 1998 through the present IFTIKHAR AHMAD, I & R
INVESTMENT PROPERTIES LLC (hereinafter "I & R"), ILYAS AHMAD,
MUMRAIZ AHMAD, ALTAF MALIK, MUSHTAQ AHMAD, GONZALO ZAVALA,
ROBERTO ORTIZ ALFARO, MANPREET SINGH, JAMIE ORTIZ, GILBERTO
ROSAS, LETICIA MARIA ROSAS aka ROSA ALICIA GILBERT/MARIA
GUADALUPE SERRANO CHAVEZ, JOSE SERRANO, DEBORAH TIMMINS, DENISE
JAMES and others have engaged in a mortgage fraud scheme
involving the purchase and sale of residential real properties,
primarily in the Stockton, California area.  Many of the sales
were financed with mortgages obtained through subprime lenders.
During that period, IFTIKHAR AHMAD and a company he formed in
April 2003, I & R INVESTMENT PROPERTIES LLC ("I & R"), purchased
more than 100 residential properties and resold them, in several
instances to purchasers using stolen identities or false
documents or information.  Many of these transactions share
certain characteristics in common:  a rapid turn around between
the purchase and sale of a residential property, dramatic
increases between the purchase and sale prices, and sales
transactions by IFTIKHAR AHMAD or I & R in which the buyers
acquired the properties with either no down payment (or a small
down payment) and financed the purchase with large mortgage loans
obtained from subprime lenders.  In many of the transactions,

3

IFTIKHAR AHMAD or I & R surreptitiously provided the buyer's contribution to escrow, including funds the buyer used as a down payment. In connection with at least some sales transactions, funds from bank accounts maintained by IFTIKHAR AHMAD or I & R were used to make the buyer's monthly mortgage payments after the close of escrow, to make payments to at least one escrow officer outside of escrow, and to make payments to buyers outside of escrow. In many of these real estate transactions, the buyers defaulted on the mortgage, sometimes within one year of the date they acquired the property. The total amount of actual losses to lenders and mortgage holders has yet to be determined, but bank records document that between 2003 and 2006 IFTIKHAR AHMAD deposited into bank accounts he controlled approximately $8.6 million dollars in funds obtained from escrow closings alone. There is probable cause to believe that, in carrying out the scheme, the persons identified above committed substantive identity fraud and mail fraud violations, and conspired to commit such violations, all in violation of Title 18, U.S.C. §§ 371, 1028(a) and 1341.

6.   The investigation has disclosed that proceeds IFTIKHAR AHMAD realized from these real estate transactions were used to carry on subsequent phases of the mortgage fraud scheme, e.g., the proceeds from the sale of one property financed the purchase of another property. IFTIKHAR AHMAD and I & R also deposited the

4

mortgage fraud proceeds into bank accounts, in many instances the transactions involved more than $10,000. These funds were then subsequently used to make payments to real estate professionals, to provide a purchaser's down payment or closing costs, and to make post-sale mortgage payments on the property itself. Funds from bank accounts controlled by IFTIKHAR AHMAD (at least $484,000) were wired, transported, mailed or shipped to Pakistan and deposited into bank accounts maintained by third parties there. These transfers included three checks (totaling $120,000) in which the payee's name was left blank and the check was subsequently negotiated in Pakistan. I therefore have probable cause to believe that IFTIKHAR AHMAD and others have violated federal anti-money laundering and reporting laws that apply to the transnational transfer and transportation of funds, *i.e.*, Title 18 U.S.C. §§ 1956(a)(2), 1957, and 31 U.S.C. §§ 5316 and 5324.

C. <u>Premises to Be Searched</u>.

7.   I make this affidavit in support of the issuance of search warrants to search two premises: (1) 5265 Barbados Circle, Stockton, California, which is believed to be the residence of IFTIKHAR AHMAD, Rayhana Ahmad, and their minor children, and which is more particularly described in Attachment "A-1" hereto; and (2) the motel office located at 1506 E. Mariposa Road, Stockton California, which is believed to be a motel owned by

either ILYAS AHMAD or I & R.  Both properties are located within
the Eastern District of California, which is more particularly
described in Attachment "A-2" hereto.

8.  I have probable cause to believe that now located at the
above-described premises are instrumentalities and evidence of
criminal offenses against the Unites States, to wit, violations
of Title 18 U.S.C. §§ 371 (Conspiracy), 1014 (Loan Fraud),
1028(a) (Identity Fraud), 1341 (Mail Fraud), 1956 (Money
Laundering), 1957 (Engaging in Monetary Transactions in Property
Derived from Specified Unlawful Activity), and violations of
Title 31 U.S.C. sections 5316 & 5324(c) (Failure to File a CMIR
Report With Intent to Evade).

9.  The items to be seized are documents, records and other
evidence, as more particularly described in Attachment "B" and
incorporated herein, which are maintained at the above-described
premises, and which reflect the real estate and financial
activities of IFTIKHAR AHMAD and others described in Attachment B
for the period January 13, 1998 through the present.

D.  Charges.

10.  I also make this affidavit in support of a criminal
complaint.  The information set forth below also establishes
probable cause to believe that:

6

(1) on or about September 29, 2003, in the Eastern District of California, and in connection with Rebecca W.'s purchase of real property at 533 N. Oro Street, Stockton, CA, IFTIKHAR AHMAD engaged in, and aided and abetted, identity fraud in violation of 18 U.S.C. §§ 2 & 1028(a);

(2) on or about October 13, 2004 and January 11, 2004, in the Eastern District of California, and in connection with the sale of real properties located at 952 N. Solari Avenue, Stockton, CA, and 1306 S. American Street, Stockton, CA, defendants IFTIKHAR AHMAD and MANPREET SINGH committed two counts of mail fraud in violation of 18 U.S.C. §§ 2 & 1341.

(3) on or about November 16, 2004 and January 11, 2005, in the Eastern District of California, and in connection with the sale of real properties located at 729 E. Sonora Street, Stockton, CA and 2223 E. Mistletoe, defendants IFTIKHAR AHMAD and ROBERTO ORTIZ ALFARO committed two counts of mail fraud in violation of 18 U.S.C. §§ 2 & 1341.

(4) on or about September 30, 2003, IFTIKHAR AHMAD engaged in a monetary transaction involving more than $10,000 in proceeds of specified unlawful

7

activity in violation of 18 U.S.C. § 1957 when he caused a check in the amount of approximately $142,029.01 to be deposited into I & R Investment Properties LLC's account at Bank of Stockton (#2114193220).

(5) on or about September 30, 2003, IFTIKHAR AHMAD engaged in a monetary transaction involving more than $10,000 in proceeds of specified unlawful activity in violation of 18 U.S.C. § 1957 when he caused a check in the amount of approximately $156,105.67 to be deposited into I & R Investment Properties LLC's account at Bank of Stockton (#2114193220).

## II. THE FRAUD SCHEME

### A. Participants in the Scheme.

11. IFTIKHAR AHMAD (DOB 02/09/71) currently possesses a United States passport (#055948355) and, based on an interview conducted on April 24, 2006 by SA Gary Price, claims to be a United States citizen based on his father's status as a United States citizen. However, queries of IFTIKHAR AHMAD's name, DOB and passport information in law enforcement databases maintained by ICE do not provide IFTIKHAR AHMAD's date of entry into the United States.

8

12.   According to bank records, real property transaction
and assessor records, surveillance, mail and other items taken
from trash placed at the curb at 5265 Barbados Circle, I have
determined that IFTIKHAR AHMAD currently resides at 5265 Barbados
Circle, and has resided there since approximately July 2003.

13.   Beginning in approximately September 1996, IFTIKHAR
AHMAD began purchasing and selling residential real property,
primarily in the Stockton area.   Initially, he purchased and sold
the properties in his own name.   Later, beginning in
approximately August 2003, he purchased and sold real property in
the name of I & R.

14.   At various times between at least January 2003, and the
present day, IFTIKHAR AHMAD maintained signature authority over
bank accounts either exclusively or jointly with another
individual.   Those bank accounts include, but are not limited to,
the following:

| Bank and Account # | Account Holder | Signers | Date Opened | Date Closed |
|---|---|---|---|---|
| Bank of Stockton Acct. #2329808106 | IFTIKHAR AHMAD | IFTIKHAR AHMAD | Prior to 1/2003 | 7/3/2006 |

9

| Bank of Stockton Acct. #2146989001 | East Main Apartments | IFTIKHAR AHMAD | Prior to 1/2003 | 8/5/2005 |
|---|---|---|---|---|
| Bank of Stockton Acct. #214960820 | IFTIKHAR AHMAD | IFTIKHAR AHMAD | Prior to 1/2003 | 7/30/2006 |
| Bank of Stockton Acct. #1215000405 | El Camino Hotel | IFTIKHAR AHMAD | 6/23/2005 | Active |
| Bank of America #01553-03877 | IFTIKHAR and ILYAS AHMAD | IFITKHAR and ILYAS AHMAD | 12/27/2003 | 10/19/04 |
| Bank of West #34212211 | IFTIKHAR and Rayhana Ahmad | IFTIKHAR and Rayhana Ahmad | 8/26/2003 | 2/28/2006 |
| Bank of West #27302361 | IFTIKHAR AHMAD | IFTIKHAR AHMAD | 12/2/2002 | Active |

15.  I & R is a limited liability company that IFTIKHAR
AHMAD formed on or about April 23, 2003.  The operating agreement
for I & R recites that "for several years IFTIKHAR AHMAD who has
a background in real estate investments established a business in
San Joaquin County whereby he has bought and sold real
properties.  These services were generally done for himself but
he has also performed them for other people."  According to the
incorporation papers filed with the California Secretary of
State, I & R is in the business of real estate investments.  The
operating agreement identifies IFTIKHAR AHMAD and Rayhana Ahmad

10

as the "members" of the company.

16. According to its incorporation papers, I & R maintains its business at 9 W. Oak Street, Lodi, CA. I believe, however, that 9 W. Oak Street is simply an address where I & R received mail. On August 6, 2007, IRS-CI Special Agent Chris Fitzpatrick visited that location and determined that it was a hotel/motel. Special Agent Fitzpatrick entered the publicly-accessible office area of the business premises, which he described to me as a small room (approximately 10 feet by 10 feet). The room appeared to be used by the hotel/motel manager.

17. During the course of the scheme I & R maintained two bank accounts, summarized as follows: (1) Bank of Stockton account #2114193201, opened July 25, 2003; and (2) Bank of Stockton account #21141932220, opened July 25, 2003. Both accounts remain active, and IFTIKHAR AHMAD has sole signature authority over both accounts. From July 25, 2003 through February 2005, Bank of Stockton sent mailings relating to the I & R to the 9 West Oak address in Lodi. Beginning in March 2005, the mailings went to the 5265 Barbados Circle address. According to Bank of Stockton's website (accessed by another law enforcement agent involved in this investigation on August 14, 2007), the bank is a member of the Federal Deposit Insurance Corporation (FDIC), and is therefore a "financial institution" within the meaning of 18 U.S.C. § 1956(c)(6).

11

1.   The Family Members.

18.   IFTIKHAR AHMAD has three brothers who throughout most, if not all, of the relevant time period resided in the Stockton area.   I have probable cause to believe that each of the brothers (MUMRAIZ AHMAD, ILYAS AHMAD and MUSHTAQ AHMAD) participated in the mortgage fraud scheme, as summarized below:

19.   MUMRAIZ AHMAD (DOB: 12/2/1959) is a brother of IFTIKHAR AHMAD.   According to AutoTrack and an Experian Credit Report dated 04/11/2007, he resides at 2190 W. Euclid Avenue, Stockton, CA.   Records maintained by the Employment Development Department (EDD) indicate that as of 2005 MUMRAIZ AHMAD identified his employment as owner of the Imperial Motel.   In the late 1990s, MUMRAIZ AHMAD participated in several real estate transactions involving IFTIKHAR AHMAD.   Later, MUMRAIZ AHMAD conducted his own real estate transactions in which one of the buyers also bought property from I & R.   Specifically, in 2002, MUMRAIZ AHMAD purchased real property located at 1937 S. San Joaquin, Stockton, CA for $70,000, and sold it on or about November 15, 2002, for $145,000 to GILBERTO and LETICIA ROSAS.   In 2003-2004, GILBERTO ROSAS also purchased two properties from I & R.

20.   Beginning in 2003, ILYAS AHMAD (DOB: 12/27/1968) appears on the title as a co-owner with I & R in connection with several real properties, and in March 2006, ILYAS AHMAD purchased an I & R property (2228 E. Stadium Drive) for $330,000 – I & R

12

had purchased the same property approximately 18 months earlier for $99,000. ILYAS AHMAD was also a co-signatory with IFTIKHAR AHMAD on Bank of America account 0155303877. In January 2004, ILYAS AHMAD signed a check drawn on this account and used to pay the mortgage on a property located at 533 N. Oro Street, Stockton, CA after that property had been sold by I & R to a third party (as described in greater detail in Section II.F.1 below). According to public records accessed through WESTLAW, as recently as May 2007, ILYAS AHMAD and Asfar Khan purchased real property located at 120 W. Vine Street from I & R. The purchase price ($500,000) was financed entirely with loans.

21.   According to information another FBI Special Agent obtained from Glen Rice, manager at Prudential California Realty, 5380 West Lane, Suite C, Stockton, California, ILYAS AHMAD formerly worked at Prudential Real Estate from at least 2004 until January 2006. Rice stated that ILYAS AHMAD was not a big producer for the office. Most of his real estate transactions seemed to be with family members. ILYAS AHMAD would place one or two properties into escrow a month, but often these deals fell through for one reason or another.

22.   In the early stages of the scheme, MUSHTAQ AHMAD (DOB: 11/11/1966) purchased multiple residential real properties from IFTIKHAR AHMAD, financing each of the purchases at a price significantly higher than what IFTIKHAR AHMAD had paid for the

13

property, and defaulted on virtually all of the loans.  In a later phase of the fraud scheme, MUSHTAQ AHMAD provided the funds used as a down payment by one of the purchasers of an I & R residential property, and received $60,000 out of escrow when the property sold.

2.  The Fraudulent Purchasers/Borrowers.

23.  My review of escrow and loan files and other documents has identified a number of individuals who participated in the scheme as purchasers of real property sold by IFTIKHAR AHMAD or I & R.  As discussed in greater detail below these purchasers include GONZALO ZAVALA.  ZAVALA purchased two residential real properties from I & R in the space of less than a month in the Summer of 2003, and financed both purchases with large loans (approximately $450,000 in aggregate) obtained from Long Beach Mortgage.  ROBERTO ORTIZ ALFARO is another individual who purchased two properties from I & R within two months for a combined sales price of $520,000.  The first such property was 80% financed by Long Beach Mortgage, and the second such property was 90% financed by Long Beach Mortgage.  Both loans subsequently went into default.  In the space of approximately three months spanning 2004 and 2005, MANPREET SINGH purchased two properties from I & R with a combined sales price of $695,000.  Long Beach Mortgage financed both transactions, and mortgage loans comprised at least 80% of the purchase price for each transactions.  One of

14

the mortgages went into default within months of the transaction.
MANPREET SINGH was twenty-one years old when (in October 2004)
she purchased her first property from IFTIKHAR AHMAD, financed
with a $235,000 subprime mortgage.  GILBERTO ROSAS purchased two
real properties from I & R in the space of less than three months
spanning 2003 and 2004.  Both purchases were financed with large
loans obtained from Long Beach Mortgage.

    3.   The Real Estate Professionals.

    24.  In the course of closing over 100 residential real
property transactions between September 1996 and the present,
IFTIKHAR AHMAD and I & R used the services of numerous real
estate professionals, including a mortgage broker, escrow
officers, loan officers and managers, and appraisers.  Many of
the same real estate professionals participated in multiple
transactions involving IFTIKHAR AHMAD or I & R.

    25.  With the assistance of an FBI financial analyst, I have
identified approximately thirteen (13) real property transactions
for which DEBORAH TIMMINS (DOB 8/29/57) served as the escrow
officer in connection with IFTIKHAR AHMAD or I & R'S sale of
residential real property.  From approximately 2000 through late
2002 TIMMINS was an escrow officer at Chicago Title Company.
According to testimony she gave in connection with this
investigation, she was terminated from that position.  In the
approximately six-month period prior to April 2003 she was

15

unemployed. TIMMINS was an escrow officer at Commonwealth Land Title from approximately April 2003 through December 2003. She is the twin sister of DENISE JAMES (discussed below).

26. DENISE JAMES aka Denise Marie Duran (DOB 08/29/03) is the twin sister of TIMMINS. Based on a memorandum of interview I have reviewed, and testimony that JAMES gave in connection with this investigation, I have determined that in approximately 2000, JAMES worked as an escrow assistant at Sterling Title in San Andreas, California. Shortly thereafter, she changed jobs and began working as an escrow assistant at Chicago Title in Stockton. In approximately February 2003, she changed jobs again and began working as an escrow assistant at First American Title Company. Based on loan and escrow files I have reviewed JAMES' name appears as the notary on several real estate sales transactions conducted by IFTIKHAR AHMAD or I & R, including the transactions involving Rebecca W. (See Section II.F.1-2 below). Between July 30, 2003 and November 12, 2003, JAMES purportedly served as the notary in connection five separate real estate sales transactions in which either IFTIKHAR AHMAD or I & R was the seller.

27. At all relevant times WILLIAM BRIDGE (DOB 10/26/1966) was a mortgage broker and the owner of the Loan Center. According to records maintained by the California Department of Real Estate he has been a licensed mortgage broker in California

16

since October 1996. Special Agent Javier Almodvar interviewed
BRIDGE on October 26, 2005. According to BRIDGE, IFTIKHAR AHMAD
contacted him a few years prior to that time asking that BRIDGE
help IFTIKHAR AHMAD broker a sale of property. Since then,
according to BRIDGE, IFTIKHAR AHMAD has called from time to time
to broker other property deals in which IFTIKHAR AHMAD usually is
the seller, and provides the buyer to BRIDGE. Many of the buyers
did not qualify for the loans. BRIDGE stated that the buyers
that did qualify usually had very high credit scores and
qualified for 100 percent of the loan. BRIDGE also testified in
connection with this investigation that he helped prepare loan
applications for purchasers of IFTIKHAR AHMAD properties based on
information he received over the phone; he did not meet most of
the loan applicants. BRIDGE further testified that beginning in
approximately late 2002, his brother, Paul Bridge, began working
for him. BRIDGE described his brother's work as processing,
paperwork, and answering phones.

28.  Federal tax return information obtained in the course
of this investigation indicates that BRIDGE received
nonemployment compensation from Long Beach Mortgage as follows:
$241,488 in 2003, and $359,000 in 2004, and $201,569 in 2005.  I
have identified at least twenty six (26) real estate sales
transactions in which IFTIKHAR AHMAD or I & R sold property
between 2001 and 2005 where BRIDGE served as the mortgage broker.

17

29. At all relevant times, JOHN NGO (DOB: 10/13/1980) was a Senior Loan Coordinator employed by Long Beach Mortgage. His duties include processing loans, reviewing and forwarding loans if the paperwork is complete and underwriting and approving loans. As indicated in greater detail below, he participated in a number of transactions in connection with IFTIKHAR AHMAD or I & R's sale of residential real property in the Stockton, California area.

30. At all relevant times KURT HATTERLE was an appraiser who during at least a portion of the relevant time period worked for Windsor Appraisal Service, 330 E. Banbury Drive, Stockton, CA. From July 2003 through October 2004 HATTERLE conducted appraisals on at least five (5) properties sold by IFTIKHAR AHMAD.

31. CLINT KRUEGER was an appraiser who during the relevant time period handled several transactions in which IFTIKHAR AHMAD or I & R sold residential property. According to information provided by Washington Mutual, KRUEGER was placed on Washington Mutual's ineligible appraisal list beginning in June 2004. According to information obtained from the California Office of Real Estate Appraisers KRUEGER's license was suspended during the periods of April 8, 2002 through January 10, 2003, and again from April 30, 2004 through January 12, 2005, for non-payment of child support. From November 2004 through January 2005 KRUEGER

18

conducted appraisals on at least three (3) properties sold by
IFTIKHAR AHMAD. Thus, for example, an appraisal KRUEGER
conducted on the property at 729 E. Sonora Street and signed
December 12, 2004 was conducted at a time when his license was
suspended. KRUEGER'S license expired in August 2005.

B. Victims of the Scheme.

32. Rebecca W. is a Caucasian female employed in state
government. She was interviewed by FBI agents in July 2004 and
stated that she only conducts banking at Bank of America.
Although her identity appeared as a purchaser of properties in
San Joaquin County, and as the holder of mortgages issued by Long
Beach Mortgage, she further stated that she has not originated or
maintained any loans with either Long Beach Mortgage or
Washington Mutual.

33. Beginning in about March of 2002 Long Beach Mortgage
Company ("Long Beach Mortgage") began to originate subprime loans
on many of the transactions in which either IFTIKHAR AHMAD or I &
R is the seller. Indeed, Long Beach Mortgage appears on loan
documents and in public filings as the lender on all of the
approximately 20 real estate transactions for which your affiant
obtained escrow and loan files in connection with this
investigation. According to its website
(www.longbeachmortgage.com) Long Beach is among the nation's top
10 wholesale subprime lenders, having originated nearly $30

19

billion in mortgage loans in 2005. I am advised by a
representative of Washington Mutual, that Washington Mutual Inc.
(a publicly-traded holding company) acquired Long Beach Mortgage
in October 1999. From October 1999 through early 2006, Long
Beach Mortgage was owned by New American Capital, which in turn
was owned by Washington Mutual Inc.   During this time frame,
Long Beach Mortgage was not itself a federally-insured financial
institution, but sold many of the loans it originated to banks
and other third-party lenders. In March 2006, Long Beach
Mortgage became an operational subsidiary of Washington Mutual,
F.A., and thus became part of a federally-insured bank.   On
August 14, 2007, I am advised that Special Agent Chris
Fitzpatrick spoke to Long Beach Mortgage employee Debbie Ferrier.
Ferrier is in the Loan Fulfillment Center Manager for the Long
Beach Mortgage office in Dublin, California. I am advised that
Ferrier stated that based on her experience at the conclusion of
escrow, the original deed of trust is mailed by escrow company to
the County Recorders Office for recording. Once the County
Recorders Office receives the original deed of trust they record
it. Subsequently, the County Recorders Office mails
the recorded deed of trust to the Long Beach Mortgage-National
Post Closing Office post office box in Stockton, California.

     34.  At all relevant times Washington Mutual Bank, F.A.
("Washington Mutual") was a federally-insured thrift institution

that maintains retail banking and mortgage lending offices throughout California.   From approximately October 1999 through March 2006, Washington Mutual serviced Long Beach Mortgage loans.

C.   Real Property Transaction History in Stockton, CA

35.   The City of Stockton's Office of Economic Development maintains data, which it obtained from the Central Valley Realtors Association, indicating that between 2001 and 2006, residential real estate prices in the City of Stockton generally increased.   The table below summarizes that data:

| Year | Median Sale Price | Percentage Increase Over Preceding Year |
|------|-------------------|------------------------------------------|
| 2001 | $155,000 | NA |
| 2002 | $184,000 | 19% |
| 2003 | $215,000 | 17% |
| 2004 | $256,000 | 19% |
| 2005 | $335,625 | 31% |
| 2006 | $352,000 | 5% |

Residential medial real estate prices in the City of Stockton peaked in June 2006, at $360,000, but have since declined.   The May 2007 median price was $320,000.

36.   According to information maintained by Dataquick, the number of residential real property foreclosures in San Joaquin County more than doubled between 2005 and 2006, from 1556 foreclosures to 3381.   A July 12, 2007 Reuters article I read

21

(available at www.msnbc.com) identified six California
metropolitan areas in a list 10 metropolitan areas in the nation
with the highest foreclosure rates as of June 2007.  The four at
the top of that list - Stockton, Merced, Modesto and Riverside-
San Bernardino - posted rates more than five times the national
average.

    D.    Initiation of Investigation.

    37.    This federal investigation began in approximately July
2004 when an FBI Special Agent received a referral to contact
Rebecca W., a reported identity theft victim.  Rebecca W. stated
that in November 2003, she received a telephone call from a
representative in Washington Mutual's collection department.
Rebecca W. was told that she was delinquent on a $160,000 loan
that financed her purported purchase of a residence.  Rebecca W.
stated that she told the representative that she had never
applied for any loan through Washington Mutual, and further she
did not have any banking relationship with Washington Mutual.

    38.    Washington Mutual records indicate that Rebecca W. had
contacted Washington Mutual, after she filed a police report on
November 20, 2003, in reference to a delinquent mortgage payment
on a note serviced by Washington Mutual (loan #0075028209), and
secured by a deed of trust on the property located at 533 N. Oro
in Stockton, California, as further described below.  Before
Washington Mutual could resolve the complaint, a second loan was

22

fraudulently funded in late November 2003 – the loan that
financed the purchase of 1214 Lafayette, Stockton, also further
described below. Washington Mutual records indicate that a third
loan file (to have been secured by a second deed of trust) for
Rebecca W. had been opened, but the loan process was terminated
before it was funded.

39. Washington Mutual's own investigation disclosed that in
connection with the two loans funded under Rebecca W.'s name and
social security number the seller was IFTIKHAR AHMAD's company, I
& R. Indeed, this was not the only similarity between the two
loan transactions. Both transactions had been handled by
TIMMINS, an escrow officer first employed by Chicago Title
Company, and later employed by Commonwealth Land Title Company.
In addition, both loans had been brokered by BRIDGE, and both
loans had purportedly been notarized by the same notary, JAMES.
The appraisals on both properties had been handled by the same
appraiser, KURT HATTERLE.

40. During the course of the investigation attempts were
made to obtain JAMES' notary books containing Rebecca W.'s
supposed notarized signatures. Despite repeated attempts,
including by subpoena, the pertinent ledger books could not be
obtained. JAMES asserted that she was unable to find the notary
books, citing personal problems that caused her to lose them.

23

41.   With the assistance of an FBI financial analyst I obtained by subpoena and analyzed escrow and loan files for approximately twenty (20) transactions in which IFTIKHAR AHMAD or I & R sold residential real property, primarily in the Stockton, California area.  Based on that and other information the investigation expanded, as set out below.

E.   Nature and Scope of Mortgage Fraud Scheme.

1.   Explanation of Real Estate Terms and Concepts.

42.   This affidavit makes reference to various real estate terms and concepts.  Though your affiant is not a real estate professional, during the course of this investigation I have consulted with a Senior Deputy Commissioner at the California Department of Real Estate and with other law enforcement agents familiar with real estate terms and concepts from prior or on-going investigations, and I have developed an understanding of the meaning of such terms and concepts, as follows:

43.   The term "underwriting" refers to the process a lender goes through in making a final determination to approve or reject a loan application.

44.   Subprime lenders - such as Long Beach Mortgage - are lenders that target their mortgage lending activities toward a segment of the residential lending market known as the subprime market.  The lenders in this market serve borrowers who, because of their higher credit risk or perceived higher credit risk, do

24

not secure home mortgage loans from what is known as the "prime"
market.   Subprime lenders often target their products towards
persons who are self-employed and persons who cannot make large
down payments.

45.   A wholesale lender such as Long Beach Mortgage is a
lender that originates a residential real property loan.
Wholesale lenders often resell loans that they originate to so
called "retail" lenders, including federally-insured depository
institutions.

46.   A "stated income" loan is one designed for prospective
home buyers who have the income to afford a mortgage and have
acceptable credit, but who do not meet traditional underwriting
standards - called "full documentation" standards.   Self-employed
individuals are examples of those who may have difficulty
documenting income.   With a "stated income" loan the lender
qualifies the borrower on the basis of whatever income the borrow
puts down on the application.   When interviewed by an FBI Special
Agent, JOHN NGO indicated that if an individual wrote that he/she
was self employed, that individual would have to produce a
license or a permit in the business he/she was in to prove that
the business did exist.   If an individual wrote that he/she was
self-employed, but a credit check revealed that he/she was a wage
earner, a letter would be requested of that individual to explain

why there was a discrepancy between the application and the
credit check.

47.  When making residential home mortgage lending
decisions, lenders often assess the adequacy of the borrower's
income in terms of two ratios.  The first is called the "housing
expense ratio" and it is the sum of the monthly mortgage payment
including mortgage insurance, property taxes and hazard insurance
divided by the borrower's monthly income.  The second is called
the "total expense ratio" and it is the same except that the
numerator includes the borrower's total debt service obligations.
Beyond determining these two ratios, lenders may rely on a number
of considerations, and these considerations are reflected in the
"Uniform Residential Loan Application."  For example paragraph "h"
of the "Declarations" section of that application form asks: "Is
any part of the down payment borrowed?"  In general, lenders want
borrowers to meet the down payment requirement with funds they
have saved because this source indicates that the borrower has
the discipline to save, which bodes well for the repayment of the
loan.  Funds borrowed to make the down payment may raise
additional concerns.  A borrower of such funds (particularly
those borrowed from family members) who gets into financial
trouble may give first priority to paying off the family member.
Moreover, while it is not per se impermissible to borrow a down
payment from the seller – assuming that fact is disclosed to the

26

lender – such borrowing raises concerns that the sales price of the home may have been artificially inflated.

48.   Lenders also may take into account whether the borrower intends to occupy the property.  Thus, for example, paragraph "1" of the declaration section of the Uniform Residential Loan application asks: "Do you intend to occupy the property as your primary residence?"  One reason that lenders value this information is because they perceive that borrowers will make extra efforts to avoid a default when the property serves as the borrower's primary residence.

49.   Lenders also seek to verify that the borrower has a reservoir of savings sufficient to cover the mortgage payment in the event the borrower, for example, loses his or her job.  Thus, Section VI of the Uniform Residential Loan application requires the applicant to identify checking and savings accounts and the cash or market value of the funds held in that account.

50.   Down payment requirements vary depending on the loan program the applicant seeks to qualify for.  As a general rule, down payment requirements will tend to be higher whenever a transaction has characteristics that lenders view as risky.  Thus, for example, lenders tend to require a larger down payment when the borrower has a poor credit record, is purchasing a house as an investment rather than for occupancy, or wants to fund a

very large loan secured by an expensive house that may have
unique features which appeal to a limited number of buyers.

51.   Mortgage brokers in California are licensed either by
the California Department of Real Estate or the California
Department of Corporations.  They assist a purchaser in real
estate transactions to complete loan application and then attempt
to obtain the most favorable loan terms available for the
purchaser, often by "shopping the loan" with different lenders.

2.   Commonalities In the Subject Transactions.

52.   An FBI Financial Analyst with whom I worked on this
investigation has identified more than 100 residential real
properties purchased and sold by IFTIKHAR AHMAD either in his own
name, or in the name of I & R, in the Stockton, California area
between September 1996 and the present time.  A true and accurate
spread sheet that this financial analyst prepared documenting the
purchase and sale of these properties, notices of default and
foreclosures to date, and the approximate value of the mortgages
defaulted, is attached hereto as attachment C, and incorporated
herein by reference.  The spread sheet was compiled by gathering
information from public records maintained on databases such as
AutoTrack and WESTLAW.

53.   With the assistance of this FBI financial analyst I
reviewed IFTIKHAR AHMAD and I & R's transactions, including
approximately twenty (20) transactions for which I obtained

28

escrow and loan files.  In the course of that review, certain
indicators of fraudulent activity emerged, which I summarize as
follows:

> (1) All of the approximately twenty (20) escrow files I
> reviewed involving residential real property sales by
> IFTIKHAR AHMAD or I & R indicate that WILLIAM BRIDGE
> served as the mortgage broker on the transactions, Long
> Beach Mortgage served as the originating lender, and
> Washington Mutual serviced the loans.
>
> (2) When examining the more than 100 real properties
> that IFTIKHAR AHMAD or I & R purchased and sold between
> 1997 and 2007, I saw that in a high percentage of them
> IFTIKHAR AHMAD or I & R purchased property in a "cash"
> transaction.  In contrast, in a high percentage of
> transactions in which IFTIKHAR AHMAD and I & R sold
> property to a third party, the purchaser financed all
> or substantially all (at least 80%, sometimes 100%) of
> the purchase price, frequently through a subprime
> lender such as Long Beach Mortgage.
>
> (3) Of the approximately twenty (20) transactions I
> examined closely with the aid of an FBI financial
> analyst, many involved the same escrow officer and
> notary.  In 2003, TIMMINS and her sister JAMES served
> as the escrow officer and notary respectively on a

29

number of real property sales by IFTIKHAR AHMAD or I &
R, some of which are described in greater detail below.
Beginning in approximately 2004, Wendy Perry serves as
escrow officer, and Lisa Towers serves as notary on a
significant number of the approximately twenty (20)
sales transactions involving I & R.

(4) After many of the sale transactions involving
IFTIKHAR AHMAD or I & R closed, the borrower defaulted,
sometimes within months of the close of escrow.   The
mortgage holder subsequently recorded either a notice
of default and/or foreclosed on the property.   The
instances in which notices of default or foreclosures
were recorded is summarized in Attachment C hereto.

(5)   Many of the sale transactions involved the same
purchasers, and in the early phase of the scheme many
of these transactions involved individuals related to
IFTIKHAR AHMAD by blood or marriage.   For example,
between January 1998 and August 1999, MUSHTAQ AHMAD
purchased multiple properties either directly from
IFTIKHAR AHMAD, or from persons who bought from
IFTIKHAR AHMAD, often at prices significantly higher
than IFTIKHAR AHMAD had paid for the same properties.
MUSHTAQ AHMAD financed all of the purchases, and
defaulted on all of the loans except one, resulting in

30

foreclosure.  The following table summarizes these transactions:

| Property | Purchaser | Seller | Sale/Loan Amount | Date |
|---|---|---|---|---|
| **Property #1**<br><br>4650 Greensboro Way | IFTIKHAR AHMAD & M. Khan | Glendale Federal Bank | $70,000 (Cash) | 9/30/1996 |
| | Mushtaq Ahmad | Iftikhar Ahmad and M. Khan | $140,000 ($126,000 loan) | 1/13/1998 |
| | Foreclosure | | | 5/2/2000 |
| **Property #2**<br><br>4433 Shippee Lane | IFTIKHAR AHMAD | Federal Home Loan | $30,500 ($33,000 loan) | 5/27/1998 |
| | Mushtaq Ahmad | Iftikhar Ahmad | $185,000 ($144,990 loan) | 2/10/1999 |
| | Foreclosure | | | 5/10/2000 |
| **Property #3**<br><br>2927 S. Harris Avenue | IFTIKHAR AHMAD | First Nat'l Mortgage | $29,000 ($21,700 loan) | 5/6/1999 |
| | MUSHTAQ AHMAD | IFTIKHAR AHMAD | $85,000 (53,246 loan) | 8/5/1999 |
| | Foreclosure | | | 8/17/2000 |

| | | | | |
|---|---|---|---|---|
| **Property No. 4:**<br><br>1239 N. Center Street, Stockton, CA | IFTIKHAR AHMAD | Mary Brennan Trust | $65,000 ($45,000 loan) | 6/19/1998 |
| | Altaf Malik | IFTIKHAR AHMAD | Not presently known | 9/29/1998 |
| | MUSHTAQ AHMAD | Altaf Malik | $135,000 ($121,000 loan) | 2/19/1999 |
| | Foreclosure | | $72,000 | 3/17/2000 |
| **Property No. 5:**<br><br>1121 W. Downs Street, Stockton, CA | IFTIKHAR AHMAD | Washington Mutual | $65,000 (cash) | 12/8/1999 |
| | Mohammad Malik/ MUSHTAQ AHMAD | IFTIKHAR AHMAD | Not presently known | 5/23/2003 |
| | Sophat Sok | Mohammed Malik/ Mushtaq Ahmad | Not presently known | 4/30/2004 |
| **Property No. 6**<br><br>1239 N. Center Street, Stockton, CA | IFTIKHAR AHMAD | Mary Brennan Trust | $65,000 ($45,000 loan) | 6/19/1998 |
| | Altaf Malik | IFTIKHAR AHMAD | Not presently known | 9/29/1998 |

| | MUSHTAQ AHMAD | Altaf Malik | $135,000 ($121,500 loan) | 2/19/1999 |
|---|---|---|---|---|
| | Foreclosure | | | 3/17/2000 |

Similarly, in a two-month period between September 1999, and November 1999, public records disclosed that ABDUL RASHID, whom I have reason to be believe was an associate of IFTIKHAR AHMAD, purchased five residential real properties in the Stockton area from IFTIKHAR AHMAD, all five purchases were financed through mortgage lenders, and all five mortgages subsequently went into foreclosure. The chart below summarizes the relevant sale history for each of these five properties:

| Property | Purchaser | Seller | Sale/Loan Amount | Date |
|---|---|---|---|---|
| Property No. 1:<br><br>715 E. Anderson Street, Stockton, CA | IFTIKHAR AHMAD | Mohammed Azam | $60,000 (loan amount $48,750) | 10/21/1998 |
| | Abdul Rashid | IFTIKHAR AHMAD | $75,000 (loan amount $63,750) | 9/27/99 |
| | Foreclosure | | | 11/22/2000 |

33

| | | | | |
|---|---|---|---|---|
| **Property No. 2:**<br><br>1610 Milton Street, Stockton, CA | IFTIKHAR AHMAD | Beneficial Mortgage | $25,000 (cash) | 4/16/1998 |
| | Refinance | | $49,600 (loan amount) | 8/14/98 |
| | Abdul Rashid | IFTIKHAR AHMAD | $70,000 (cash) | 11/4/1999 |
| | Refinance | | $63,000 (loan amount) | 11/10/1999 |
| | Foreclosure | | | 12/24/2000 |
| **Property No. 3:**<br><br>541 N. Shasta Avenue, Stockton, CA | Iftikhar Ahmad | Mortgage Trust | $27,000 (cash) | 11/16/1998 |
| | Abdul Rashid | IFTIKHAR AHMAD | $55,000 ($51,000 loan amount) | 10/5/1999 |
| | Foreclosure | | | 9/6/2000 |
| **Property No. 4:**<br><br>1522 N. F. Street, Stockton, CA | IFTIKHAR AHMAD | Devota Byrnes | $28,000 ($20,500 private party loan) | 3/30/1999 |
| | Abdul Rashid | IFTIKHAR AHMAD | $75,000 ($60,000 loan) | 10/21/1999 |
| | Foreclosure | | | 9/7/2000 |

34

| **Property No. 5:**<br><br>616 E. 2nd Street, Stockton, CA | IFTIKHAR AHMAD | Parbati Chand | $26,000 (cash) | 5/3/1999 |
|---|---|---|---|---|
| | Abdul Rashid | IFTIKHAR AHMAD | $62,000 ($52,000 loan) | 10/5/1999 |
| | Foreclosure | | | 2/26/2002 |

My review of public records confirmed that between September 1996 and the present time there were many other instances where the same individual purchased multiple properties owned solely or jointly by IFTIKHAR AHMAD or I & R.  The individuals include:  Altaf Malik (MUMRAIZ AHMAD's son-in-law), Cindy Scott, Rebecca W., Jamshed Iqbal, ROBERTO ALFARO, Israel Rivera, Oscar Rivera, Silvia Jawwad, JAMIE ORTIZ, GILBERTO ROSAS, GONZALO ZAVALA, MUMRAIZ AHMAD, Julio Lopez, MANPREET SINGH, Maria Villa, Beatriz Becerra, Gustav Chavez, Maria Villa, Nancy Verna, Alfonso Ulloa, Jose Ramirez, Ismael Nunez, Mohammed Azam, Armando Hernandez, Eduardo Rodriguez, Esmeralda Romero, Mohammad Fasal.

(6) There were several instances in which IFTIKHAR AHMAD or I & R sold a residential real property only to repurchase it and sell it again.  For example, IFTIKHAR AHMAD purchased the property located at 327 N. Pilgrim

35

Street in Stockton, CA. in October 1997 for $22,000 and sold it in July 2002 for $120,000. I & R and **ILYAS AHMAD** then repurchased the same property in December 2003 for $112,000, and sold it in June 2004 for $172,000. I & R and ILYAS AHMAD purchased the same property again in September 2004 for $180,000. According to information obtained from Fidelity Title Company I & R resold it again in June 2005 for $236,000.

(7) At least two purchasers of property from IFTIKHAR AHMAD received money from him outside of escrow. Cindy Scott received at least $4,295.00 between December 31, 2002 and April 22, 2003. As described in greater detail below in Section II.F.5 below, between January 2005 through October 2005 MANPREET SINGH received $22,300 from IFTIKHAR AHMAD outside of escrow.

(8) As Attachment C reflects, most IFTIKHAR AHMAD and I & R real property purchase and sale transactions are notable for the large difference in the amount between what was purchased for the property and what it sold for, often just a few months later. Bank records and tax returns filed by IFTIKHAR AHMAD and Rayhana Ahmad, as well as some appraisal reports, suggest that IFTIKHAR AHMAD or I & R made improvements to various

36

properties, and as discussed above, the real estate market was generally increasing in value through much of the 2001 through mid-2006 time frame. But for many transactions these factors cannot explain the entire price differential, particularly given two considerations. First, in so many of the approximately twenty (20) transactions I reviewed IFTIKHAR AHMAD surreptitiously provided the purchaser's down payment, meaning the value of the property was necessarily inflated to take into account the source of the down payment. Second, in several instances the next sale subsequent to an IFTIKHAR AHMAD or I & R sale is often for an amount significantly less than the prior sale amount. For example, I & R sold 729 E. Sonora Street to ROBERT ALFARO on January 11, 2005 for $290,000 financed by a $261,000 loan from Long Beach Mortgage. Long Beach Mortgage reacquired the property through foreclosure on October 18, 2005, and then sold the property to a third party on July 25, 2006 for $149,000 ($141,000 less than what ALFARO paid for the property just 18 months earlier).

(9) In the case of the approximately twenty (20) transactions I examined closely with the assistance of an FBI financial analyst, I observed that the escrow

37

and loan files included identifying information about various real estate professionals involved in the transactions, and how funds were distributed at the close of escrows. Notably, there were very few references to payments to any listing agent or real estate brokerage firm. In an interview conducted in October 2005, WILLIAM BRIDGE indicated that in the transactions he brokered for IFTIKHAR AHMAD, AHMAD was usually the seller and provided his own buyer. When IFTIKHAR AHMAD did provide a buyer for one of his properties, he would give BRIDGE the prospective buyer's number or IFTIKHAR AHMAD would initiate a conference call between IFTIKHAR AHMAD, BRIDGE and AHMAD'S buyer. BRIDGE did not recall ever meeting any of IFTIKHAR AHMAD's buyers, even though he was putatively serving as mortgage broker for them.

(10) For each of the approximately twenty (20) loan files I reviewed in connection with this investigation I found a "Borrower's Certification and Authorization" signed by the borrower in each loan file. Each such document includes the following certification:

38

> I/We fully understand that it is a
> federal crime punishable by fine or
> imprisonment, or both, to knowingly make
> any false statements when applying for
> this mortgage, as applicable under the
> provisions of Title 18, United States
> Code, Section 1014.

(11) As indicated above, BRIDGE received a total of
approximately $800,000 from Long Beach Mortgage in
connection with mortgages he brokered to them in 2003,
2004 and 2005.  This figure includes commissions BRIDGE
received in connection with IFTIKHAR AHMAD or I & R
sales transactions.  According to an official at the
California Department of Real Estate a licensed
mortgage broker in California typically receives 1 to
3% of the sales price of the loan in fees.  In the
approximately twenty (20) sales transactions involving
IFTIKHAR AHMAD or I & R for which I reviewed escrow and
loan files, BRIDGE consistently received a commission
higher than the average.  For example, in connection
with the sale of 952 N. Solari, the first and second
mortgages aggregate to approximately $240,000.  One
percent of that figure would be $2,400, and three
percent would be $7,200.  From escrow, BRIDGE received
$9,850, or more than 4% of the total loan amount.  He
received this percentage on this and other transactions
in which, by his own admission: (a) BRIDGE never met

39

IFTIKHAR AHMAD; (b) IFTIKHAR AHMAD brought most of the purchasers to him; (c) BRIDGE never met any of the purchasers, and took most of the purchasers' loan application information by telephone; (d) BRIDGE did not verify the purchasers' identities; and (e) BRIDGE did very little to verify the purchasers' credit history beyond verifying their credit score.

F.   Fraudulent Real Property Transactions.

54.   Set forth below is a summary analysis of several transactions that I have reviewed in the course of this investigation with the assistance of an FBI financial analyst.

1.   533 N. Oro Avenue.

55.   The real property located at 533 N. Oro Avenue is situated in an area of Stockton north of Main Street, South of Fremont Street, East of Highway 99, and West of Wagner. Public real property records maintained on a database called AutoTrackXP disclose that IFTIKHAR AHMAD purchased this property for $90,000 on or about June 9, 2003, from the Farley Trust. Less than four months later - on or about September 29, 2003 - IFTIKHAR AHMAD conveyed the property to I & R, and, that same day, I & R conveyed the property to Rebecca W. A person purporting to be Rebecca W. financed the purchase of the property with an approximately $156,000 loan from Long Beach Mortgage. According to records I reviewed from the escrow file for this transaction,

40

the deed of trust was mailed to Long Beach Mortgage Company at a
P.O. Box address in Stockton, California.

56.   In the course of this investigation your affiant
obtained and reviewed the escrow file from Commonwealth Land
Title Company for the sale of 533 N. Oro Avenue to Rebecca W.
Through a review of the escrow and loan files maintained by
Commonwealth Land Title Company and Washington Mutual
respectively, I have determined that the following individuals
and entities participated in the sales transaction:

| Individual or Entity | Role in Transaction |
|---|---|
| IFTIKHAR AHMAD | Seller |
| Rebecca W. | Purported buyer |
| Commonwealth Title Company | Title and escrow company |
| DEBORAH CHRISTINE TIMMINS | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Originating Lender |
| Joel Blanford | Loan Officer |
| JOHN NGO | Account Manager |
| KURT HATTERLE | Appraiser |
| DENISE JAMES | Purported notary |

57.   The loan file includes a Uniform Residential Loan
Application ("Loan Application") form purportedly signed by
Rebecca W. and WILLIAM BRIDGE on September 15, 2003.  Based on my
investigation I have determined that the Loan Application
includes numerous false statements.  These include, but are not
limited to, the following:

41

• First, Section II of the Loan Application indicates that the property at 533 N. Oro Avenue will be used as Rebecca W.'s primary residence. The residential purchase agreement contains a similar representation. These representations are false. The true Rebecca W. has never resided at, or intended to reside at, 533 N. Oro Avenue.

• Second, Section III of the Loan Application provides a present address for Rebecca W. of 1437 Poplar Street, Stockton, CA 95205, and indicates that she has owned that property for the past two years. This is false. Based on my review of public records I have determined that the true Rebecca W. owned property in Citrus Heights, California, but has never owned any property at 1437 E. Poplar Street, Stockton, CA.

• Third, Section IV of the Loan Application indicates that Rebecca W. is self-employed as a bookkeeper, and has been in this line of work/profession for 12 years. This is false. The real Rebecca W. has never been so employed.

• Fourth, the Preliminary Change of Ownership Report indicates that Rebecca W. was to provide a down payment of $8,250. Section VIII of the Loan Application includes the declaration that the funds used for the

42

down payment were not borrowed.  This statements is false.  The escrow file documents the receipt from "[W.]" of a $10,690.00 cashier's check drawn from the Bank of Stockton on September 24, 2004.  Bank of Stockton records that I obtained by subpoena and reviewed disclose that this cashier's check was in fact funded by a withdrawal from the savings account (account #2149608020) of IFTIKHAR AHMAD.  The savings withdrawal slip that documents the funding of the cashier's check is signed by AHMAD.

• Fifth, Section VIII of the Loan Application also includes a declaration that Rebecca W. intended to occupy the N. Oro Street property.  The executed residential purchase agreement – also in the escrow file – contains a similar representation.  These representations are not true.

• Sixth, and most significantly, the true Rebecca W. did not execute the Loan Application or any of the other escrow or loan documents, including the deed of trust.  The Loan Application includes Rebecca W.'s true name and social security number, and in one instance refers to her true address.  Otherwise the representations in the Loan Application are false.  The true Rebecca W. did not sign the Loan Application or

43

any other documents connected to the transaction.

• Seventh, Rebecca W.'s signature on the deed of trust purports to have been witnessed by DENISE MARIE JAMES, on September 15, 2003 (Notary Comm. #1265072). Special Agent Almodvar interviewed JAMES on October 28, 2005. In the interview, JAMES acknowledged that she did not witness Rebecca W. execute the deed of trust. JAMES described how in connection with this transaction (and in connection with the 1214 E. Lafayette transaction described below) she allowed her twin sister, DEBORAH TIMMINS, to witness the execution of the deed of trust, and bring the signed deed of trust to JAMES to be notarized. When interviewed by Special Agent Almodvar on October 25, 2005, TIMMINS corroborated her sister's version of events. TIMMINS added that in connection with these two transactions she recalled meeting with the seller, IFTIKHAR AHMAD, and the buyer, Rebecca W., on two occasions to close on the sale of the two properties. At least one such closing was conducted in Tracy, California, at Commonwealth Land Title Company, and the second closing was conducted at a restaurant. TIMMINS recalled taking JAMES' notary books to the closings. TIMMINS filled out the notary books, checked the identification of the buyer, and took the

44

fingerprint of the buyer. However, JAMES actually

signed the notary books. TIMMINS described Rebecca W.

as a Hispanic female with fair complexion and long

black hair (the true Rebecca W. is Caucasian).

58. The escrow file for the 533 N. Oro Street sale
substantiates that TIMMONS received identification information
for Rebecca W. - a resident alien card, a social security card,
and a 1040 ES. When shown a photocopy of the identification card
from the escrow file, TIMMINS indicated that the person she saw
at the signing looked like the person depicted on the photocopy
of the identification card. The 1040 ES contains identifying
information stolen from the true Rebecca W.

59. Beyond the fact that TIMMINS and JAMES admit that they
collaborated to provide a false notarization in connection with
the two transactions involving Rebecca W., there are other
reasons to believe TIMMINS fraudulently collaborated with
IFTIKHAR AHMAD in connection with this and other transactions.
In the course of the investigation, your affiant obtained by
subpoena from Bank of Stockton a copy of $6,000 cashier's check
made payable to "Debbie Timmons [sic]" and dated "January 13,
2003," and funded by a withdrawal from the Bank of Stockton
savings account (account #2149608020) of IFTIKHAR AHMAD. The
cashier's check was never negotiated by TIMMINS. Instead, it was

redeposited into IFTIKHAR AHMAD's Bank of Stockton savings
account on February 6, 2003.

60.  During the course of the investigation I also obtained
and reviewed copies of checks drawn on IFTIKHAR AHMAD account at
Union Safe Deposit Bank in Stockton, California.  Those checks
included the following checks drawn on IFTIKHAR AHMAD's account
and made payable to TIMMINS:

| Payee | Amount | Date |
|-------|--------|------|
| DEBBIE TIMMINS | $3,000 | 1/15/2003 |
| DEBI [sic] TIMMINS | $3,000 | 1/31/2003 |
| DIBBI [sic] TIMMINS | $1,000 | 10/7/2003 |

In addition, I obtained and reviewed copies of checks drawn on
IFTIKHAR AHMAD's account (#2146989001) at Bank of Stockton in
Stockton, California.  Those checks included the following check
drawn on IFTIKHAR AHMAD's account and made payable to TIMMINS:

| Payee | Amount | Date |
|-------|--------|------|
| Debi [sic] Timmins | $500.00 | 5/06/2003 |

61.  I also obtained and reviewed copies of checks drawn on
TIMMINS' account at Wells Fargo for the relevant time period.
Among those checks I found one made payable to IFTIKHAR AHMAD,
check number 1040, dated September 12, 2003 in the amount of
$100.  In the memo section of check number 1040, there appears
the handwritten notation: "Thank You."  Several things are
unusual about these transactions.

46

- First, the check for $1,000 and dated 10/07/2003 bears the apparent notation "loan," however, in my review of bank statements for IFTIKHAR AHMAD, I & R, and DEBORAH TIMMINS I do not see any payments made by TIMMINS to IFTIKHAR AHMAD except for the $100 check dated 9/12/2003. Typically, any compensation to an escrow company in connection with a real estate transaction is paid from escrow.

- Second, the cashier's checks and two of the personal checks totaling $6,000 are dated in January 2003. According to testimony TIMMINS gave in connection with this investigation TIMMINS was unemployed in January 2003. She testified that she took approximately six months off after being terminated from Chicago Title and before starting work Commonwealth Land Title in approximately April 2003. According to her own testimony, TIMMINS was terminated from Chicago Title for misconduct in connection with an escrow closing.

- Third, the check for $1,000 made payable to TIMMINS is dated October 7, 2003 - just a little more than one week after the sale of the 533 N. Oro Street property closed. The date of that check is close in time to the escrow closing.

47

62.   There are further indications of fraud in the 533 N. Oro Street transaction.   According to records your affiant obtained by subpoena from Washington Mutual, a few months after the closing a payment in the amount of $3,579.12 was made on Rebecca W.'s loan with Washington Mutual by check dated January 27, 2004.   The check was drawn on an account at Bank of America (account #155303877) maintained jointly by IFTIKHAR AMHAD and ILYAS AHMAD.   The check appears to have been executed by ILYAS AHMAD, and bears the handwritten notation "Oro St. Rebecca [W.]" The mortgage payment was made months after the close of escrow, suggesting that IFTIKHAR AHMAD and I & R continued to maintain an interest in the property.

63.   In addition, bank records I obtained and reviewed from Bank of America include checks drawn on IFTIKHAR AHMAD and ILYAS AHMAD's account #0155303877 for the period December 2003 through October 2004.   Check #146 drawn on that account is made payable to JOSE SERRANO in the amount of $500.00, and dated February 5, 2004, and clears the bank on February 6, 2004.   The check appears to be signed by ILYAS AHMAD.   The "For" line of the check bears the handwritten notation: "Oro St."   To summarize, more than four months after IFTIKHAR AHMAD purportedly sold the property at 533 N. Oro Street he wrote a check to JOSE SERRANO that appears to reference the property.

48

64. The sale of the property at 533 N. Oro Street closed on or about September 29, 2003, and a duplicate check contained in the escrow file indicates that IFTIKHAR AHMAD received a cashier's check for $142,029.01 out of escrow. Bank of Stockton records confirm that September 30, 2003, IFTIKHAR AHMAD deposited this check into his I & R account (#2114193220).

65. Washington Mutual records disclose that following the loan payment in January 2004, one additional payment of $816.00 was made out of an escrow account. No further loan payments were received. Washington Mutual records document that by May 2004, Washington Mutual had determined that "this is a verified case of identity theft," and noted that there was "no contact to be made with borrower." Washington Mutual foreclosed on the property in October 2006, and sold the property to a third party in March 2007 for $138,000 (approximately $27,000 less than what I & R sold the property for in 2003.

2. 1214 E. Lafayette Street.

a. November 2003 Transaction.

66. The real property located at 1214 E. Lafayette Street is in a neighborhood of Stockton located north of Hazleton Avenue, South of Highway 4, East of California, and West of Wilson Way. Public real property records maintained on the AutotrackXP database disclose that IFTIKHAR AHMAD purchased this property from Elizabeth Johnson for $86,000 on or about August 4,

49

2003.  Less than four months later (on or about November 17, 2003) I & R sold the property to a person purporting to be Rebecca W.  The purchase was financed by $152,000 loan originated by Long Beach Mortgage.  The deed of trust in the escrow file indicates that upon recording it was to be mailed to Long Beach Mortgage Company at P.O. Box address in Stockton, CA.

67.  In the course of this investigation your affiant has reviewed the escrow file obtained from Commonwealth Land Title Company, the title company that opened and closed the escrow for the sale of 1214 E. Lafayette Street to Rebecca W.  Through a review of the escrow and loan files, and reports of interviews conducted with several participants to the transaction, I have determined that the following individuals and entities participated in the sales transaction:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| Rebecca W. | Purported buyer |
| Commonwealth Title Company | Title and escrow company |
| DEBORAH CHRISTINE TIMMINS | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Originating Lender |
| JOHN NGO | Account Manager |
| KURT HATTERLE | Appraiser |
| DENISE MARIE JAMES | Purported notary |

68.  The escrow file for this property includes a Uniform Residential Loan Application ("Loan Application") form

50

purportedly signed by Rebecca W. on November 17, 2003. the Loan Application includes the same or similar false statements as were made on the Loan Application in connection with the sale of the 533 N. Oro Street property (described in paragraph II.F.1 above).

69.  In particular, Section VIII of the Loan Application includes a number of declarations, including the declaration that no part of the funds used for the down payment are borrowed. According to the residential purchase agreement and the preliminary change of ownership report Rebecca W. was to contribute an $8,000 down payment towards the purchase of the property. The escrow file documents the receipt from "[W.]" of a $12,000.00 cashier's check drawn from the Bank of Stockton on November 20, 2003. Bank of Stockton records that I obtained by subpoena and reviewed disclose that the cashier's check was in fact funded by a withdrawal from the savings account (account #2114193200) of I & R. The savings withdrawal slip that documents the funding of the cashier's check is signed by IFTIKHAR AHMAD.

70.  Most significantly, and as discussed in paragraph II.F.1 above, the true Rebecca W. did not execute the Loan Application or any of the other escrow documents, including the deed of trust. The Loan Application includes Rebecca W.'s true name and social security number, and makes passing reference to her true address. Otherwise the other representations in the Loan Application are false. The true Rebecca W. did not sign the

51

Loan Application, did not sign any other documents connected to
the sale, and had no role whatsoever in the transaction.

71.   Included in the escrow file for the Lafayette property
are several fraudulent documents.   One such document is entitled
"California Board of Accountancy."   The document bears a footer
indicating it was transmitted via facsimile on November 3, 2003
at 03:16 p.m.   The document purports to provide information
establishing that Rebecca W. is a CPA, License No. 74000 (issued
December 31, 2003) with an address of 1437 Poplar Street,
Stockton CA.   I am advised that on or about June 26, 2007 an FBI
financial analyst queried licensee information maintained on the
California Board of Accountancy website.   The analyst first
queried license number 74000 and determined that the license
belongs to Robert Jeffrey Chitwood of Yreka, CA.   The analyst
then queried Rebecca W. by name.   The website indicated that
there is a Rebecca W. licensed by the California Board of
Accountancy, but that she resides at an address in San Diego, and
that her license number is 24429.   Her license is listed as
inactive.

72.   A second set of fraudulent documents in the escrow file
purports to establish that Manny and Teresa Munoz had entered
into an agreement with Rebecca W. dated December 1, 2003 to rent
the property located at 1437 Poplar Street.   The rental agreement
purports to be signed by Manny and Teressa Munoz and Rebecca W.,
but as indicated above the true Rebecca W. never had any

52

ownership interest in any real property at 1437 Poplar Street.
Accompanying the fraudulent rental agreement in the escrow file
is a photocopy of a personal check purportedly made payable to
Rebecca W., dated October 29, 2003, and drawn on an account at
Bank of America in the name of Manny Munoz and Teresa Munoz.  The
check is fraudulent.  According to a Bank of America official
contacted by an FBI financial analyst, the check references an
account number that does not exist and has never existed.
Moreover, the FBI financial analyst verified that the address
stated on the personal check is nonexistent.

      73.  The sale of the property at 1214 Lafayette Street
closed on or about November 17, 2003.  The escrow file includes a
duplicate check evidencing that I & R received a check for
$156,105.67 out of escrow.  Bank of Stockton records confirm that
November 28, 2003, IFTIKHAR AHMAD deposited a check into his I &
R account (#2114193220) in the amount of $156,105.67.

                b.   Rebecca W. Sells Property to I & R.

      74.  According to AutoTrackXP and escrow files I have
reviewed, on November 3, 2004, a grant deed was recorded in which
Rebecca W. purportedly transferred the property at 1214 Lafayette
Street to I & R.  In this transaction, I & R paid $155,454 in
cash (several thousand dollars less than what IFTIKHAR AHMAD sold
the property to Rebecca W. for in November 2003).  When I & R
purchased the property back from Rebecca W., the existing loan
#0075235655 at Washington Mutual for Rebecca W. was not paid off.

The grant deed purports to have been executed by Rebecca W. on October 16, 2004 in the presence of Teodulo Echeverra (Notary Commission #1286492). The recorded grant deed indicates that the deed is to be mailed to "I. AHMAD at 5265 Barbados Circle, Stockton, CA 95210".

### c.  I & R Flips Property

75.  Less than two months after Rebecca W. supposedly deeded the 1214 E. Lafayette Street property back to I & R for $155,454, and less than one month after that deed was recorded, I & R sold the  property to JAMIE D. ORTIZ for $220,000.  ORTIZ financed the entire purchase with a $176,000.00 loan originated by Long Beach Mortgage and secured by a first deed of trust, and a $44,000.00 loan originated by Long Beach Mortgage and secured by a second deed of trust.  At the conclusion of escrow after ORTIZ purchased the property from I & R, the Washington Mutual loan #0075235655 belonging to Rebecca W. was paid off.  The escrow file indicates that the first and second deeds of trust were to be mailed to Long Beach Mortgage at a P.O. Box address in Stockton upon recording.

76.  In the course of this investigation your affiant has reviewed the escrow and loan files for this transaction maintained by Fidelity National Title Company and Washington Mutual, respectively.  Based on my review of these files, I have

54

determined that the following individuals and entities

participated:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| JAMIE D. ORTIZ | Straw buyer |
| Fidelity National Title Company | Title and escrow company |
| Wendy Perry | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Wholesale Lender |
| Joel Blanford | Loan Officer |
| JOHN NGO | Loan Manager |
| CLINT T. KRUEGER | Appraiser |

77.  The loan and escrow files for this transaction include
the Uniform Residential Loan Application ("Loan Application").
The Loan Application that appears in the Washington Mutual's loan
file is signed by ORTIZ and WILLIAM BRIDGE and dated November 19,
2004.  On the Loan Application ORTIZ overstates his monthly
income.  He states that as November 19, 2004, his base employment
monthly income was $4,500, or about $54,000 per year.  In the
course of this investigation I obtained from the IRS and reviewed
true copies of the IMF MCC Transcript - Literal, for Form 1040
for JAMIE ORTIZ for tax years 2001 through 2006.  In 2001 through
2006 he reported the following annual earnings: $20,145 (2001),
$22,825 (2002), $20,444 (2003), $17,447 (2004), $22,797 (2005),
and $518 (2006).

55

78.   In addition to the false income information on the loan
application there are other facts tending to indicate that JAMIE
ORTIZ was a fraudulent or straw purchaser.

• First, on the loan application and on the purchase
agreement ORTIZ lists 2709 Bristol Avenue as his
current address (and provides a false telephone
number).  This is the same address that ROBERTO ORTIZ
ALFARO used as a current or former address on loan
applications in connection with the purchase of I & R
properties in 2004 and 2005, and the address is the
same address for a property that I & R purchased and
sold to GILBERTO ROSAS in December 2003.

• Second, in the escrow file there is a check drawn
from the escrow account made payable to JAMIE D. ORTIZ
in the amount of $734.88.  I obtained and reviewed a
copy of the front and back of that and determined that
the check is endorsed on the back by ORTIZ and beneath
his endorsement it is endorsed by I & R, meaning that
ORTIZ signed the check over to I & R.

• Third, the Final Check Register in the file
indicates that ORTIZ paid $12,400 into escrow in
connection with the closing.  In fact, the funds that
ORTIZ supposedly deposited into escrow came from a Bank
of Stockton cashier's check in the amount of $12,400,

56

funded by a withdrawal from I & R's account
(Account #2114193220).

79.   The sale of the property at 1214 Lafayette Street
closed on or about November 30, 2004.  The escrow file includes a
photocopy of a cashier's check made payable to I & R in the
amount of $60,019.88.  Bank of Stockton records confirm that
December 1, 2004, IFTIKHAR AHMAD deposited this check into I & R
account (#2114193201) at Bank of Stockton.

80.   Public records indicate that the lender recorded a
notice of default on this property on June 18, 2007, and
foreclosed on July 3, 2007.  The property was purchased by Master
Asset Backed Security Trust for $220,000 on July 12, 2007.

3.   2709 Bristol Avenue.

81.   The real property located at 2709 Bristol Avenue is
located in an area of Stockton bounded by the Calaveras River to
the north, Pershing Avenue to the east, Smith's canal to the
south, and Virginia Lane to the west.  Public real property
records maintained on a database called AutoTrackXP disclose that
I & R purchased this property on September 22, 2003 for $155,500
in cash from Lola Perez.  Less than three months later, on
December 4, 2003 I & R sold the property by grant deed to
GILBERTO ROSAS for $240,000.

82.   GILBERTO ROSAS financed the entire purchase price of
the property with a $194,560.28 loan from Long Beach Mortgage
secured by a first deed of trust, and with a $47,454.99 loan from

57

Long Beach Mortgage secured by a second deed of trust. According
to records I reviewed from the escrow file for this transaction,
the deed of trust was to be mailed to Long Beach Mortgage Company
at a P.O. Box address in Stockton, California.

83.    In the course of this investigation I reviewed the
escrow and loan files obtained from Commonwealth Land Title
Company and Washington Mutual, respectively, relating to the sale
of 2709 Bristol Avenue to ROSAS. Based on my review of those
files I have determined that the following individuals and
entities participated in the sales transaction:

| Individual or Entity | Role in Transaction |
| --- | --- |
| I & R | Seller |
| GILBERTO ROSAS | Straw buyer |
| Commonwealth Land Title Company | Title and escrow company |
| DEBORAH TIMMINS | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Wholesale Lender |
| Joel Blanford | Loan Officer |
| JOHN NGO | Account Manager |
| Larry J. Powell | Appraiser |
| DENISE JAMES | Purported Notary |

84.    The escrow and loan files include a Uniform Residential
Loan Application. The Loan Application in the loan file is
executed on December 5, 2003 by ROSAS and BRIDGE. It contains a
number of false statements, including a false social security

58

number, false date of birth, and an address associated with ROSA
GILBERTO, not GILBERTO ROSAS. Documents in the escrow file
suggest that this false information came to Long Beach Mortgage's
attention, but only after the escrow closed.

    85. There are other indications that ROSAS was a straw
purchaser and that the transaction was a fraud.

        • First, there is a handwritten one-page memo written
on "TheLoanCenter" stationary to "Debbie" that appears
to have been faxed on October 28, 2003. The
handwritten memo indicates a "New Order - Purchase" of
2709 W. Bristol Street for "$260K" - more than $100,000
more than I & R paid for the property just a little
more than a month earlier. The memo identifies the
buyer as "Ignacio Perez" and the seller as "Ahmad."
However, at some date after October 28, 2003, but
before the close of escrow on or about December 4,
2003, "Ignacio Perez" drops off the transaction as the
purchaser.

        • Second, and as discussed above, the address 2709
Bristol Avenue, Stockton, California appears as a
borrower's address or former address in connection with
other transactions. ROBERT ORTIZ ALFARO lists that
same address as his current or former address in a loan
application in connection with the purchase of two real
properties from I & R in 2004 and 2005.

• Third, the Final Disbursement Report in the escrow file documents the receipt from ROSAS of $2,235.00. In fact, IFTIKHAR AHMAD provided the funds. Bank of Stockton records disclose that he purchased a cashier's check in that amount on December 8, 2003.

• Fourth, the escrow file includes an interspousal transfer deed dated December 5, 2003 and executed by LETICIA ROSAS to GILBERTO ROSAS in which the former relinquishes all interest in 2709 Bristol Avenue to the latter. LETICIA ROSAS herself purchased a property yet another property from IFTIKHAR AHMAD in January 2003 for $165,000.

86. I & R's sale of the property at 2709 Bristol Avenue to ROSAS closed on or about December 12, 2003. The escrow file includes a Final Disbursement Report evidencing that I & R received from escrow a check in the amount of $227,090.07. Bank of Stockton records confirm that on December 18, 2003, IFTIKHAR AHMAD deposited this check into I & R account (#2114193220) at Bank of Stockton.

87. GILBERTO ROSAS sold this property to Jose Vasquez on June 3, 2005 for $301,000 financed by a $240,000 mortgage. Notices of default are recorded in December 2006 and May 2007, and the property was foreclosed upon on April 10, 2007.

## 4.   2215 E. Vine Street.

88.   The real property located at 2215 E. Vine Street is
located in an area of Stockton north of Fremont Street, South of
Waterloo Road, East of Wilson Way, and West of Highway 99.   An
AutoTrackXP query disclosed that I & R purchased this property on
September 22, 2003 for $89,000 in cash from Ghulam Hussain.
Approximately three months later, on February 19, 2004, I & R
sold the property by grant deed to GILBERTO ROSAS for $157,000.

89.   GILBERTO ROSAS financed a portion of the purchase price
with an approximately $144,000 loan from Long Beach Mortgage.
According to records I reviewed from the escrow file for this
transaction the deed of trust was mailed to Long Beach Mortgage
Company at a P.O. box address in Stockton, California.

90.   Based on my review of the loan and escrow files I have
identified the following participants in this transaction:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| GILBERTO ROSAS | buyer |
| Commonwealth Land Title Company | Title and escrow company |
| Wendy M. Perry | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Wholesale Lender |
| Joel Blanford | Loan Officer |
| JOHN NGO | Account Manager |

| KURT HATTERLE | Appraiser |

91.   The Uniform Residential Loan Application executed on
February 19, 2004 by GILBERTO ROSAS includes a number of
statements that are false.

> • First, the loan application indicates that ROSAS has
> a base monthly employment income of $14,544.17, and
> further indicates that ROSAS works as a foreman at OC
> Communications in Stockton, and has been so employed in
> that line of work for 5 years.  These assertions
> contradict assertions ROSAS made just three months
> earlier when applying for a loan to purchase the
> property at 2709 Bristol Avenue (see discussion above).
> When purchasing 2709 Bristol Avenue, ROSAS indicated
> that he had a base monthly income of $4,051.98, that he
> worked as a Manager (not Foreman) at O C Communications
> in Elk Grove (not Stockton), and that he had been
> employed in that line of work for 8 years (not 5).  EDD
> records indicate that in 2003 and 2004 ROSAS worked at
> O C Communications in Elk Grove, CA.  A copy of the
> Information Returns Master File (RMF) Payee transcripts
> I obtained from the IRS for ROSAS for 2003 and 2004
> indicate that he received from O C Communications
> $35,524 in wages in 2003, and $42,439 in 2004.  On his
> 2003 filed 1040 tax return ROSAS identifies his

62

occupation as "laborer," and on his filed 2004 and 2005 1040 tax returns he identifies his occupation as "installer."

• Second, ROSAS represents that he owns property at 1205 Banner Avenue and at 1937 S. San Joaquin. Public records indicate he acquired the 1937 S. San Joaquin property in November 2002 from MUMRAIZ AHMAD, but my search of public real property records maintained on AutoTrackXP did not find any property owned by ROSAS anywhere in California with an address of 1205 Banner Avenue. Moreover, despite having closed on the purchase of the property at 2709 Bristol Avenue in December 2003, ROSAS did not disclose his purported ownership of that property (and the substantial loan he incurred in connection with it) on the loan application.

• Third, ROSAS responded "no" to the question in the Declarations Section of the Loan Application asking if any part of the down payment is borrowed. The escrow file reflects the receipt of a cashier's check drawn at Bank of America and paid into escrow in the amount of $22,790, of which a significant portion constituted ROSAS' down payment. The cashier's check indicates that it was "purchased by" "Gilbert Rosas." In fact, ROSAS did not provide the funds to purchase the check.

Bank of America records indicate that MUSHTAQ AHMAD signed as the purchaser of the cashier's check, and that the check was funded with a savings withdrawal from MUSHTAQ AHMAD's Bank of America account (account #0825600421) on February 24, 2004.  On the savings withdrawal slip, MUSHTAQ AHMAD identified his address as 5265 Barbados Circle, Stockton, CA.

92.  There are several other indications of fraud in the transaction.

• First, the final check register reflects that at the close of escrow $60,000 was paid out to MUSHTAQ AHMAD. MUSHTAQ AHMAD was not the seller of the property, and there is no explanation given for why he would receive funds from the escrow.  Given MUSHTAQ AHMAD's role in financing the ROSAS down payment, I have reason to believe that the escrow check was meant to compensate MUSHTAQ AHMAD, at least in part, for his silent role in providing the funds for ROSAS' down payment.

• Second, when the property was first placed in escrow, ROSAS was not the original purchaser.  The escrow file includes three separate "Buyer Estimated Closing Statements" for three different purchasers: Fernando Verdin, Montalvo Castro & GILBERTO ROSAS.

• Third, it appears that IFTIKHAR AHMAD exercised control over the property prior to the date when I & R

64

purportedly purchased it on December 18, 2003.   On
October 3, 2003, more than two months prior to
purchasing the property, IFTIKHAR AHMAD made a mortgage
payment on the supposed prior owner's Washington Mutual
loan.   The appraisal, which was completed on December
15, 2003, notes that "[t]he Appraiser was instructed to
use the seller name and current property owner of I & R
INVESTMENTS, INC.   The current owner that is noted in
the public record information is Hussain Ghulam."   The
December 15, 2003 appraisal also notes that the subject
property had undergone a "major renovation," apparently
just prior to I & R purchasing the property on December
18, 2003.   And, Hussain Ghulam's loan with Washington
Mutual was not paid until I & R closed escrow on the
ROSAS transaction.

93.   The sale of the property located at 2215 E. Vine Street
closed on or about February 19, 2004.   The escrow file includes a
photocopy of the front of a check made payable to I & R in the
amount of $8,469.75.   However, the escrow file did not include a
copy of the back of the check that would indicate where these
funds were deposited.

94.   In September 2005, ROSAS sold the property for $260,000
financed by a $208,000 mortgage through Long Beach Mortgage.

65

5. 952 N. Solari Avenue.

95. The real property located at 952 N. Solari Avenue is located in the Rose Terrace area of Stockton. An AutoTrackXP revealed that I & R purchased this property for $86,500 in cash from Julian Girouard on or about December 2, 2003. On or about October 13, 2004, I & R sold the property by grant deed to MANPREET SINGH and Alvaro Cardona for $235,000.

96. SINGH financed the entire purchase price through Long Beach Mortgage. She obtained a $190,212.48 loan secured by a first deed of trust, and a $46,895.60 loan secured by a second deed of trust. According to records contained in the escrow file, at closing the deed of trust was mailed to Long Beach Mortgage Company at a P.O. box address in Stockton, California. Both loans were subsequently serviced by Washington Mutual.

97. In the course of this investigation your affiant obtained and reviewed the escrow and loan files for this transaction maintained by Fidelity National Title Company and Washington Mutual respectively. Based on my review of these files, I have determined that the following individuals and entities participated in the transaction:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| MANPREET SINGH | Purported buyer |
| Fidelity National Title | Title and escrow company |
| Wendy Perry | Escrow Officer |

| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Originating Lender |
| Joel Blanford | Loan Officer |
| KURT HATTERLE | Appraiser |

98.   The loan file includes a copy of the Loan Application executed on October 3, 2004 by SINGH and BRIDGE.  The Loan Application contains a number of statements that are false.

• First, the Loan Application indicates that SINGH was born on April 20, 1980.  However, DMV records indicate that SINGH was born on April 20, 1983.  The Loan Application further indicates that SINGH is self-employed as a manicurist and has been 5 years on "this job."  For this to be true, SINGH would have had to have begun working as a self-employed manicurist when she was 16 years old.  In fact, to the extent SINGH worked at all prior to completing the Loan Application, she seems to have been a wage earner.  EDD records indicate that during the 1st through 4th Quarter of 2004 MANPREET SINGH was employed by Providian Bancorp, and in the 4th Quarter of 2004 MANPREET SINGH was employed by Bath and Body Works.

• Second, SINGH represented on the Loan Application that as of October 2004 she had base employment earnings of $5,500 per month, or $66,000 per year.  I have obtained and reviewed from the Department of

67

Treasury, Internal Revenue Service, a true copy of the
IMF MCC Transcript - Literal, for Form 1040 for
MANPREET SINGH for tax years 2001 through 2006.  Those
transcripts record that SINGH did not file any federal
income tax returns in 2001, 2002, 2003 or 2004.  In
2005, she reported an adjusted gross income of $20,642,
and in 2006 she reported an adjusted gross income of
$24,515.

99.  I also obtained and reviewed true copies of the
Information Returns Master File (IRMF) Payee transcript for
MANPREET SINGH for tax years 2001 through 2006.  Those
transcripts indicate that SINGH had no reported wage earnings in
2001, $490.00 in 2002, no reported wage earnings in 2003, $31 in
2004, $20,384 in 2005, and $24,366 in 2006.  On both her filed
2005 and 2006 1040 tax returns (which are both unsigned) SINGH
lists her occupation as "Pharmacy Clerk."

100.  There is another fact indicating fraud.  Bank of
Stockton records document $20,300 in payments made by IFTIKHAR
AHMAD - either by personal or cashier's check - to SINGH between
January 2005 and October 2005.  There is no legitimate business
reason for these transfers.  Based on my investigation and
training I have reason to believe that these were payments that
IFTIKHAR AHMAD made to SINGH in return for her participation in
the scheme.

101.   The sale of the property located at 952 N. Solari
closed on or about February 19, 2004.   The escrow file includes a
Final Check Register evidencing that I & R received from escrow a
check in the amount of $226,801.52.   Bank of Stockton records
confirm that on October 26, 2004, IFTIKHAR AHMAD deposited this
check into I & R account #2114193220 at Bank of Stockton.

102.   From my review of public records, this property
appears to still be owned by SINGH.

6.   1306 S. American Street.

103.   The real property located at 1306 S. American Street
is in an area of Stockton bounded to the north by Harding Way, to
the south by Eighth Street, to the east by Highway 99, and to the
west by Interstate 5.   An AutoTrackXP query revealed the
following transaction for this property:

| Date | Purchaser | Seller | Amount |
|------|-----------|--------|--------|
| 9/2000 | IFTIKHAR AHMAD | Gow Family Corp. | $54,000 |
| 11/22/2000 | Beatriz Becerra | IFTIKHAR AHMAD | $118,000 |
| 2/21/2001 | Nancy Verna | Beatriz Becerra | $115,000 |
| 2/13/2002 | IFTIKHAR AHMAD | Nancy Verna | $102,727 |
| 1/11/2005 | I & R and ILYAS AHMAD | IFTIKHAR AHMAD | n/a |

On or about January 13, 2005, I & R and ILYAS AHMAD sold the
property by grant deed to SINGH for $460,000.   SINGH financed the

69

purchase with a $391,000 loan obtained from Long Beach Mortgage. Escrow file records indicate the deed of trust was mailed to Long Beach Mortgage Company at a P.O. Box address in Stockton, California.

104. I reviewed the escrow file obtained from Fidelity National Title Company, the title company that opened and closed the escrow for the sale of 1306 S. American Street to MANPREET SINGH, and determined that the following individuals and entities participated:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R and ILYAS AHMAD | Sellers |
| MANPREET SINGH | Purported buyer |
| Fidelity National Title | Title and escrow company |
| Wendy Perry | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Originating Lender |
| CLINT KRUEGER | Appraiser |

105. In Washington Mutual's loan file for this property I found a Uniform Residential Loan Application ("Loan Application") executed on January 9, 2005 by SINGH. The Loan Application repeats the same or similar misrepresentations contained in the Loan Application for SINGH's purchase of 952 N. Solari (discussed above).

106. In particular, SINGH represented on the Loan Application that as of January 2005 she had base employment

70

earnings of $8,300 per month or $100,000 per year. This amount
is $2,800 per month more than the amount she represented that she
earned on the Loan Application to purchase the 952 N. Solari
property just three months earlier. Moreover, and as indicated
above, federal tax returns and return information do not
substantiate that SINGH had income anywhere near $8,300 per
month.

107. In addition, documents in the escrow file indicate
that SINGH contributed $87,400 towards the close of escrow, of
which more than $60,000 constituted her down payment towards the
purchase price. In the declaration section of the Loan
Application SINGH responded "no" in response to the question "is
any part of the down payment borrowed?" Yet the Purchase
Agreement dated December 4, 2004 indicates that the "seller is to
carry back 15% $69,000 at 8% interest only for five years."[1]
And, SINGH's down payment was in fact funded by an $87,400
cashier's check drawn on the Bank of Stockton. Bank of Stockton
records indicate that the cashier's check was purchased with
funds drawn from I & R's account (#2114193220) at the Bank of
Stockton.

108. There are several other indications of fraud in the
transaction.

_____

[1] A comments and concerns log in the loan file apparently
dated December 20, 2004 references a "2nd MTG W/SELLER carry $69K,
$460/MO." However, an undated handwritten note in the loan file
indicates "waived 2nd Note No 2nd on this loan."

71

• First, the purchase agreement dated December 4, 2004 identifies MANPREET SINGH's address as "5265 Barbados Circle, Stockton 95210." Not only is this not the address she listed on her loan application, but it is the address of IFTIKHAR AHMAD.

• Second, at the close of escrow, Fidelity National Title Company wrote a check made payable to SINGH in the amount of $1,519.85, presumably because she had contributed more money to the close of escrow than was in fact needed. Bank of Stockton records indicate that check was subsequently deposited into I & R's checking account (#2114193201) on January 18, 2005.

• Third, Washington Mutual records indicate that after the close of escrow monthly mortgage payments were made on SINGH's loan from IFTIKHAR AHMAD's bank account (#2113193201) using pay-by-phone system. Washington Mutual records further indicate that the last monthly mortgage payment on the loan was made on or about July 13, 2005. Thereafter the note went into default. Washington Mutual recorded a notice of default on November 29, 2005, and foreclosed on the property on March 31, 2006. Washington Mutual's loss on the loan associated with this transaction is unknown.

• Fourth, the loan file indicates that during the underwriting process JOHN NGO produced a document dated

72

January 5, 2005 entitled "Self-Employed Information."

The document listed the following information:

    Name of business: Manicurist
    Business Phone Listing: 209-477-7317
    Agency Called: CA Board of Cosmetology
    Agency Phone Number: INTERNET
    License Number: 223495
    License Issued: 05/02/01
    License Expires: 05/31/05
    Active and Good Standing: Y
    Sole Proprietor's Name: Manpreet Singh

On August 10, 2007, an FBI financial analyst

attempted to verify the above information on the

INTERNET website for the Board of Barbering and

Cosmetology.  A query was conducted on both the

license number and the Sole Proprietor's Name.

The following information was received on a query

of license number 223495 (two hits):

    License Name: Nguyen Kevin
    License Type: Manicurist
    License Number: 223495
    License Status: Clear
    Expiration Date: May 31, 2009
    Issue Date: May 2, 2001
    County: San Joaquin

    License Name: Santiago Kristin Terese
    License Type: Cosmetologist
    License Number: 223495
    License Status: Clear
    Expiration Date: May 31, 2008
    Issue Date: May 2, 1990
    County: Orange

    There were no hits on the query for License Name:
    Manpreet Singh

73

109.  The escrow on the 1306 S. American Street property closed on or about January 11, 2005.  The escrow file includes a copy of a check made payable to I & R in the amount of $336,316.45.  Bank of Stockton records confirm that on January 31, 2005, IFTIKHAR AHMAD deposited this check into I & R account #2114193201 at Bank of Stockton.

110.  Public records reflect that a notice of default was recorded on November 29, 2005, and that a foreclosure occurred on March 27, 2006.  Long Beach Mortgage Trust appears to have acquired the property at foreclosure.  On June 9, 2006, Deutsche Bank National sold the property to a third party for $270,000 ($190,000 less than what MANPREET SINGH paid for the property in approximately 18 months earlier).

7.  2503 N. Oregon, Street.

111.  The real property located at 2503 N. Oregon Street, Stockton, California is in an area of Stockton north of Country Club Blvd., south of Alpine Avenue, east of the San Joaquin River, and west of Interstate 5.  An AutoTrackXP query disclosed that IFTIKHAR AHMAD purchased the property on or about April 17, 2003 for $120,000 in cash.  On or about July 30, 2003 (a little more than two months later), IFTIKHAR AHMAD transferred the property to I & R, which sold the property that same day by grant deed to GONZALO ZAVALA for $275,000 (an increase of about 130%).  ZAVALA financed the purchase with a $247,000 loan from Long Beach Mortgage.  Escrow file records indicate the deed of trust was

74

mailed to Long Beach Mortgage Company at a P.O. box address in
Stockton.

112.   In the course of this investigation your affiant
obtained and reviewed the escrow and loan files maintained by
Fidelity National Title Company and Washington Mutual
respectively.   Based on my review of those files I have
determined that the following individuals and entities
participated:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| GONZALO ZAVALA | Purported buyer |
| Commonwealth Title | Title and escrow company |
| DEBORAH CHRISTINE TIMMINS | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| DENISE MARIE JAMES | Notary |
| Long Beach Mortgage | Wholesale lender |
| JOHN NGO | Account Manager |
| Joel Blanford | Loan Representative |
| KURT HATTERLE | Appraiser |

113.   The escrow file includes a Loan Application
purportedly executed by GONZALO ZAVALA on July 25, 2003.   The
Loan Application contains a number of false statements.

> • First, the Loan Application indicates that ZAVALA
> is self employed as a landscaper, has maintained the
> same job for six years, and has been employed in the
> same line of work for 10 years.   However, tax return

75

information (including W-2 filings) contradict these
statements.  According to the tax return information,
in 2001, ZAVALA earned $44,884 in wages from R S V
Sport Inc.  In 2002, he earned $7,200 in wages from
Kobos Manufacturing, and $21,863 in wages from R S V
Sport Inc.  In 2003, he earned $2,100 in wages from
Jones Apparel of Texas, $36,667 in wages from Ricchi
Apparel Inc., and $2,400 in wages from Kobos
Manufacturing Inc.  On his Form 1040, U.S. Income Tax
Returns, ZAVALA reported gross income consistent with
these W-2 records.  In 2001, he reported gross of
$44,926, in 2002 he reported gross income of $29,389,
and in 2003 he reported gross income of $35,666.  On
his filed form 1040 tax returns ZAVALA variously lists
his occupation as "apparel grader" (2001), "grader and
MAR" (2002), and "computer OPE" (2003-2005).  One
document in the loan file for this transaction reflects
that JOHN NGO, an account manager at Long Beach
Mortgage, purportedly conducted an audit in connection
with the underwriting process.  The document indicates,
among other things, that NGO contacted the California
Board of Contractors by internet on or about July 30,
2003 and determined GONZALO ZAVALA was a landscaper,
that he maintained license number 740173, that the
license was issued on 09/08/97 and that it expired on

76

09/30/03.  On July 25, 2007, a financial analyst with the FBI queried the California Contractors State License Board's website.  She ascertained that license #740173 was issued to Jose Rolando Zavala on 09/08/1997, not GONZALO ZAVALA.  She also ascertained that Jose Rolando Zavala operates "Zavala's Hardwood Floors" in Scotts Valley, CA.

• Second, ZAVALA overstated his income.  In the Loan Application ZAVALA states that he has a base monthly income of $9,700 or $116,400 per year.  As indicated above, his tax return information indicates that his income is significantly less than that figure.

• Third, ZAVALA states that he rents his present residence at 511 Adelbert Street in Stockton, CA, and further states that he intends to occupy the residence at 2503 N. Oregon Avenue.  In fact, according to tax return information I have reviewed, ZAVALA resided at addresses in Southern California between 2001 and 2006, and not in San Joaquin County.  Nonetheless, the 511 Adelbert Street bears a connection to the investigation.  It is the same address for real property that Silvia Jawwaad purchased from IFTIKHAR AHMAD in or about January 2003.

• Fourth, the escrow file indicates that ZAVALA contributed $25,000 towards the close of escrow, of

77

which approximately $18,000 ($275,000 sale minus
$247,500 loan) was applied as a down payment on the
purchase price.  On the Loan Application Zavala checks
the "No" in response to the question: "Is any part of
the down payment borrowed?"  In fact, all of the funds
for the down payment came from the seller.  The $25,000
contribution ZAVALA supposedly made towards escrow came
in the form of a cashier's check for $25,000 drawn on
Bank of Stockton on or about July 29, 2003.  Bank of
Stockton records indicate that the cashier's check was
funded with a savings withdrawal from IFTIKHAR AHMAD's
account (#2114193220).

114.   This sale of the property located at 2503 N. Oregon
Street closed on or about July 30, 2003.  The escrow file
includes a duplicate check evidence a payment from escrow to I &
R in the amount of $262,685.38.  Bank of Stockton records confirm
that on August 14, 2003, IFTIKHAR AHMAD deposited this check into
I & R account #2114193220 at Bank of Stockton.

115.   Public record indicate that ZAVALA sold the property
to Maria Campos on September 1, 2004 for $300,000, of which
$270,000 was financed with a mortgage through New Century
Mortgage.  A notice of default on the property was recorded on
May 10, 2007.

## 8.   7903 S. Harlan Road, French Camp, CA.

116.   The real property located at 7903 S. Harlan Road is in French Camp, CA.  Public real property records maintained on a database called AutoTrackXP disclose that IFTIKHAR AHMAD acquired the property by grant deed from Beatrice and Maria Fernandez on August 21, 2003, and transferred the property that same day to GONZALO ZAVALA.  ZAVALA paid $225,000 and financed a significant portion of the purchase with a $202,000 loan from Long Beach Mortgage.  According to escrow file records, the deed of trust issued in connection with the loan was mailed to Long Beach Mortgage Company at a P.O. Box address in Stockton, California.

117.   I obtained and reviewed the escrow and loan files for this transaction maintained by Fidelity National Title Company and Washington Mutual respectively.  Based on my review I have determined that the following individuals and entities participated:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| GONZALO ZAVALA | Purported buyer |
| Commonwealth Title | Title and escrow company |
| DEBORAH TIMMINS | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| DEBORAH TIMMINS | Notary |
| Long Beach Mortgage | Wholesale lender |
| JOHN NGO | Account Manager |

79

| Joel Blanford | Loan Representative |
|---|---|
| Unknown | Appraiser |

118.   The loan file includes a Loan Application executed by
ZAVALA and BRIDGE on August 20, 2003.   The Loan Application
contains the same or similar false statements as appear in the
Loan Application in connection with ZAVALA'S purchase of 2503 N.
Oregon Street.

• First, in the Loan Application ZAVALA states that he
has a base monthly income of $6,200 or $74,400 a year.
As indicated above, his reported income does not
approach that figure.   Moreover his stated income is
significantly less ($3,500 per month less) than the
stated income that appears on his loan application in
connection with the 2503 N. Oregon Street purchase
transaction.   The two loan applications were executed
less than a month apart.

• Second, in the assets and liabilities section of the
Loan Application, ZAVALA neglects to list the N. Oregon
Street property that he closed on just weeks before
completely this Loan Application.   The omission is
significant given then he purportedly undertook a
significant mortgage obligation in connection with the
purchase of the N. Oregon Street property.

80

• Third, the escrow file indicates that ZAVALA
contributed $28,000 towards the close of escrow, of
which approximately $23,000 ($225,000 purchase price
minus $202,500 loan) was applied as a down payment on
the purchase price. On the Loan Application Zavala
checks the "No" in response to the question: "Is any
part of the down payment borrowed?" In fact, it all of
the down payment came from the seller. The $25,000
contribution ZAVALA supposedly made towards escrow came
in the form of a cashier's check for $25,000 drawn on
Bank of Stockton on or about July 29, 2003. Bank of
Stockton records indicate that the cashier's check was
funded with a savings withdrawal from I & R's account
(#2114193220).

119. The sale of the property located at 2503 N. Oregon
Street closed on or about August 31, 2003. The escrow file
includes a duplicate check evidence a payment from escrow to I &
R in the amount of $97,875.69. Bank of Stockton records confirm
that on September 2, 2003, IFTIKHAR AHMAD deposited this check
into I & R account #2114193220 at Bank of Stockton.

120. According to public records, ZAVALA sold the property
on March 2, 2005 for $265,000, of which $251,750 was financed by
a $251,750 mortgage.

9.   729 E. Sonora.

121.   The real property located at 729 E. Sonora is in an
area of Stockton bounded by Harding Way to the north, Eighth
Street to the south, Wilson Way to the east, Interstate 5 to the
west.   An  AutoTrackXP query disclosed a complex title history
involving real estate flipping over many years by IFTIKHAR AMHAD
and others as follows:

| Purchaser | Seller | Date | Amount | Loan |
|-----------|--------|------|--------|------|
| Mohammed Azam | MUMRAIZ AHMAD | 8/1997 | $85,000 | $63,750 |
| IFTIKHAR AHMAD | Bankers Trust | 1/2000 | $35,000 | Cash |
| Cindy Scott | IFTIKHAR AHMAD | 3/2001 | $85,000 | $76,500 |
| IFTIKHAR AHMAD | Cindy Scott | 8/2002 | $62,500 | Cash |
| Oscar Rivera | IFTIKHAR AHMAD | 8/2002 | $62,500 | $112,500 |
| I & R | Oscar Rivera | 10/2004 | $179,400 | Cash |

On January 11, 2005, I & R transferred the property to ROBERTO
ORTIZ ALFARO.   ALFARO paid $290,000, of which $261,000 was
financed with a loan from Long Beach Mortgage.   This sales price
is approximately $110,000 more than I & R purportedly paid for
the property just three months earlier.   Records in the escrow
file indicate that the deed of trust was mailed to Long Beach
Mortgage at a P.O. Box address in Stockton, California.

82

122.   I obtained and reviewed the escrow and loan files for this transaction maintained by Fidelity National Title Company and Washington Mutual respectively.  Based on my review of these files I have determined that the following individuals and entities participated:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| ROBERTO ORTIZ ALFARO | Purported buyer |
| Fidelity National Title | Title and escrow company |
| Wendy Perry | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Wholesale lender |
| Joel Blanford | Loan officer |
| JOHN NGO | Account manager |
| CLINT KRUEGER | Appraiser |
| Lisa Towers | Notary |

123.   The loan file includes a Loan Application executed by ALFARO and BRIDGE on January 11, 2005.  In Section VIII of the Loan Application ALFARO responds "no" to the question "[i]s any part of the down payment borrowed?"  Information in the escrow file indicates that ALFARO contributed $12,400 to the close of escrow, of which a portion went towards his down payment.  The escrow file also include a cashier's check drawn at Bank of Stockton in the amount of $12,400.  However, Bank of Stockton records indicate that cashier's check was funded by a savings

withdrawal from I & R's Bank of Stockton account (account #2114193220).

124.   In Section V of the Loan Application ALFARO indicates that he has a base monthly employment income of $6,500, and elsewhere in the Loan Application he indicates that he is a farmer employed by Stokes Farms.   In the course of this investigation I obtained true copies of the Information Returns Master File Payee transcript for ROBERTO ORTIZ ALFARO for the tax years 2001 through 2006.   According to these transcripts, ALFARO received $19,003 in total wages in 2004, and $20,848 in total wages in 2005.

125.   There are several other indications of fraud in the transaction.

> • First, the loan files include two credit documents, purportedly provided by SBC California and Comcast respectively.   The first credit letter, from SBC California, is dated January 3, 2005, addressed to ALFARO, and references a telephone number in the 209 area code.   In pertinent part it reads: "You have asked us to provide a letter regarding your service history with SBC California.   Our records show that you have had telephone service with us from August 2003 through the present day with no late or delinquent payments."   After funding the loan, Washington Mutual's risk mitigation department contacted the customer service

department of SBC Communications.  The customer service
department indicated that the letter was invalid, and
that the phone number references an AT&T number and
that AT&T has no record of this account number.  The
second credit document purports to be from Comcast.  It
is dated January 3, 2005, and is entitled "Account
Summary."  It references an account number and a client
(Roberto Alfaro) and provides account history
information.  According to Washington Mutual's risk
mitigation department, it contacted Comcast's customer
service department and was advised that the account
number and letter form are invalid.  Indeed, Comcast
indicated it does not issue form letters of this kind.

• Second, after the loan was funded, Washington Mutual
investigated the appraisal report completed by KRUEGER.
According to information supplied by Washington Mutual,
it determined that KRUEGER had been on Washington
Mutual's ineligible list since June 21, 2004.  It
concluded that the appraisal was for an inflated value
and included misrepresentations about the subject
property and the comparison properties, and that the
appraiser misrepresented the subject as a legal,
conforming two-unit property when it was not.  Indeed,
according to information obtained from the Office of
Real Estate Appraisers KRUEGER's license was suspended

85

at the time he conducted the appraisal on this
property.

126.   The escrow closed on January 11, 2005.   The escrow
file includes a duplicate check evidence a payment from escrow to
I & R in the amount of $82,582.00.   Bank of Stockton records
confirm that January 31, 2005, IFTIKHAR AHMAD deposited this
check into I & R checking account (#2114193201) at Bank of
Stockton.

127.   Public real property records indicate that Washington
Mutual recorded a notice of default on June 21, 2005, less than
six months later.   It foreclosed on October 21, 2005, and Long
Beach Mortgage Trust acquired the property.   According to public
records, Long Beach Mortgage Trust sold the property on July 25,
2006 for $149,000.

10.   2223 E. Mistletoe, Stockton, CA.

128.   The real property located at 2223 E. Mistletoe is
located in Stockton.   This property is bounded to the north by E.
Alpine Avenue, to the southeast by N. Wilson Way, and to the west
by West Lane.   According to real property records accessed
through AutoTrackXP, I & R purchased this property on or about
August 16, 2004 from James Tomasi for $115,000 in cash.   On
November 16, 2004, I & R sold the property to ROBERTO ORTIZ
ALFARO for $230,000.   The sale was financed by a $184,000 loan
from Long Beach Mortgage.   This sales price is $115,000 more than
I & R purportedly paid for the property just three months

86

earlier. Records in the escrow file indicate that the deed of trust was mailed to Long Beach Mortgage at a P.O. Box address in Stockton, California.

129. I obtained and reviewed the escrow and loan files for this transaction maintained by Fidelity National Title Company and Washington Mutual respectively. Based on my review of these files I have determined that the following individuals and entities participated:

| Individual or Entity | Role in Transaction |
|---|---|
| I & R | Seller |
| ROBERTO ORTIZ ALFARO | Purported buyer |
| Fidelity National Title | Title and escrow company |
| Wendy Perry | Escrow Officer |
| Loan Center (BILL BRIDGE) | Broker |
| Long Beach Mortgage | Wholesale lender |
| Joel Blanford | Loan officer |
| JOHN NGO | Account manager |
| CLINT KRUEGER | Appraiser |
| Lisa Towers | Notary |

130. In Section V of the Loan Application ALFARO indicates that he has a base monthly employment income of $5,600, or $66,000 a year. This base monthly employment income figure is $900 less than the $6,500 figure he stated on the loan application in connection with his purchase of 729 E Sonora in January 2005, just a few months later. Moreover, in the course of this investigation I obtained true copies of the Information

87

Returns Master File Payee transcript for ROBERTO ORTIZ ALFARO for the tax years 2001 through 2006. According to these transcripts, ALFARO received $19,003 in total wages in 2004, and $20,848 in total wages in 2005.

131. There are other indications of fraud. As before ALFARO lists 2709 Bristol Avenue as his address. This is the same address JAMIE ORTIZ used on his loan application when purchasing 1214 Lafayette. And, it is the same address of a property that I & R purchased and later sold to GILBERTO ROSAS in December 2003.

132. Moreover, the appraisal for this property is signed by CLINT KRUEGER and dated October 12, 2004. The appraisal includes KRUEGER's state certification and license number. However, in October 2004, KRUEGER's appraiser's license was in suspended status.

133. The sale of this property located at 2223 E. Mistletoe Avenue closed on or about November 24, 2004. A payment from escrow was made to I & R in the amount of $228,436.56. Bank of Stockton records confirm that on November 26, 2004, IFTIKHAR AHMAD deposited this check into I & R account #2114193220 at Bank of Stockton.

134. Public real property records disclose that notices of default were recorded on this property on May 18, 2005, October 27, 2005, and February 3, 2006. On February 22, 2006, ROCKRIDGE F I LLC foreclosed on the property.

G.   Other Transactions, Including Recent Transactions.

1.   Other Real Property Transactions.

135.   As discussed above, with the assistance of an FBI
financial analyst I reviewed in detail escrow and loan files
regarding approximately twenty (20) real property transactions
involving IFTIKHAR AHMAD or I & R.  Public records reveal that
between September 1996 and June 2007, IFTIKHAR AHMAD and I & R
participated in numerous other real property transactions
primarily in the Stockton area.  Those transactions are
summarized in Attachment C hereto.

136.   Though I have not reviewed many of the transactions in
Attachment C in detail, my review of public records relating to
the transactions summarized in Attachment C discloses many common
participants (witting and unwitting) in the scheme, including
purchasers, sellers, lenders, and escrow companies.  For example,
in 1999, IFTIKHAR AHMAD sold a property located 345 S. American
Street to Asfar Khan.  Eight years later public records (as
summarized in Attachment C) show that Asfar Khan is still
purchasing properties from I & R.  As recently as May 23, 2007, I
& R transferred a property in Stockton to ILYAS AHMAD and Asfar
Khan for $500,000.

137.   Among sellers, certain individuals come and go from
the scheme over the space of many years.  For example, as
Attachment C indicates, as early as October 1998 Mohammed Azam
sold a property located at 715 E. Anderson Street to IFTIKHAR

89

AHMAD. Approximately four years later Mohammed Azam purchased a property from IFTIKHAR AHMAD - 1331 E. Roosevelt Street. As detailed below, a May 2007 trash cover at the 5265 Barbados Circle residence of IFTIKHAR AHMAD yielded trash addressed to Mohammed Azam concerning real property. Moreover, there are several purchasers who acquire property from IFTIKHAR AHMAD after different times during the course of the scheme. Oscar Rivera is another example. He purchased three properties from IFTIKHAR AHMAD in 2002, and then purchased three more properties from I & R in 2006.

138.  As Attachment C further indicates, many of the same lenders handle multiple transactions involving IFTIKHAR AHMAD. Beneficial of California, New Century Mortgage, Stockton Mortgage, and Freemont Investment and Loan handled loans involving IFITKHAR AHMAD or I & R properties, sometimes years apart. For example, New Century Mortgage financed IFITKHAR AHMAD's purchase of 715 E. Anderson Street in October 1998. As recently, as February 2007, New Century Mortgage financed Eduardo Rodriguez's purchase of property from I & R. Moreover many of the same title companies handle multiple IFTIKHAR AHMAD and I & R transactions. Fidelity National Title and Alliance Title Company are just two such companies that participated in many of IFTIKHAR AHMAD's earliest transactions dating to 1998 and 1999, and continue to participate in his most recent sale transactions.

139.   In particular, and as Attachment C documents, during the 2001 through 2005 time frame the substantial majority of all of the individuals buying property from IFTIKHAR AHMAD or I & R financed their purchase through Long Beach Mortgage.  The table below summarizes these transactions (excluding those discussed in greater detail above):

| Property | Seller | Purchaser | Sales Price (Loan Amount) | Date |
|---|---|---|---|---|
| 1138 S. Grant, Stockton, CA | IFTIKHAR AHMAD | Shane Bailey | $76,000 ($64,000 financed through Long Beach Mortgage) | 5/23/2001 |
| 1703 N. Palm Avenue | IFTIKHAR AHMAD | Jose and Maria Serrano | $105,000 ($83,300 financed through Long Beach Mortgage) | 7/13/2001 |
| 27 S. Pilgrim Street, Stockton, CA | IFTIKHAR AHMAD | Julio Lopez | $160,000 ($128,000 financed through Long Beach Mortgage) | 12/7/2001 |
| 721 E. Anderson Street, Stockton, CA | IFTIKHAR AHMAD | Oscar Rivera | $120,000 ($96,000 financed through Long Beach Mortgage) | 7/23/2002 |
| 511 Sharon Avenue, Stockton, CA | IFTIKHAR AHMAD | Hilda Lopez | $280,000 ($224,000 loan from Long Beach Mortgage) | 10/18/2002 |

| 748 Eugenia Avenue, Stockton, CA | IFTIKHAR AHMAD | Lupe Campos | $130,000 ($100,000 loan from Long Beach Mortgage) | 10/3/2002 |
|---|---|---|---|---|
| 1525 S. San Joaquin Street, Stockton, CA | IFTIKHAR AHMAD | Kevin Wong | $220,000 ($209,000 mortgage from Long Beach Mortgage) | 10/29/2002 |
| 2611 S. Bieghle Street, Stockton, CA | IFTIKHAR AHMAD | Silvia Jawwad | $161,000 ($152,950 financed through Long Beach Mortgage) | 2/25/2003 |
| 2816 N. Redwood Avenue, Stockton, CA | IFTIKHAR AHMAD | Jose Esparza | $142,000 ($113,600 financed through Long Beach Mortgage) | 10/23/2002 |
| 327 N. Pilgrim Street, Stockton, CA | IFTIKHAR AHMAD | Oscar Rivera | $120,000 ($112,000 financed through Long Beach Mortgage) | 7/18/2002 |
| 327 N. Pilgrim Street, Stockton, CA | I & R | Alfonso Ulloa | $172,000 ($137,600 financed through Long Beach Mortgage) | 6/18/2004 |
| 511 S. Adelbert Avenue | IFTIKHAR AHMAD | Silvia Jawwad | $165,000 ($156,750 financed through Long Beach Mortgage) | 1/29/2003 |

| 3924 N. American Street | IFTIKHAR AHMAD | Ismael Nunez | $182,000 ($163,800 financed through Long Beach Mortgage) | 2/26/2003 |
|---|---|---|---|---|
| 127 E. Jefferson Street, Stockton, CA | IFTIKHAR AHMAD | Silvia Jawwad | $167,000 ($150,300 financed through Long Beach Mortgage) | 4/15/2003 |
| 2123 E. 10th Street, Stockton, CA | IFTIKHAR AHMAD | LETICIA ROSAS/H. Diaz | $155,000 ($147,250 financed through Long Beach Mortgage) | 1/6/2003 |
| 2427 N. Myran Avenue, Stockton, CA | IFTIKHAR AHMAD | Ismael Nunez | $166,000 ($132,800 financed through Long Beach Mortgage) | 4/2/2003 |
| 2419 E. Mistletoe Avenue, Stockton, CA | I & R | Ismael Nunez | $167,636 ($151,200 financed through Long Beach Mortgage) | 6/23/2003 |
| 622 E. Worth, Stockton, CA | I & R | Ignacio Alcaraz | $180,000 ($162,000 financed through Long Beach Mortgage) | 12/19/2003 |
| 14282 S. Harlan Road, Lathrop, CA | I & R | Ramiro Serrano | $220,000 ($176,000 financed through Long Beach Mortgage) | 12/18/2003 |

| 414 W. Oak Street, Lodi, CA | I & R | Teresa Paniagua | $264,500 ($211,000 first mortgage, and 52,900 second mortgage financed through Long Beach Mortgage) | 12/22/2003 |
|---|---|---|---|---|
| 808 Flower Street, Stockton, CA | I & R | Roselia Nunez | $288,000 ($230,000 financed through Long Beach Mortgage) | 9/10/2003 |
| 2440 E. Mistletoe Avenue | I & R | Florentino Villalobos, Beatriz Becerra | $165,000 ($156,750 financed through Long Beach Mortgage) | 7/28/2003 |
| 2630 S. Lincoln Street | I & R | Salvador Chavez | $220,000 ($180,000 financed through Long Beach Mortgage) | |
| 120 W. Jefferson, Stockton, CA | I & R | Yolanda Soriano | $247,000 ($199,220 financed through Long Beach Mortgage) | 11/10/2004 |
| 1721 E. Scotts Avenue, Stockton, CA | I & R | Esmeralda Romero | $375,000 ($337,500 financed through Long Beach Mortgage) | 5/9/2005 |

94

| 3416 Sierra Madre Avenue, Stockton, CA | I & R | Esmeralda Romero | $280,000 ($224,000 financed through Long Beach Mortgage) | 2/10/2005 |
|---|---|---|---|---|

2.   Recent Sale Transactions.

140.   Based on public record information accessed through WESTLAW on various dates in early August 2007, it appears that I & R remains active in selling property in the Stockton area.   A handful of the transactions may have been legitimate transactions, *e.g.*, in connection with one I & R sale transaction in 2007 the purchaser appears to have paid cash.   Most of the transactions, however, bear many of the same indicia of fraud as seen in the transactions described in Section F above.   These transactions include:

a.   Eduardo Rodriquez.

141.   In late 2006 and early 2007, I & R sold three properties to Eduardo Rodriguez, each purchase funded with significant loans, and each purchase handled through Alliance Title Company.   From public records I am able to summarize these transactions as follows:

| Property | Purchaser | Seller | Amount (loan amount) | Transaction Date |
|---|---|---|---|---|
| 1979 Sunset Avenue | Eduardo Rodriguez | I & R | $315,000 ($252,000 first mortgage through First Nat'l Lending Services, and $63,000 second) | 10/27/2006 |
| 35 N. Airport Way | Eduardo Rodriguez | I & R | $410,000 ($328,000 first mortgage through Washington Mutual, F.A., and 82,000 second) | 11/15/2006 |
| 1971 N. Sunset | Eduardo Rodriguez | I & R | $322,000 ($305,900 mortgage through New Century Mortgage Company) | 2/14/2007 |

Public records further disclose that Eduardo Rodriguez purchased yet a fourth property from ILYAS AHMAD during this same time period, as follows:

96

| Property | Purchaser | Seller | Sales Price (loan amount) | Transaction date |
|---|---|---|---|---|
| 2228 E. Stadium Drive | Eduardo Rodriguez | ILYAS AHMAD | $350,000 ($280,000 first mortgage through Decision One Mortgage Company, and $70,000 second) | 10/24/2006 |

This property had previously been sold to ILYAS AHMAD in March 2006, by I & R for $330,000, of which $264,000 had been financed through Citigroup/Consumer Finance Inc.

   b. <u>Oscar Rivera</u>.

  142. Similarly, in the second half of 2006, I & R sold three properties to Oscar Rivera, each purchase was funded with a significant loan, and each sales transaction handled through Alliance Title Company or Fidelity National Title Company. From public records I am able to summarize these transactions as follows:

| Property | Purchaser | Seller | Sales Price (loan amount) | Transaction Date |
|---|---|---|---|---|

| 350 S. Oro Avenue | Oscar Rivera | I & R | $331,000 ($264,000 first mortgage through Americas Wholesale Lender; $66,200 second mortgage) | 8/30/2006 |
|---|---|---|---|---|
| 841 San Juan Avenue | Oscar Rivera | I & R | $310,000 ($294,500 mortgage through Freemont Investment and Lending) | 10/04/2006 |
| 2952 North F. Street | Oscar Rivera | I & R | $435,000 ($391,500 mortgage through New Century Mortgage) | 11/30/06 |

What is particularly noteworthy about the Oscar Rivera transactions is that Oscar Rivera had purchased multiple properties from IFTIKHAR AHMAD previously:  (1) 721 E. Anderson Street purchased on or about July 23, 2002; (2) 729 E. Sonora Street purchased on or about August 19, 2002; and (3) 327 N. Pilgrim Street purchased on or about July 18, 2002.  Again, all three of these prior purchases were financed with large mortgages.

### c.   Israel Rivera.

143.   In December 2006 and June 2007, I & R sold two properties to Israel Rivera; each purchase was funded with

98

significant loans, and each purchase transaction handled through
Alliance Title Company.  From public records I am able to
summarize these transactions as follows:

| Property | Purchaser | Seller | Sales Price (loan amount) | Transaction Date |
|---|---|---|---|---|
| 921 S. San Joaquin Street | Israel Rivera | I & R | $490,000 ($392,000 first mortgage through New Century Mortgage Company, and $98,000 second mortgage) | 12/19/06 |
| 54 West 8th Street | Israel Rivera | I & R | $330,000 ($313,500 mortgage through Washington Mutual F.A.) | 6/12/2007 |

In addition, in August 2006, ILYAS AHMAD sold a third property to
Israel Rivera, summarized as follows:

| Property | Seller | Purchaser | Sales Price (Loan Amount) | Transaction Date |
|---|---|---|---|---|
| 7087 E. Highway 26 | ILYAS AHMAD | ISRAEL RIVERA | $730,000 ($584,000 financed through Decision One Mortgage Company LLC | 8/15/2006 |

144.  To date, I have not obtained or reviewed the escrow or loan files connected to the above-described transactions. Nonetheless, the transactions bear the earmarks of prior transactions involving IFTIKHAR AHMAD and I & R:  multiple property sales to a single individual that occur close in time to one another in which all, or substantially all, of the purchase price is financed by a mortgage or mortgages.  Indeed, in the case of the 54 W 8th Street property there was also a rapid turn around.  I & R purchased that property in February 2007 for $230,000 in cash and sold it in June 2007 for $330,000.

3.  Recent Purchase Transactions.

145.  Based on public record information I have accessed through WESTLAW, it appears that I & R remains active in purchasing property in the Stockton area.  The chart below summarizes properties purchased by I & R in the Stockton area since January 1, 2007:

| Property | Purchaser and Mailing Address | Sales Price (loan amount) | Transaction Date |
|----------|-------------------------------|---------------------------|------------------|
| 1028 S. Sinclair, Stockton, CA | I & R 5265 Barbados Circle, Stockton | $319,000 (cash) | 2/13/2007 |
| 1031 S. Sinclair, Stockton, CA | I & R 5265 Barbados Circle, Stockton | $244,000 (cash) | 2/13/2007 |

| 54 W. Eighth Street, Stockton, CA | I & R 5265 Barbados Circle, Stockton | $230,000 (cash) | 2/14/2007 |
|---|---|---|---|
| 120 W. Vine Street, Stockton | I & R 9 West Oak, Lodi | Full (cash) | 5/16/2007 |
| 2145 S. Stockton Street, Stockton | I & R 9 West Oak, Lodi | $287,500 ($221,250 mortgage through Stockton Management and Development Corp.) | 6/22/2007 |
| 726 Howard Street, Stockton | I & R 9 West Oak Street | $281,500 ($213,250 mortgage through Stockton Management and Development Corp.) | 6/22/2007 |

Each of the above-described purchase transactions was handled through Placer Title Company.

III.   MONEY LAUNDERING ACTIVITIES.

   A.   Domestic Money Laundering.

   146.   My investigation has determined that almost immediately prior to beginning the real estate fraud scheme outlined in this affidavit, IFTIKHAR AHMAD had virtually no income or assets.   Indeed, until at least July, 1996, he and his spouse Rayhana completed SAWS 7 Form (signed by IFTIKHAR and Rayhana AHMAD on August 3, 1996) stating that they had no income and needed public assistance benefits.

101

Throughout the entire period of the fraud scheme outlined above, IFTIKHAR AHMAD and Rayhana Ahmad had virtually no other source of income except from the sale of real properties, or from assets which I have probable cause to believe were purchased with funds traceable to the sale of real properties.    147.    During the relevant times, they had very limited wage income.    According to information obtained from a copy of the Information Returns Master File (IRMF) Payee transcript IFTIKHAR AHMAD had the following wages (W-2 earnings) during the years 2001 through 2006:

| Payer | Year | Wages |
|-------|------|-------|
| Shop Rite | 2001 | $2,500 |
| Harvinder Pal Singh | 2001 | $3,688 |
| KSM Corporation | 2003 | $6,080 |
| Manjit S. & Gurpal Grewal | 2003 | $2,338 |
| Manjit S & Gurpal Grewal | 2003 | $1,169 |
| Harvinder Pal Singh | 2003 | $1,550 |
| KSM Corporation | 2004 | $20,194 |
| KSM Corporation | 2005 | $3,421 |

In each of those years, IFTIKHAR AHMAD and Rayhana Ahmad only reported non-wage income derived from real estate sales conducted directly by IFTIKHAR AHMAD, or from earnings pass through to

102

IFTIKHAR AHMAD and Rayhana Ahmad from I & R, or from interest or
tax or social security/Medicare refunds/corrections.

148.  Thus, based on my investigation and training, I have
reason to conclude that virtually all of the money that IFTIKHAR
AHMAD deposited into bank accounts he controlled between 2001 and
2006 derived from real estate sales transactions.  Most of these
deposit transactions, particularly those connected to escrow
closings, involved amounts greater than $10,000.

149.  I have also examined debits from the bank accounts
into which IFTIKHAR AHMAD deposited proceeds from the sale of
real property during the period from 2001 through 2006.  Based on
my review, I have concluded that most of those debit transactions
involved withdrawals for the following purposes:  to purchase
real property; to maintain or improve real property; to make
mortgage payments on real property; to pay real property taxes;
to fund a purchaser's down payment or closing costs to purchase a
property from IFTIKHAR AHMAD or I & R; to pay costs and expenses
associated with the close of escrow on a purchase or sale of real
property.  In other words a significant portion of the money that
IFTIKHAR AHMAD obtained from his fraudulent real estate
activities was used to promote the carrying on of the underlying
mortgage fraud scheme.

150.  Based on this deposit and withdrawal activity from
accounts controlled by IFTIKHAR AHMAD during the relevant time, I
have probable cause to believe that IFTIKHAR AHMAD committed

multiple violations of 18 U.S.C. § 1956(a)(1)(A)(i) (money laundering/promotion) and 1957 (engaging in financial transactions involving more than $10,000 in proceeds from a specified unlawful activity, to wit: violations of Sections 1014, 1028(a)), and 1341 of Title 18.

B.   Internationl Money Laundering.

    1.   Recent Transfers to Pakistan.

151.   I obtained from Bank of Stockton copies of three checks, each dated May 18, 2007.   These three checks were drawn on I & R's checking account at Bank of Stockton (#2114193201).   Each check is made payable Arshad Ullah.   The back of the checks indicate that they were deposited Arshad Ullah's account at First Women Bank Ltd. in Peshwar, Pakistan.   In aggregate the three checks have a face value of $52,000.

152.   The timing of these checks coincides closely with the dates of wires transfers sent from a bank account at Bank of Stockton held in the name of MUMRAIZ AHMAD and his son, Nasir Malik Ahmad.   On three separate days in May 2007 MUMRAIZ AHMAD or his son transferred from a Bank of Stockton account (#2133639320) approximately $120,000 in funds to an account maintained in his own name at Citibank in Rawalpindi, Pakistan (account #9010348703) as follows:

| Date of Check or Wire | Amount |
|-----------------------|----------|
| 5/18/2007 | $40,000 |

| 5/24/2007 | $40,000 |
| 5/31/2007 | $40,000 |

### 2.   Prior Checks Negotiated In Pakistan.

153.   Between approximately December 15, 2005 and May 8, 2006, eleven checks were drawn on account number 2114193201 at Bank of Stockton held in the name of I & R (of which IFTIKHAR AHMAD is the sole signatory) and negotiated at banks or financial institutions in Pakistan.   These eleven checks had an aggregate face value of approximately $350,000.   Five of the checks (aggregating to approximately $130,000) are made payable to Arshad Ullah and deposited at First Women's Bank Ltd. in Pakistan.   Three of the checks (aggregating to $100,000) were made payable to Qaisar Shahzad and deposited at MCB Bank Ltd. in Pakistan.

154.   In the case of the remaining three checks, the payee's name has been omitted from the "PAY TO THE ORDER OF" line of the check.   These checks (true and copies of which are attached as Attachment C) to this affidavit are summarized below:

| Date of Check | Amount | Negotiating Bank | Date Negotiated |
|---|---|---|---|
| Check #1579<br><br>21-12-05 | $20,000 | First Women Bank Ltd., Peshwar, Pakistan | January 9, 2006 |

| Check #1581<br><br>22-12-05 | $50,000 | First Women Bank Ltd., Peshwar, Pakistan | January 5, 2006 |
| Check # 1582<br><br>20-12-05 | $50,000 | First Women Bank Ltd., Peshwar, Pakistan | January 5, 2006 |

155.   The endorsement side of the three checks each bear a handwritten instruction which appears to read: "Please credit the proceeds of this cheque in my account: 08000279." The identity of the person having signature authority over this account is unclear.

156.   I have reason to believe that IFTIKHAR AHMAD executed these three incomplete checks (except for the payee line) while in the United States of America, and that IFTIKHAR AHMAD caused the incomplete checks to be subsequently transported or mailed to Pakistan without completing a CMIR as required by (31 U.S.C. § 5316 & 31 C.F.R. §§ 103.23 & 103.27(b). I base this belief on the fact that according to records maintained by the Department of Homeland Security there is no indication that IFTIKHAR AHMAD completed a CMIR at any time in which he stated that he was carrying more than $10,000. Moreover, there is no indication that IFTIKHAR AHMAD was abroad when these checks were partially completed or when they were negotiated. To the contrary, immigration records maintained on TECS II indicate that on December 11, 2005, IFTIKHAR AHMAD reentered the United States on

an in-bound flight from London to Los Angeles - less than two weeks prior to the dates reflected on the incomplete checks discussed above.  This information is consistent with information provided by WILLIAM BRIDGE.  In an interview conducted with an FBI agent in connection with this investigation on October 26, 2005, BRIDGE indicated that ILYAS AHMAD had told BRIDGE that IFTIKHAR AHMAD was, at that time, in London.

157.  Moreover, I obtained by subpoena a cashier's check issued by Bank of Stockton and made payable to Old Republic Title on or about December 27, 2005.  The records indicated that the cashier's check was funded by a withdrawal from account number 2114193220 in the name of I & R.  The savings withdrawal slip is signed by IFTIKHAR AHMAD, suggesting that he was in fact in Stockton on December 27, 2005, less than a week after the checks were purportedly signed.

158.  In connection with this investigation, the Department of Homeland Security conducted queries of the Treasury Enforcement Communications System (TECS) II to ascertain the inbound and outbound travel of IFTIKHAR AHMAD, his spouse, and his three brothers, MUMRAIZ, ILYAS and MUSHTAQ and others.  The queries indicate that IFTIKHAR AHMAD and his family members engaged in extensive international travel, and had some familiarity with currency and monetary instrument reporting requirements.

107

IFTIKHAR AHMAD:

159.   According to TECS II records, on December 11, 2005,
IFTIKHAR AHMAD entered the United States (Los Angeles) from
London traveling on U.S. passport #055948355.   TECS II also
reveals that on June 11, 2004, IFTIKHAR AHMAD was subjected to a
secondary customs inspection at which time he was questioned
about the amount of currency he was carrying.   IFTIKHAR AHMAD
responded that he had attended three weddings while abroad, was a
self-employed property investor, and that he left the United
States carrying $8,000 and was returning carrying $1,000.   I am
advised by a Special Agent with ICE that the notation in TECS II
about how much money IFTIKHAR AHMAD was carrying probably arose
as part of a secondary CMIR inspection.

RAYHANA AHMAD:

160.   TECS II records indicates that Rayhana Ahmad traveled
abroad in 2004, 2005 and 2006.   In 2005, she spent approximately
five months abroad.   When returning to the United States from
abroad in December 2005, she was subjected to a CMIR secondary
inspection in which she indicated she had been in Islamabad for
five months, that she married in 1993, and that she and her
husband own hotels in Stockton and Lodi.

MUMRAIZ AHMAD:

161.   TECS II records indicate that MUMRAIZ AHMAD traveled
abroad in 2003 and 2006 and 2007.   Most recently on May 18, 2007

108

he departed the United States (San Francisco) for London on U.S. Passport 305078870. He was subject to a CMIR secondary inspection on September 9, 2003. Moreover, a query of the Investigative Data Warehouse (IDW) maintained by the FBI discloses that a CMIR (CMIR Record - 19942000681870) was filed by him in 1994 when departing the United States (San Francisco) to Pakistan. The CMIR reports him carrying $14,000 in currency. Moreover, a further query of IDW disclosed that a second CMIR (CMIR - Record - 20041960095270) was filed in 2004 in connection with travel from the United States (San Francisco) by MUMRAIZ AHMAD's son, Yasir Malik Ahmad. The CMIR reports Yasir Malik Ahmad carrying $11,829 in currency.

### MUSHTAQ AHMAD:

162. TECS II records indicate that MUSHTAQ arrived in the United States from abroad on December 19, 2003 on U.S. Passport # 201324668. He advised the immigration official that he worked at Anderson Rack Systems, in Stockton, and has worked there for 13 years. Also on 12/19/03, inspector notes mention subject claims he was in Pakistan for 7 years, and his family will arrive in the Homeland next week (likely at SFO).

### ILYAS AHMAD:

163. A query of TECS II disclosed no foreign travel by ILYAS AHMAD.

3.  Prior Wire transfers to Pakistan.

164.    In 2003 and 2004, IFTIKHAR AHMAD wired funds from Bank of Stockton accounts he controlled $82,000 in funds, summarized as follows:

| Originating Account | Amount | Receiving Person/Account | Date |
|---|---|---|---|
| Bank of Stockton Account #2149608020 | $5,000 | ILYAS AHMAD, Citibank, Rwalpindi, Pakistan Account # 9010659318 | 4/07/2003 |
| Bank of Stockton Account #2114193220 | $12,000 | ILYAS AHMAD, Citibank, Rwalpindi, Pakistan Account # 9010659318 | 10/1/2003 |
| Bank of Stockton Account #2114193220 | $5,000 | ILYAS AHMAD, Citibank, Rwalpindi, Pakistan Account # 9010659318 | 10/24/2003 |
| Bank of Stockton Account #2149608020 | $60,000 | MUMRAIZ AHMAD, Citibank, Rwalpindi, Pakistan Account # 9010348703 | 06/24/2004 |

165.    In total, between October 2003 and June 2007, IFTIKHAR AHMAD caused approximately $484,000 to be transferred to third parties in Pakistan, and MUMRAIZ AHMAD caused an additional $120,000 to be transferred to an account he maintained in Pakistan.

110

IV.   FURTHER INVESTIGATION CONCERNING 5265 BARBADOS CIRCLE.

    A.   Public Source Information on Occupancy of 5265 Barbados Circle.

166.   On August 6, 2007, I caused a DMV license check to be conducted on IFTIKHAR AHMAD.  The check indicated that IFTIKHAR AHMAD had a California Driver's license (#C6354872) issued on January 22, 2003, and indicated that IFTIKHAR AHMAD resided at 5265 Barbados Circle, Stockton, California.  That same day I also caused a query of DMV records to be made of vehicles registered to IFTIKHAR AHMAD.  That query disclosed two vehicles registered to IFTIKHAR AHMAD:  A 2006 Nissan Pathfinder vehicle (CA #5ULB802) and a 2003 Chevrolet 1500 half ton pickup truck (CA #7T37065).   Both vehicles indicate that the registered owner, IFTIKHAR AHMAD, resides at 5265 Barbados Circle, Stockton, CA. I also caused a California license plate number "AHMAD3" to be run through DMV records.  Those records indicated that the registered owner of the vehicle is ILYAS AHMAD with a residence of 5265 Barbados Drive.  Finally, on August 6, 2007, I reviewed public record information contained on WESTLAW that disclosed that as of that date the real property located at 5265 Barbados Circle was owned by MUSHTAQ AHMAD.  According to those records, MUSHTAQ AHMAD purchased the property in July 2003 for $239,000.

    B.   Trash Covers.

167.   On May 23, 2007, your affiant retrieved trash from a container that had been placed on the street for collection in

111

front of 5265 Barbados Circle, Stockton, California.  Among the
items I retrieved from the trash included those tending to
indicate: (a) that IFTIKHAR AHMAD is continuing to conduct real
estate business at that location; (b) maintains records of real
estate business at his home; (c) that IFTIKHAR AHMAD maintains a
personal computer at the residence; and (d) that certain
accomplices, including MUMRAIZ AHMAD, ILYAS AHMAD, and MUSHTAQ
AHMAD receive mail and maintain business records at the
residence.

168.  I retrieved approximately 17 documents from the trash
container placed in front of the 5265 Barbados Circle, each
captioned "Residential Customer Copy Report."  These reports
provide listing information about various residential real
properties listed for sale in the Stockton area, as follows:

| Listing Number | Address | Listing Agent |
| --- | --- | --- |
| 60123470 | 1140 E. Main Street, Stockton, CA. | Chan Zeb, Riggs & Associates |
| 60129906 | 2279 E. Hazeleton, Ave., Stockton, CA | Chan Zeb, Riggs & Associates |
| 70022470 | 1619 Pinchot Street, Stockton, CA | Chan Zeb, Riggs & Associates |
| 70015868 | 2445 Acacia Street, Stockton, CA | Chan Zeb, Riggs & Associates |
| 70028136 | 1409 E. Oak Street, Stockton, CA | Chan Zeb, Riggs and Associates |

112

| 70049864 | 457 Court Street, Stockton, CA | Chan Zeb, Riggs and Associates |
| 70030727 | 1820 E. Acacia Street, Stockton, CA | Chan Zeb, Riggs and Associates |
| 70045158 | 1602 Hiawatha Avenue, Stockton, CA | Chan Zeb, Riggs and Associates |
| 60098409 | 436 Morro Lane, Stockton, CA | Chan Zeb, Riggs and Associates |
| 60128665 | 1835 Knickerbocker, Dr., Stockton, CA | Chan Zeb, Riggs and Associates |
| 60094512 | 3611 N. Westlane, Stockton, CA | Chan Zeb, Riggs and Associates |
| 60092719 | 8810 Aylesford Lane, Stockton, CA | Chan Zeb, Riggs and Associates |
| 70007975 | 1633 E. 8th Street, Stockton, CA | Chan Zeb, Riggs and Associates |
| 70043216 | 346 W. 6th Street, Stockton, CA | Chan Zeb, Riggs and Associates |
| 70048930 | 610 N. Pilgrim Street, Stockton, CA 95205 | Chan Zeb, Riggs and Associates |
| 70051141 | 740 Wilke Avenue, Stockton, CA | Chan Zeb, Riggs and Associates |
| 70016676 | 615 S. Merced Street, Stockton, CA | Chan Zeb, Riggs and Associates |

In the upper left hand corner of each of these documents states:

113

"Listings as of 05/12/07 at 1:50 p.m." Information in the lower portion of the document indicates that each of the documents had been downloaded: http://prospector.metrolist.net/. The documents each further indicate that they were downloaded and/or printed on "05/12/2007," approximately 11 days prior to the date that I retrieved trash from the container placed in front of the residence at 5265 Barbados Circle, Stockton.

169. A second document that I took from the trash container appears to be downloaded from the internet. The document references "Valero Gas Station Property leased with Tenant" in Stockton, California and describes the asking price, income figures and includes a description of the property. Information contained on the bottom of the document indicates that it was downloaded on 5/2/2007 from: http://www.bizbuysell.com/.

170. A third document that I took from the trash container included handwritten notes. On one such note is handwritten: LOAN 415 4955626.

171. Other documents appear to be various bills and are solicitations that had been mailed to the address. These include the following:

| Biller/Solicitor | Addressee | Brief Description |
|---|---|---|
| PG&E | Mumraiz Ahmad or Current Occupant | Solicitation |

114

| Neil O Anderson and Associates | Angelo Fanos 506 Tamarack Drive Lodi, CA 95240 | March 6, 2007: References an engineer's site inspection. Subject: Iftikar Khan Residence 926 Garfield Ave Stockton, CA |
|---|---|---|
| WaMU | Mushtaq Ahmad 5265 Barbados Cir Stockton, CA 95210-6602 | Reference Loan Number: 0074781840 (Advising that property tax payments are past due or only partially paid, and that WaMU has made The payment and established a temporary escrow account |
| City of Stockton | 48887 Ilyas Ahmad 1506 E. Mariposa Road Stockton, CA 95205 | Property Address 635 Garfield (Advising that $1004.49 is owed to the City of Stockton for code violations related to the above-referenced property) |
| C. Chuck Taylor Insurance Agency | I & R 6265 Barbados Circle Stockton, Ca 95210 | Dated May 21, 2007 and addressed: "Dear Iftikhar." Letter refers to a construction policy through Zurich Insurance Company for property located at 921 S. San Joaquin St., Stockton, Ca 95206 |
| AT & T | Iftikhar Ahmad 1506 E. Mariposa Rd. Stockton, CA 95205 | Re: 209-932-0342 926 (notifications re: telephone service) |

| Dish | Iftikhar Ahmad<br>5265 Barbados Cir<br>Stockton, CA 95210-6602 | May 14, 2007<br>Statement (Charges<br>for 05/29/07 -<br>06/28/07 |
| --- | --- | --- |
| Waste Management | Stockton Scavengers<br>Association, Inc.<br>1240 Navy Dr.<br>Stockton, CA 95206 | Invoice for customer<br>"El Camino Motel"<br>dated 05/01/2007 |
| Long Beach<br>Acceptance Corp. | Ilyas Ahmad<br>5265 Barbados Cir<br>Stockton, CA 95210-6602 | Billing statement<br>dated 06/08/2007 |
| Chase | Mohammad Zaman<br>1506 E. Mariposa Rd.<br>Stockton, CA 95205-7729 | Mortgage Loan<br>Statement for loan<br>#022543458, Property<br>Address: 635<br>Garfield Avenue,<br>Stockton CA 95203<br>(Statement Date:<br>04/30/07) |
| GMAC | Iftikhar Ahmad<br>5265 Barbados Cir<br>Stockton, CA 95210 | Bill dated 05/14/07 |

172.    Several things are noteworthy about these items.
First, many of the items relate to real property listings, loans
or transactions, and real estate improvements, utilities or
inspections that have occurred within recent months.  For
example, one mailing addressed to I & R and dated in May 2007
references a construction insurance policy through Zurich
Insurance Company for property located at 921 S. San Joaquin St.
Based on public records I have determined that I & R sold that
property in December 2006.  Together these documents and others

indicate that IFTIKHAR AHMAD currently remains active in real
property transactions in the Stockton area.

173.  Second, many of the mailings are addressed to persons
connected to fraudulent real estate activity or to persons other
than IFTIKHAR AHMAD.  Such mailings, particularly when compared
to other known information, tend to corroborate that IFITKHAR
AHMAD and others use straw purchasers or nominees to conduct real
property transactions.  For example, several documents retrieved
from the trash reference a property at 635 Garfield Avenue and a
second document references a property at 926 Garfield Avenue.
These mailings are addressed to individuals other than IFTIKHAR
AHMAD.  According to public records accessed through WESTLAW on
or about August 13, 2007, 625 Garfield Avenue is owned by ILYAS
AHMAD.  ILYAS AHMAD purchased the property from Mohammed Zaman on
or about January 29, 2006.

174.  On July 11, 2007, your affiant and an FBI Task Force
Officer retrieved trash from a container that had been placed on
the street for collection in front of 5265 Barbados Circle,
Stockton, California.  I retrieved from the trash the following
items:

- A notice from the City of Stockton Police Department
regarding Code Enforcement Activities, addressed to I & R, 5265
Barbados Circle, Stockton, California, 95210.

- A Payment Reduction Offer from Statewide Bankcorp, Inc.,

117

Customer Service Center for Loan Reference number 01234497, addressed to MUSHTAQ AHMAD, 5265 Barbados Circle, Stockton, California, 95210.

- Valley Home Finder magazine

- Valley Homes periodical dated June 9, 2007, residential homes Advertising Supplement.

C.  <u>Surveillance</u>.

175.  At my direction, on May 31, 2007 and June 18, 2007 officers assigned to the Sacramento Special Operations Group conducted a physical surveillance of the property located at 5265 Barbados Circle, Stockton, California.  The surveillance began at 10:20 a.m., at which time officers observed a black Nissan Pathfinder (CA #5ULB802) parked in the driveway of the residence. I have confirmed through a search of DMV records that the vehicle is registered to IFTIKHAR AHMAD at 5265 Barbados Circle.

176.  At 12:25 p.m. officers observed an adult male, believed to be IFTIKHAR AHMAD, depart the residence driving the black Nissan Pathfinder.  He was followed, and observed arriving at a residence locating at 3416 Sierra Madre Avenue, Stockton, California.  According to public records maintained on WESTLAW, this property is owned by ILYAS AHMAD.  A light blue Toyota 4 Runner (CA# Ahmad 3) was parked in the street in front of the residence.  As indicated above, a query of DMV records disclosed that this vehicle is registered to ILYAS AHMAD.  The person

believed to be IFTIKHAR AHMAD was then observed departing the residence at 2:11 p.m. and driving in the black Nissan Pathfinder to a location near Rio Calaveras Elementary School where he was observed picking up children at approximately 2:16 p.m.  At 2:25 p.m. IFTIKHAR AHMAD arrived back at the residence at 5265 Barbados Circle.  Four school age children, one infant, and a female adult exited the vehicle and entered the house. Surveillance terminated at 2:30 p.m.

177.  A second surveillance of the residence at 5265 Barbados Circle, Stockton, California was initiated at 9:30 a.m. on June 18, 2007.  A black Nissan Pathfinder (CA #5ULB802) was observed parked in the driveway.  There was no other activity, and the surveillance at that location was terminated at 10:30 a.m.

V.  FURTHER INVESTIGATION REGARDING 1516 E. MARIPOSA ROAD

A.  Public Source Information on Occupancy of 1516 E. Mariposa Road.

178.  According to public records accessed through WESTLAW on August 7, 2007, the property located at 1506 E. Mariposa Road is a motel owned by ILYAS AHMAD.  The public records indicate that ILYAS AHMAD purchased this property from I & R on or about January 27, 2006.

B. Undercover Activity.

179. I am advised that at approximately 1502 hours, Special Agent Chris Fitzpatrick with IRS-CI arrived at 1506 East Mariposa Road, Stockton, California. Agent Fitzpatrick identified two vehicles present at the location: what he described as a teal green Toyota Camry - California license plate number AHMAD3, and a black SUV - California license plate number 5ULB802. A discussed above, the Toyota Camry is registered to ILYAS AHMAD, and the black SUV is registered to IFTIKHAR AHMAD.

180. Special Agent Fitzpatrick also observed a "for sale" sign affixed to the motel structure. The agent advised the person at the front desk that he worked for a company that purchased hotels. I am also advised that Special Agent observed ana area designated "office" at the El Camino Motel located at 1506 East Mariposa Road, Stockton, California. The motel office is located at the east end of the motel if facing the motel. There is a security screen door protecting the entrance to the motel office. Also, there is a bullet-proof partition that customers and motel staff speak through. The person at the front desk (behind the bulled proof partition) identified himself as "Ahmad" and indicated that he was selling the hotel for $1.65 million. Ahmad also provided Special Agent Fitzpatrick with his telephone number of (209)465-2206. The following day (August 7, 2007), I showed Agent Fitzpatrick a DMV photograph of IFTIKHAR

AHMAD and based on that photograph he positively identified the person that he had spoken with the previous day at the 1506 E. Mariposa Road address as IFTIKHAR AHMAD.

181.  Also on August 6, 2007, Agent Fitzpatrick contacted a real estate agent handling the sale of the property located at 1506 E. Mariposa Road.  Again, Agent Fitzpatrick held himself out as someone interested in purchasing the motel.  The real estate agent informed Agent Fitzpatrick that the motel is owned by I & R.

182.  As described in greater detail above in Section IV-B, in the course of executing the first trash cover at 5265 Barbados Circle in May 2007 I found several articles of mail addressed to various individuals at 1506 E Mariposa Road, as follows:

| Biller/Solicitor | Addressee | Brief Description |
|---|---|---|
| City of Stockton | 48887<br>Ilyas Ahmad<br>1506 E. Mariposa Road<br>Stockton, CA 95205 | Property Address 635 Garfield (Advising that $1004.49 is owed to the City of Stockton for code violations related to the above-referenced property) |

| Chase | Mohammad Zaman 1506 E. Mariposa Rd. Stockton, CA 95205-7729 | Mortgage Loan Statement for Property Address: 635 Garfield Avenue, Stockton CA 95203 (Statement Date: 04/30/07) |
|---|---|---|

| AT & T | Iftikhar Ahmad 1506 E. Mariposa Rd. Stockton, CA 95205 | Re: 209-932-0342 926 (notifications re: telephone service) |
|---|---|---|

183.   Significantly, two of these mailings addressed to 1506 E. Mariposa Road (and retrieved from the trash at 5265 Barbados Circle) reference a property address of 635 Garfield Avenue, Stockton, California.  Of particular interest is the mortgage loan statement issued by Chase Bank on April 30, 2007, and mailed to 1506 E. Mariposa Road.  The statement indicates that Mohammed Zaman is obligated to make $329.76 monthly payment on a mortgage loan #0022543458 with a principal balance of $33,958.78.  Based on a review of bank records, including photocopies of checks, obtained from Bank of Stockton (#2114193201), I have identified a check #1571 made payable to Chase Home Financial LLC in the amount $326.87.  The memo section of the check states "0022543458."  It is unknown why the amount paid is different

122

than the mortgage loan statement shows.  The check issued from an account maintained by IFTIKHAR AHMAD, indicating that IFTIKHAR AHMAD made a mortgage payment on behalf of MOHAMMED ZHAN and/or ILYAS AHMAD on real property located at 635 Garfield Avenue. Indeed, given the date of the mortgage statement (April 2007) it appears that ILYAS AHMAD or IFTIKHAR AHMAD has continued to make mortgage payments on behalf of Mohammed Zaman more than one year after Zaman purportedly sold the 635 Garfield Avenue property to ILYAS AHMAD.

184.  Mohammed Zaman figures in other real estate transactions involving IFTIKHAR AHMAD and I & R.  As detailed in Attachment C hereto, those transactions are summarized as follows:

| Property | Seller | Purchaser | Sales Price (Loan Amount) | Transaction Date |
|----------|--------|-----------|---------------------------|------------------|
| 1125 N. Pilgrim Street, Stockton, CA | Mohammed Zaman | I & R | Unknown | 10/23/2003 |
| 1331 E. Roosevelt Street, Stockton, CA | IFTIKHAR AHMAD | Mohammed Zaman | $108,000 ($76,734 financed through Bank of America) | August 21, 2002 |

VI.    THE PREMISES TO BE SEARCHED.

185.    I have participated in the execution of approximately fifteen to twenty federal search warrants involving the seizure of records relating to fraud and money laundering.  In addition, I have consulted with several other law enforcement agents concerning their experiences in conducting search warrants in fraud and money laundering investigations.  In the course of executing such warrants I am aware that law enforcement agents have seized records including documents showing the concealment of assets and crime proceeds; records including, but not limited to, telephone bills, personal telephone books, photographs and letters that have identified coconspirators and others involved in the criminal activity; records pertaining to the purchase of real and personal property; bank records; escrow records; credit card records; tax returns; business books and records; and computer hardware and software.

186.    Based on my training and experience, and having consulted with other law enforcement agents, I am familiar with the methods and practices used by individuals and organizations involved in loan fraud schemes involving financial institutions. These methods include the use of straw purchasers and straw purchase and sale transactions, misstatements on loan documents about the source of the down payment, misstatements on loan

124

documents about the financial means of the borrower, false or
inflated real estate appraisals.

187.   In one type of mortgage fraud scheme occurs when an
individual buys real estate at fair market price, and then
trades, sells and resells the property among associates, co-
conspirators, straw purchasers, and purchasers using fraudulent
identities and information on loan documents.   In such a scheme,
each sale and resale is made at escalating prices which often
bear no relation to the then true market value of the property,
and each successive transfer of title serves not only to conceal
the defendant's involvement, but also provide an acceptable means
for distributing the scheme's illicit gains to the conspirators.

188.   In such a scheme, it is not uncommon for the seller to
provide the purchaser's down payment without disclosing that fact
to the lender.   Various real estate professionals, including
mortgage brokers, appraisers, notaries, and employees of the
title company either participate directly in the scheme or act
negligently with respect to their responsibilities.   And, in such
a scheme, it is not uncommon for the last purchaser of the
property to default on the loan used to acquire the property at
an inflated price, resulting in a real estate foreclosure and a
loss to the lender or financial institution that made the loan.

189.   Based on my training and experience, and having
consulted with other law enforcement agents, I am familiar with

125

the methods and practices used by individuals and organizations involved in financial crimes, including the use of financial transaction involving the proceeds of crime to promote the carrying on of criminal activity and to conceal and disguise the nature location source ownership or control of the proceeds of crime.   These methods include the use of cash or monetary instruments such as cashier's checks, the purchasing of numerous monetary instruments with cash in amounts less than $10,000, the use of aliases and nominees, the use of businesses as "fronts" in an attempt to legitimize and conceal their activities, the use of straw financial transactions, and the use of the proceeds of one phase of criminal activity to promote or carry on a second or successive phase of the scheme.   These and other schemes involving the movement and concealment of criminal proceeds are commonly referred to as "money laundering".   I am also aware from training and experience that persons who engage in monetary transactions involving more than $10,000 in the proceeds of certain specified unlawful activities, to wit: violations of 1014, 1341, 1343, and 1344, violate an anti-money laundering statute found at 18 U.S.C. § 1957.

190.   Individuals who amass proceeds from illegal activities routinely attempt to further that conduct and/or conceal the existence and source of their funds by engaging in financial transactions with domestic and foreign institutions, and others,

through all manner of financial instruments, including cash,
cashier's checks, money drafts, traveler's checks, wire
transfers, etc.  Records of such instruments are routinely
maintained by domestic and foreign banks that facilitate the
transactions.

191.  From training and experience I know that individuals
normally maintain records of their financial activity in their
residence and business, including receipts for expenditures by
cash and check, bank records, and other financial documents.
Furthermore, individuals engaged in an income-producing business
keep records of the financial activities of the business and
often use accountants to complete financial statements and tax
returns for their business and personal returns.

192.  From training and experience I know that persons
engaged in fraud and/or money laundering frequently retain
records of their transactions within their residence, place of
business, rented storage units, vehicles, or other places under
their control.  These records may be in the form of written notes
and correspondence, receipts, negotiated instruments, contracts,
bank statements, and other records.  Records of this kind are
also often stored on computer media.

193.  Persons engaged in fraud and/or money laundering often
maintain such records for long periods of time, particularly when
they are involved in ongoing criminal conduct over a long period

127

of time.   In connection with this investigation, I have been made
aware of money laundering cases where courts have upheld a
finding of probable cause, notwithstanding the fact that the
events supporting the search warrant may have occurred months or
even years earlier.  *See, e.g.*, *United States v. Farmer*, 370 F.3d
435, 439-440 (4th Cir. 2004) (observing that documentary evidence
of counterfeiting and money laundering crimes is not usually
destroyed; such offenses are not given to "mere isolated
violation[s]," but are crimes of "a protracted and continuous
nature").

194.    There are many reasons why criminal offenders maintain
financial crimes evidence for long periods of time.  First, to
the offender, the evidence may seem innocuous at first glance
(e.g. financial, credit card and banking documents, travel
documents, receipts, documents reflecting purchases of assets,
personal calendars, telephone and address directories, check
books, videotapes and photographs, utility records, ownership
records, letters and notes, tax returns and financial records,
escrow files, telephone and pager bills, keys to safe deposit
boxes, packaging materials, computer hardware and software).
Second, to law enforcement such items may have significance and
relevance when considered in light of other evidence.  Third, the
criminal offender may no longer realize he/she still possesses
the evidence or may believe law enforcement could not obtain a

search warrant to seize the evidence.  The criminal offender may also be under the mistaken belief that he/she has deleted, hidden or further destroyed computer-related evidence, which in fact, may be retrievable by a trained forensic computer expert.

195.   In the course of this investigation I have developed probable cause to believe that evidence relevant to this investigation will be found at the 5265 Barbados Circle residence.  According to public records, bank statements, escrow closing documents and other items I have reviewed I have determined that IFTIKHAR AHMAD, Rayhana Ahmad and their minor children have continuously occupied the residence at 5265 Barbados since at least 2003.  Beginning in approximately August 2004, IFTIKHAR AHMAD received personal checking account bank statements addressed to him at 5265 Barbados Circle.  Beginning in approximately February 2005, IFTIKHAR AHMAD received business and savings bank statements addressed to addressed to I & R at 5265 Barbados Circle.  Moreover, beginning in 2003, most of the checks issued by an escrow company upon the close of a sale to either IFTIKHAR AHMAD or I & R are addressed to 5265 Barbados Circle.

196.   Moreover, the trash I recovered from the trash can placed at the curb in front of the 5265 Barbados Circle residence provides further probable cause to believe that evidence relating to this investigation will be found at the 5265 Barbados Circle

residence.  That trash included mail related to mortgage loans,
real estate engineering work, real estate listings, real estate
insurance, and real estate code enforcement assessment.
Significantly, items recovered from the trash include documents
addressed to IFTIKHAR AHMAD or I & R, but also other subjects of
this investigation, including ILYAS AHMAD, MUSHTAQ AHMAD, and
MUMRAIZ AHMAD.  Moreover, the trash included mailings addressed
to other residences or addressees, including Angelo Fanos at 506
Tamarack Drive, ILYAS AHMAD at 1506 E. Mariposa Road, IFTIKHAR
AHMAD 1506 E. Mariposa Road, and Mohammed Zhan 1506 E. Mariposa
Road.

        197.  I also have probable cause to believe that evidence
relevant to this investigation will be found at the 1506 E.
Mariposa business address.  An undercover agent visited that
location in mid-afternoon of Monday, August 6, 2007, and
identified IFTIKHAR AHMAD there.  Moreover, evidence obtained in
connection with the first trash run at 5265 Barbados Circle May
23, 2007 included three documents addressed to individuals at
1506 E. Mariposa, including mailings that referenced real estate
and financial dealings concerning a real property located at 635
Garfield Avenue and owned by ILYAS AHMAD.  According to public
records, 1506 E. Mariposa is itself owned by ILYAS AHMAD.
However, other information, including information provided by a

real estate agent, indicates that IFTIKHAR AHMAD maintains an
interest in the property at 1506 E. Mariposa.

198.   Based on my investigation and training I have probable
cause to believe that I & R is permeated with fraud, i.e., it is
a vehicle used to carry out the fraud scheme.  With just a few
exceptions, it does not appear to be involved in any legitimate
business activity.  I base that conclusion on the fact that I & R
was established as a real estate investment company, and that
beginning in approximately July 2003, all or virtually all of
IFTIKHAR AHMAD's real estate dealings are handled through I & R.
With the assistance of an FBI financial analyst I have reviewed
numerous transactions I & R real property transactions in detail,
including those more fully described in Section II.F above, and I
an FBI financial analyst have identified numerous indicators of
fraud in connection with those transactions, e.g., rapid turn
around between purchase and sale, the use of false identities,
false representations about income, false representations about
the source of the down payment, payments made outside of escrow
to pay the mortgage on properties, large loans taken out by
purchasers to finance the property often using subprime lenders,
the use of false documents such as false credit or professional
licensing information, single individuals purchasing multiple
properties from IFTIKHAR AHMAD OR I & R close in time to one
another.  Virtually all of the transactions I an FBI financial

131

analyst examined in detail, and those that we examined in less detail based on public records, bear one or more these indicators of fraudulent activity.

VII.   SEARCH OF COMPUTERS AND COMPUTER EVIDENCE.

199.   I have probable cause to believe that IFTIKHAR AHMAD maintains a computer at the 5265 Barbados Circle residence, and that he uses the computer in connection with fraudulent residential real property transactions, and that the computer contains evidence of criminal activity. I base that conclusion on several considerations. First, during the May 23, 2007 "trash run" I seized from the trash placed at the curb in front of the 5265 residence a number items downloaded from websites and printed on to paper. The materials related to the listing of various residential real properties in and around the Stockton, California.

200.   Second, I have developed information that in the course of at least some of the fraudulent real property sale transactions that are the subject of this investigation the purchasers provided to the escrow company and the lender fraudulent documents. In connection with a sale of the property at 729 E. Sonora Street, ROBERTO ORTIZ ALFARO or others provided Long Beach Mortgage with fraudulent purportedly from SBC California and Comcast to substantiate his credit. And, in connection with a sale of 1214 Lafayette Street, JAMIE ORTIZ or

other provided a fraudulent check made payable to Rebecca W.
Based on my training and experience I have reason to believe that
these documents were made use computer-related equipment.

201.  Based upon my knowledge and experience I have learned
that conspirators will communicate the details of their scheme
via email.  I have also learned through experience and
conversations with other special agents that individuals will
keep personal information, including financial information, on
computers used for business and/or personal reasons.  Therefore,
by this affidavit I am seeking authority to search for any of the
records set forth in Attachment B to this affidavit that may be
stored on computers at the premises to be searched. The terms
"records" and "documents" as used in Attachment B include all of
the items of evidence set forth in Attachment B in whatever form
and by whatever means such records, documents or materials, their
draft or modifications, may have been created or stored,
including but not limited to any hand made form (such as
writing); any electrical, electronic, or magnetic form (such as
tape recordings, cassettes, compact discs, or any information on
an electronic or magnetic storage device, such as floppy
diskettes, hard disks, backup tapes, CD-ROMS, optical discs,
printer buffers, smart cards, memory calculators, electronic
dialers, Bernoulli drives, or electronic notebooks, as well as
printouts or readouts from any such magnetic storage devices).

202.   Your affiant knows that computer hardware, software, documentation passwords and data security devices may be important to a criminal investigation in two respects: (1) the objects themselves may be evidence of a crime and (2) they may serve as storage devices for information relating to crimes. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize property that constitutes evidence of the commission of a criminal offense.

203. Your affiant has spoken with IRS-Criminal Investigation Special Agent Nathan Watt, a Computer Investigative Specialist, regarding the execution of search warrants involving computers and related equipment.  Special Agent Watt has been employed with IRS Criminal Investigation for six years.  In addition to attending training in financial investigation techniques and accounting, he has attended Computer Evidence Recovery Training at the Federal Law Enforcement Training Center, as well as Advanced Annual training and Advanced File System Analysis at the IRS Electronic Crimes Technology Support Center.  During this training and field experience, Agent Watt has participated in approximately twenty search warrants and consent searches during which he has participated in the seizure and imaging of over seventy computers.  Agent Watt has been responsible for analyzing seized electronic data and records from over forty computers including those seized pursuant to the search warrant/consent

134

searches, as well as computers seized by other agencies and
transferred to him to be analyzed.  Agent Watt  has informed your
affiant of the following:

    1.  Computer hardware consists of all equipment which can
collect, analyze, create, display, convert, store,
conceal, or transmit electronic, magnetic, optical or
similar computer impulses or data.  Hardware includes (but
is not limited to) any data processing devices (such as
central processing units, memory typewriters, and self-
contained "laptop" or "notebook" computers); internal and
peripheral storage devices (such as fixed disks, external
hard disks, floppy disk drives and diskettes, tape drives
and tapes, optical storage devices, transistor-like binary
devices, and other memory storage devices); peripheral
input/output devices (such as keyboards, printers,
scanners, plotters, video display monitors, and optical
readers); and related communication devices (such as
modems, cables and connections, recording equipment, RAM
or ROM units, acoustic couplers, automatic dialers, speed
dialers, programmable telephone dialing or signaling
devices and electronic tone-generating devices); as well
as any device, mechanism or parts that can be used to
restrict access to computer hardware (such as physical
keys and locks).

    2.  Computer software is digital information, which can be
interpreted by a computer and any of its related
components to direct the way they work.  Software is
stored electronic, magnetic, optical or other digital
form.  It commonly includes programs to run operating
systems, application (like word processing, graphics or
spreadsheet programs), utilities, interpreters, and
communications programs.

    3.  Computer-related documentation consists of written,
recorded, printed or electronically stored material, which
explains or illustrates how to configure or use computer
hardware, software, or other related items.

    4.  Computer passwords and other data security devices are
designated to restrict access to or hide computer
software, documentation, or data.  Data security devices
may consist of hardware, software, or other programming
code.  A password (a string of alphanumeric characters)
usually operates as a sort of digital key to "unlock"

particular data security devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software may also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unusual, as well as reverse the process to restore it. SA Watt informed your affiant that based on his knowledge, training and experience, researching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a computer forensic specialist in a laboratory or other controlled environment because:

    (a)  Volume of evidence: Computer storage devices (like hard disks, diskettes, tapes, laser disks and Bernoulii drives) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence and he or she might store it in random order with deceptive files names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instruments of crimes. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

    (b)  Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring professional skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems which the expert is qualified to analyze. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden" erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction codes embedded in the system (such as a "booby-trap"), a controlled environment is essential to its complete and accurate analysis.

204. However, due to the current demand a business places on their computer systems, your affiant is requesting that special agents be allowed to attempt to obtain a "mirror image" of the above mentioned data on site in order to prevent any harm or loss to the business by the seizure of their computers. In the event that the process of "mirror imaging" is not possible on site, your affiant seeks authority to seize such computers more fully described in Attachment B for the reasons stated above.

205. No stored wire communications will be accessed. With respect to electronic communications, there is evidence that any computer at the location is linked to the internet, and thus to an email account. In that event the computer(s) on site would allow for the Electronic Mailing (e-mailing) of data or documents, and thus e-mail messages may be stored on the computer(s). Title 18 Section 2703 specifically addresses the issue of the requirements for government access to stored electronic communications. Such stored communications can be accessed pursuant to a search warrant issued pursuant to Rule 41(b) of Federal Rules of Criminal Procedure. *See* 18 U.S.C. § 2703 (c)(1)(B)(ii). Those stored communications are only protected by the Act so long as they are stored on a server. Once transmitted, these files take on the same character as any other file on the hard drive. Files which may have been received by IFTIKHAR AHMAD, which may have been originally transmitted by

137

e-mail, but which have been downloaded and now reside on the hard drives, are not protected by the Stored Electronic Communications Act.

VIII.    CONCLUSION

206.    Based on the aforementioned facts, I have probable cause to believe that beginning in January 13, 1998 through the present IFTIKHAR AHMAD, MANPREET SINGH, ROBERTO ORTIZ ALFARO and others have engaged in a mortgage fraud scheme involving the purchase and sale of residential real properties, primarily in the Stockton, California area.  Many of the sales were financed with mortgages obtained through subprime lenders, and many of these transactions share certain characteristics in common:  a rapid turn around between the purchase and sale of a residential property, dramatic increases between the purchase and sale prices, and sales transactions by IFTIKHAR AHMAD or I & R in which the buyers acquired the properties with either no down payment (or a small down payment) and financed the purchase with large mortgage loans obtained from subprime lenders.  In many of the transactions, IFTIKHAR AHMAD or I & R provided the buyer's contribution to escrow, including funds the buyer used as a down payment.  I have probable cause to believe that evidence of violations of Title 18 U.S.C. §§ 2, 1014, 1028(a), 1341, 1956, 1957, and Title 31 U.S.C. § 5316 and 5324 will be found at the locations described in Attachments A-1 and A-2 hereto.

207.   I further have probable cause to believe that, in
carrying out the scheme, the persons identified above committed
substantive mail fraud violations as set forth in Paragraph 10
above.   Further, there is probable cause to believe that IFTIKHAR
AHMAD committed substantive identity fraud and money laundering
offenses in violation of Title 18 U.S.C. §§ 2, 1028(a), and 1957,
as further described in Paragraph 10 above.

IX.      SEALING REQUEST

208.   The criminal investigation regarding IFTIKHAR AHMAD and
others is continuing.   A number of additional interviews,
subpoenas, and possibly grand jury testimony and searches and
arrests, are contemplated in the very near future.   Disclosure of
the contents of this affidavit at this time would seriously
impede the continuing investigation and prosecution by disclosing
the details of the Government's investigation, which potentially
would cause target(s)/subject(s) of the investigation to flee,
destroy evidence, or intimidate and attempt to corruptly
influence potential witnesses in the case.   Such activity would
seriously impede the investigation and prosecution.   Accordingly,
the Court is respectfully requested to issue an order sealing

this search warrant application and affidavit until further order

of this Court.

Approved as to form:

Courtney J. Linn
Assistant U.S. Attorney


Affiant:

Kathleen A. Nicolls
Special Agent
Federal Bureau of Investigation


SUBSCRIBED to and SWORN to before me in
Sacramento, this 15th day of August, 2007

HON. DALE A DROZD
United States Magistrate Judge

140

# ATTACHMENT  A

## ATTACHMENT A-1

The premise at **5265 Barbados Circle, Stockton, California,** further described as a two story cream color house with tan trim.  The closest cross street to 5265 Barbados Circle is St. Barts Court.  The residence has a cream in color metal two car garage door.  The street numbers "5265" are black in color and the numbers are located to the right of the garage door if facing the house. There is a white in color screen door attached to the front door of the residence.  There are brick columns on each side of the house next to the garage door.  The house to the immediate right of "5265" is 5267 Barbados Circle, Stockton, California and further described as a two single story residence that is light green in color with tan trim.  The house to the immediate left of "5265" is 5263 Barbados Circle, Stockton, California and further described as a two story residence that is cream in color with tan trim.



## ATTACHMENT A-2

The motel office at the El Camino Motel located at **1506 East Mariposa Road, Stockton, California,** further described as the business address of I & R Investment Properties, LLC.  The motel office is located at the east end of the motel if facing the motel.  There is a security screen door protecting the entrance to the motel office.  Also, there is a bullet-proof partition that customers and motel staff speak through. The closest cross street to 1506 East Mariposa Road, Stockton, California is East Charter Way.  The business is a single story structure that is cream in color with tan trim.  There is a sign located on the property that states, "El Camino Motel."  There is a for sale sign located on the property that states, "For Sale, Multi Use Commercial Prop., 195 AC, (209) 410-8078, Contact Shannon Matthews."  The street numbers "1506" are black in color and attached to a metal mailbox located directly on East Mariposa Road.  If facing the business, the business to the immediate right of "1506" is Gonzalez Auto Sales, 1504 East Mariposa Road, Stockton.  If facing the business, the business to the immediate left of "1506" is Barnes Welding Supply, 1444 East Mariposa Road, Stockton, California.



# ATTACHMENT B

## ATTACHMENT B

**Definitions**:

The terms "records," "documents," and "materials" include all of the following items of evidence, in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROMs, DVDs, thumb drives, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as Palm Pilot computers, BlackBerry, I Phone and Treo communication devices, as well as printouts or readouts from any magnetic storage device); any handmade form (such as writing, drawing, or painting); any mechanical form (such as printing or typing); and any photographic form (such as microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The terms "individuals," "addresses," and "companies" as used in this Attachment are the individuals, addresses, and companies listed in the Appendix to this Attachment B (the "Appendix"), set forth below and fully incorporated herein.

**Relevant Time Period**:

From January 13, 1998 through and including the date of the execution

of this Search Warrant.

**Items to Be Seized**:

a.    Documents, records, and materials to, from, carbon copied to, created by, or regarding any of the individuals, addresses, or companies listed in the Appendix. Such documents, records, and materials are limited to: property files; escrow files; sales files; loan files; purchase agreements; property transaction records, including deeds, deeds of trust, notices of default, trust documents, and notices of sale; notary books; appraisals; mortgage records; loan records; credit reports; loan applications; verifications of deposits or employment; personnel files; promissory notes; canceled checks; bank records; rental agreements; leases; contracts; rent/income ledgers; journals, ledgers, and other books of original entry, including, cash receipts/disbursement journals, general journals and other books of account; correspondence relating to the financing, purchase, sale, or lease of real estate, financial instruments or securities; client files reflecting offers to purchase, rent, or sell real properties to potential borrowers and buyers.

1

b.    Documents, records, and materials indicating ownership, control, or possession of premises to be searched, which include: utility bills, telephone bills, canceled mail, and real property or vehicle registration and ownership information.

c.    Large amounts (in excess of $5,000) of United States or foreign currency.

d.    Domestic banking and financial institution records for any accounts in the name of any of the purchasers, sellers, or renters of Real Property listed in the Appendix.

e.    Domestic banking and financial institution records relating to transactions involving any individuals, addresses, or companies listed in the Appendix, including, but not limited to, bank statements, canceled checks, money orders, money drafts, traveler's checks, cashier's checks, deposit slips, check and savings books, loan applications, loan statements, wire transfer slips, credit card transaction slips and statements, documents from lenders, including brochures reference FDIC or other federal depository insurance, and any references and evidence of rental or control of safe deposit boxes or other storage locations, including records, receipts or keys.

f.    All foreign banking and financial institution records for Arshad Ullah at First Women's Bank Ltd. in Pakistan, Qaisar Shahzad at MCB Bank Ltd. in Peshway, Pakistan, Ilyas Ahmad at Citbank in Pakistan, Mumraiz Ahmad at Citbank in Pakistan, and relating to account #08000279 at First Woman's Bank in Peshwar, including, but not limited to, bank statements, canceled checks, money orders, money drafts, traveler's checks, cashier's checks, deposit slips, check and savings books, loan applications, loan statements, wire transfer slips, credit card transaction slips and statements, and evidence of rental or control of safe deposit boxes or other storage locations.

g.    Unopened mail matter to or from the individuals, addresses, or companies listed in the Appendix.

h.    Corporate minute books for stockholder and board of director meetings, other corporate meetings, and any other documents, records, and materials that identify ownership, control, or participation in the operation of I & R Investment Properties LLC.

i.    State and federal tax returns, tax return information, and tax preparation documents for, and any documents, records, and materials that reference or pertain to, any of the purchasers, sellers or renters of real property listed in the Appendix.

j.    Records that identify or lead to the identification of the purchase, lease, refinancing or sale of any tangible, real property, or financial assets by any of the purchasers, sellers or renters of real property listed in the Appendix.

2

k.    Whether conventional or electronic, all diaries, calendars, appointment books, journals, and address/telephone books (including an address/telephone rolodex or similar index), that contain or reference the individuals, addresses, or companies listed in the Appendix.

l.    Documents containing any social security numbers, alien registration numbers, dates of birth, addresses, employment records, telephone numbers or other identifying information for any of the purchasers, sellers or reenters listed in the Appendix.

m.    Cell phones.

n.    **For the search location identified in Attachment A-1 only**: For the search location identified in Attachment A-1 only. In searching for data capable of being read, stored or interpreted by a computer(s), law enforcement personnel executing this search warrant will employ the following procedure:

    1.    Upon securing the premises, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment and storage devices to determine whether these items can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data.

    2.    If the computer personnel determine it is not practical to perform an on-site search of the data within a reasonable amount of time, then the computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein. The computer equipment and storage devices will be seized and taken into the custody of the IRS-CI, and will be returned within a reasonable period of time, not to exceed 90 days, unless further authorization is obtained from the court.

    3.    In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

    4.    If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally

seized, the government will return these items within a reasonable time, not to exceed 90 calendar days from the date of seizure, unless further authorization is obtained from the Court.

o.    **For the search location identified at Attachment A-1 only**:  In order to search for data that is capable of being read or interpreted by a computer(s), law enforcement personnel will need to seize and search the following items, subject to the procedures set forth above:

1.    Any computer equipment and storage device capable of being used to commit, further or store evidence of identity fraud, mail fraud, or money laundering by IFTIKHAR AHMAD;

2.    Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

3.    Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

4..    Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

5.    Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

6.    Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

7.    Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data

p.    Travel itineraries, hotel receipts, airplane plane tickets, documentation from travel agents, U.S. and foreign passports, visas, correspondence to or from U.S. or foreign consulates or immigration authorities, and related materials documenting travel from the United States to the

4

United Kingdom or Pakistan, and from Pakistan or the United Kingdom to the United States by IFTIKHAR AHMAD, Rayhana Ahmad, MUMRAIZ AHMAD, or MUSHTAQ AHMAD.

q. Counterfeit stationary, checks, check stacks, billing invoices, stationary, credit reports, verifications of employment or credit, rental agreements, W-2 forms, 1099 forms, identification cards, driver's licenses, or social security cards.

r. Documents that reference professional licensing information relating to any Federal, State or local licensing authority, including, but not limited to, the California Board of Accountancy and the California Contractors State Licensing Board.

s. Completed, partially completed, or incomplete Currency and Monetary Instrument Reports (CMIRs), written or electronic documents containing instructions for completing CMIRs, and written or electronic documents explaining CMIR or the Bank Secrecy Act or other anti-money laundering laws.

**Appendix to Attachment B-1 follows below**

## APPENDIX TO ATTACHMENT B
## INDIVIDUALS AND ENTITIES

### Real Estate Professionals

| | |
|---|---|
| Blanford, Joel | Krueger, Clint |
| Bridge, Paul | Ngo, John |
| Bridge, William, individually and dba | Perry, Wendy |
|    The Loan Center | Powell, Larry J. |
| Echeverra, Teodulo | Timmins, Deborah |
| Hatterle, Kurt | Tower, Lisa |
| James, Denise | |

Purchasers, Sellers or Renters of Real Property

Ahmad, Ilyas
Ahmad, Iftikhar
Ahmad, Mumraiz
Ahmad, Mushtaq
Ahmad, Rayhana
Azam, Mohammed
Alcaraz, Ignacio
Alfaro, Roberto Ortiz
Bailey, Shane
Becerra, Beatriz
Campos, Lupe
Chavez, Gustav
Chavez, Salvador
Diaz, H.
Esparza, Jose
Fanos, Angelo
Fasal, Mohammad
Hernandez, Armando
Hussain, Ghulam
I & R Investment Properties LLC
Iqbal, Jamshed
Jawwad, Sylvia
Khan, Asfar
Lopez, Hilda
Lopez, Julio
Malik, Altaf
Malik, Mohammad

Munoz, Manny
Munoz, Teresa
Nunez, Ismael
Nunez, Roselia
Ortiz, Jamie
Paniagua, Teresa
Ramirez, Jose
Rashid, Abdul
Rivera, Israel
Rivera, Oscar
Rodriguez, Eduardo
Romero, Esmerelda
Rosas, Gilbert
Rosas, Leticia
Scott, Cindy
Serrano, Jose and Maria
Serrano, Ramiro
Singh, Manpreet
Soriano, Yolanda
Ulloa, Alfonso
Verna, Nancy
Villa, Maria
Villalobos, Florentino
W., Rebecca
Wong, Kevin
Zaman, Mohammad
Zavala, Gonzalo
Zhan, Mohammed

<u>Lenders and Loan Servicers</u>

Americas Wholesale Lender

Bank of Stockton

Beneficial CA

Citigroup/Consumer Finance

Decision One Mortgage

First National Lending Services

Freemont Investment and Loan

Long Beach Mortgage Company

New Century Mortgage

Washington Mutual, F.A.

## ADDRESSES

**Stockton, California**

27 S. Pilgrim Street, Stockton, CA

APN 15112042

511 S. Adelbert Avenue, Stockton, CA

APN  15731024

127 E. Jefferson Street, Stockton, CA

APN 14715409

2123 E. 10th Street

APN 17123224

2427 N. Myran Avenue, Stockton, CA

APN 11924019

1214 Lafayette Street, Stockton, CA

APN  15127102

2503 N. Oregon Avenue, Stockton, CA

APN 12109018

2419 E. Mistletoe Avenue, Stockton, CA

APN 03729024

2709 Bristol Avenue, Stockton, CA

APN 12117006

808 Flower Street, Stockton, CA

APN 15934014

533 N. Oro Avenue, Stockton, CA

APN 14333019

2440 E. Mistletoe, Stockton, CA

APN 11917014

2215 E. Vine Street, Stockton, CA

APN 14119219

952 N. Solari Avenue, Stockton, CA

APN 14105011

2630 S. Lincoln Street, Stockton, CA

APN 16530219

311 S. Laurel Avenue

APN 15521016

120 W. Jefferson, Stockton, CA

APN 14709604

2223 Mistletoe Avenue, Stockton, CA

APN 11904115

1721 E. Scotts Avenue, Stockton, CA

APN 15506038

3416 Sierra Madre Avenue, Stockton CA

APN 11533046

1306 S. American Street, Stockton, CA

APN 147434101

327 N. Pilgrim Street, Stockton, CA

APN 15112042

2228 E. Stadium Drive, Stockton, CA

APN 11903204

841 San Juan Avenue, Stockton, CA

APN 13336016

921 S. San Joaquin Street, Stockton, CA

APN 14721209

35 N. Airport Way, Stockton, CA

APN 15120506

350 S. Oro Avenue, Stockton, CA

APN 15732215

1979 N. Sunset Avenue, Stockton, CA

APN 11921012

2952 N. F. Street, Stockton, CA

APN 11917003

1971 N. Sunset Avenue, Stockton, CA

APN 11921013

54 W. 8th Street, Stockton, CA

APN 16536018

120 W. Vine Street, Stockton, CA

APN 13712105

1506 E. Mariposa Road, Stockton, CA

APN 17302012

1031 S. Sinclair, Stockton, CA

APN 15728308

1028 S. Sinclair Avenue, Stockton, CA

APN 15908115

7087 E. Highway 26, Stockton, CA

101-130-62

635 Garfield Avenue, Stockton, CA

145-220-32

4433 Shippee Lane, Stockton, CA

APN 08530028

2927 S. Harris Avenue, Stockton, CA

APN 17503306

715 E. Anderson Street, Stockton, CA

APN 14729513

1610 Milton Street, Stockton, CA

APN 15510014

345 S. American Street, Stockton, CA

APN 14909507

541 N. Shasta Avenue, Stockton, CA

APN 14343004

1522 N. F. Street, Stockton, CA

APN 14128509

616 E. 2nd Street, Stockton, CA

APN 16713403

1703 N. Palm Avenue, Stockton, CA

APN 12721417

2611 S. Bieghle Street, Stockton, CA

APN 17117024

729 E. Sonora Street, Stockton, CA

APN14926311

511 Sharon Avenue, Stockton, CA

APN 1553710

748 Eugenia Avenue, Stockton, CA

APN 15507012

1525 S. San Joaquin Street, Stockton, CA

APN 16702608

2816 N. Redwood Avenue, Stockton, CA

APN 11916027

## TITLE COMPANIES

Alliance Title Company

Central Valley Title Company

First American Title

Fidelity National Title Company

Chicago Title

Old Republic Title

Commonwealth Land Title

Placer Title Company

## END OF ATTACHMENT B

# ATTACHMENT C

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | **1998: Properties sold by Iftikhar Ahmad** | | | | | | | | |
| 1998 partial | 4650 Greensboro Way Stockton, CA APN 10418004 | 9/30/1996 | Iftikhar Ahmad & M. Khan | Glendale Federal Bk | 70,000 | Cash | | Alliance Title Co | 15 |
| | | 1/13/1998 | Mushtaq Ahmad | I. Ahmad & M. Khan | 140,000 | 126,000 | Contimortgage Corp | Central Valley Title Co | |
| | | 5/2/2000 | FORCLOSURE | | | | | | |
| | | 8/25/2000 | Cheng Liu | Contimortgage | 85,000 | | | | |
| 1998 | 620 Dawes Avenue Stockton, CA APN 15907009 | 6/4/1998 | Iftikhar Ahmad | Nationsbanc Mtg Corp | 29,000 | 25,000 | Stockton Mtg | First American Title | 3.5 |
| | | 9/25/1998 | Munraiz Ahmad | Iftikhar Ahmad | 75,000 | | | Central Valley Title Co | |
| | | 9/24/1998 | refi | | | 67,500 | Beneficial CA | Central Valley Title Co | |
| | | 6/12/2002 | Mohammad Fazal | Munraiz Ahmad | 115,000 | 92,000 | BNC Mtg | Fidelity Nat'l Title | |
| | | 5/15/2003 | NOTICE OF DEFAULT | | | | | | |
| | | 6/24/2003 | FORCLOSURE | | | | | | |
| 1998 | 1239 N Center Street Stockton, CA APN 13712307 | 6/19/1998 | Munraiz Ahmad | Mary Brennan Trust | 65,000 | 45,500 | Beneficial CA | Old Republic Title | |
| | | 9/29/1998 | Altaf Malik | Iftikhar Ahmad | unknown | | | Fidelity National Title | |
| | | 2/19/1999 | Mushtaq Ahmad | Altaf Malik | 135,000 | 121,500 | Mortgage USA | Fidelity National Title | |
| | | 3/17/2000 | FORCLOSURE | | | | | Fidelity National Title | |
| | | 9/14/2000 | Iftikhar Ahmad | Household Finance | 49,000 | 46,000 | Stockton Mgmt & Dev | Fidelity National Title | |
| | | 3/20/2001 | Sigfredo Delgado | Iftikhar Ahmad | 81,000 | Cash | | Central Valley Title Co | |
| 1998 * | 1229 Center Street Stockton, CA APN 13712308 | 7/28/1998 | Munraiz Ahmad | Mary Brennan Trust | 65,000 | Cash | | Old Republic Title | |
| | | 9/28/1998 | Altaf Malik | Munraiz Ahmad | unknown | Cash | | Fidelity Nat'l Title | |
| | | 11/5/1998 | Iftikhar Ahmad | Altaf Malik | 80,000 | Cash | | Fidelity Nat'l Title | |
| | | 11/5/1998 | refi | | | 72,000 | Beneficial CA | Fidelity Nat'l Title | |
| | | 11/15/1999 | Jose Ramirez | Iftikhar Ahmad | 90,000 | 90,000 | Beneficial CA | Central Valley Title | |
| | | 4/17/2001 | Iftikhar Ahmad | Jose Ramirez | unknown | unknown | | | |
| | | 2/21/2002 | Mohammad Fazal | Iftikhar Ahmad | 175,000 | 148,750 | Long Beach Mtg | Chicago Title | |
| | | 7/24/2002 | Alfonso Pichardo | Mohammad Fazal | 175,000 | 166,250 | Long Beach Mtg | Chicago Title | |
| | | 3/24/2004 | Alfonso Pichardo | Pichardo Trust | | 207,000 | Fremont Invs & Ln | Chicago Title | |
| | | 8/5/2005 | Epigmenia Pichardo | Alfonso Pichardo | nominal | 306,000 | Long Beach Mtg | North American Title | |
| | | 6/26/2007 | NOTICE OF DEFAULT | | | | Washington Mutual Bank | Title Court | |
| 1998 | 170 E Cleveland Street Stockton, CA APN 12711029 | 8/24/1998 | Iftikhar Ahmad | Jamma Khan | unknown | | | Central Valley Title Co | |
| | | 8/24/1998 | Mohammad Azam | Iftikhar Ahmad | 190,000 | 171,000 | Beneficial CA | Central Valley Title Co | |
| | | 9/28/1998 | refi | | | 11,000 | Beneficial CA | Chicago Title Co | |
| | | 4/12/2000 | FORCLOSURE | | | | | First American Title | |
| | | 4/12/2000 | Beneficial CA | Houskey Fin Corp | 128,000 | Cash | | First American Title | |
| | | 6/16/2000 | Harry Walker | Beneficial CA | 147,000 | Cash | | North American Title | |

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 1998 | 2616 E Bacon Street, Stockton, CA, APN 11919004 | 5/24/1998 | Iftikhar Ahmad | Michael Fritch | 30,000 | 30,000 | Peggy Brady | Chicago Title | |
| | | 9/28/1998 | Altaf Malik | Iftikhar Ahmad | unknown | Cash | | | |
| | | 11/19/1998 | Mohammad Fazal | Altaf Malik | 95,000 | 85,000 | Beneficial CA | Fidelity Nat'l Title | |
| | | 3/2/1999 | Iftikhar Ahmad | Mohammad Fazal | 233,181 | Cash | | Fidelity Nat'l Title | |
| | | 10/25/2001 | Jovita Tapia | Iftikhar Ahmad | 109,500 | 98,650 | HCL Fin | Fidelity Nat'l Title | |
| | | 11/7/2002 | refi | | | 135,150 | Long Beach Mtg | Chicago Title | |
| | | 10/28/2003 | Lydia Ortiz | Jovita Tapia | unknown | unknown | | | |
| 1998 | 1004 S Grant Street, Stockton, CA, APN 15733518 | 2/23/1998 | Iftikhar Ahmad | Federal Home Ln Mtg | 25,000 | 21,000 | North American Mtg | Old Republic Title | |

\* Autotrack also shows APN15733518 for 118 S. Adelbert, Stockton, CA - Incomplete information on both addresses.

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 1998 | 118 S Adelbert Avenue, Stockton, CA, APN 15733518 | | | | | | | | |

\* Autotrack also shows APN15733518 for 1004 S Grant, Stockton, CA - Incomplete information on both addresses.

## 1999 - Properties sold by Iftikhar Ahmad

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 1999 | 4433 Shippee Lane, Stockton, CA, APN 08530028 | 5/27/1998 | Iftikhar Ahmad | Federal Home Ln Mtg | 30,500 | 33,000 | Primac Family Partnrshp | Fidelity Nat'l Title | 8.5 |
| | | 2/10/1999 | Mushtaq Ahmad | Iftikhar Ahmad | 185,000 | 144,990 | Household Fin Corp | Fidelity Nat'l Title | |
| | | 5/10/2000 | FORCLOSURE | | | | | | |
| | | 9/15/2000 | Nick Dias | Beneficial CA | 90,000 | Cash | REO Sale | Commonwealth Title | |
| 1999 | 2927 S Harris Avenue, Stockton, CA, APN 17503306 | 5/6/1999 | Iftikhar Ahmad | First Nat'l Mtg | 29,000 | 21,700 | World Equities Inc | Chicago Title | 3 |
| | | 5/14/1999 | refi | | | 21,700 | First Nat'l Mtg | Chicago Title | |
| | | 8/5/1999 | Mushtaq Ahmad | Iftikhar Ahmad | 85,000 | 53,246 | Beneficial CA | Central Valley Title Co | |
| | | 8/17/2000 | FORCLOSURE | | | | | | |
| | | 8/17/2000 | Beneficial CA | Mushtaq Ahmad | 51,000 | | | First American Title Ins | |
| 1999 | 715 E Anderson Street, Stockton, CA, APN 14729513 | 10/21/1998 | Iftikhar Ahmad | Mohammad Azam | 60,000 | 48,750 | New Century Mtg Corp | Fidelity Nat'l Title | 11 |
| | | 9/27/1999 | Abdul Rashid | Iftikhar Ahmad | 75,000 | 63,750 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 11/22/2000 | FORCLOSURE | | | | | Chicago Title | |
| 1999 | 1610 Milton Street, Stockton, CA, APN 15510014 | 4/16/1998 | Iftikhar Ahmad | Beneficial Mtg | 25,000 | Cash | | Alliance Title Co | 16 |
| | | 8/14/1998 | refi | | | 49,600 | North American Mtg | Alliance Title Co | |
| | | 11/4/1999 | Abdul Rashid | Iftikhar Ahmad | 70,000 | Cash | | Central Valley Title | |
| | | 11/10/1999 | refi | | | 63,000 | Source One Mtg Corp | | |
| | | 12/24/2000 | FORCLOSURE | | | | | | |
| 1999 | 345 S American Street | 1/5/1998 | Iftikhar Ahmad | Richard Stepken | 48,000 | Cash | | Old Republic Title | 19 |

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 1999 | 1401 E Walnut Street | 7/20/1998 | Afsar Khan | Iftikhar Ahmad | unknown | 50,000 | Beneficial CA | Central Valley Title Co | 14 |
| | Stockton, CA | 7/19/1999 | Afsar Khan | Iftikhar Ahmad | 250,000 | 100,000 | Beneficial CA | Central Valley Title Co | |
| | APN 14909507 | 7/19/1999 | Maria Tobar | Afsar Khan | unknown | Cash | | Central Valley Title Co | |
| 1999 | | 10/23/1998 | Iftikhar Ahmad | Assoc Home Equity | 27,500 | 21,243 | Assoc Home Equity | First American Title | |
| | Stockton, CA | 3/23/1999 | refi | | | 56,748 | Beneficial CA | Fidelity Nat'l Title | |
| | APN 11720001 | 12/3/1999 | Altaf Malik | Iftikhar Ahmad | 90,000 | 72,000 | Option One Mtg | Fidelity Nat'l Title | |
| | | 10/3/2000 | FORECLOSURE | | | | | | |
| 1999 | 541 N Shasta Avenue | 11/16/1998 | Iftikhar Ahmad | Mtg Trust | 27,000 | Cash | | Chicago Title | 12.5 |
| | Stockton, CA | 3/10/1999 | refi | | | 3,893 | Beneficial CA | Fidelity Nat'l Title | |
| | APN 14343004 | 10/26/1999 | Abdul Rashid | Iftikhar Ahmad | 80,000 | 79,346 | Acubanc Mtg | Fidelity Nat'l Title | |
| | | 9/6/2000 | FORECLOSURE | | | | | | |
| 1999 | 1522 N F Street | 3/30/1999 | Iftikhar Ahmad | Devota Byrnes | 28,500 | 20,500 | Private-Devota Byrnes | Alliance Title Co | 6.5 |
| | Stockton, CA | 6/19/1999 | refi | | | 60,000 | Beneficial CA | Fidelity Nat'l Title | |
| | APN 14128509 | 10/21/1999 | Abdul Rashid | Iftikhar Ahmad | 75,000 | 60,000 | Oakmont Mtg | Central Valley Title Co | |
| | | 9/7/2000 | FORECLOSURE | | | | | | |
| 1999 | 616 E 2nd Street | 5/3/1999 | Iftikhar Ahmad | Parbati Chand | 26,000 | Cash | | Chicago Title Co | 5 |
| | Stockton, CA | 10/5/1999 | Abdul Rashid | Iftikhar Ahmad | 55,000 | 51,000 | Beneficial CA | Central Valley Title Co | |
| | APN | 10/27/1999 | refi | | | 10,519 | Beneficial CA | | |
| | | 2/26/2002 | FORECLOSURE | | | | | | |
| 1999 | 123 W 8th Street | 7/26/1999 | Iftikhar Ahmad | Florencio Biniegla | 19,000 | 17,000 | Stockton Mtg | First American Title | 4 |
| | Stockton, CA | 11/28/1999 | Altaf Malik | Iftikhar Ahmad | 62,000 | 52,700 | Old Kent Mtg Co | Fidelity Nat'l Title | |
| | APN 16515211 | 7/24/2000 | FORECLOSURE | | | | | | |
| **2000 Properties sold by Iftikhar Ahmad** | | | | | | | | | |
| 2000 * | 1306 S American St | 9/27/2000 | Iftikhar Ahmad | Gow Family Corp | 54,000 | Cash | | Old Republic Title | 3 yrs |
| | Stockton, CA | 11/22/2000 | Beatriz Becerra | Iftikhar Ahmad | 118,000 | 74,800 | Private-Iftikhar Ahmad | Fidelity Nat'l Title | |
| | APN 14734101 | 2/22/2001 | Nancy Verna | Beatriz Becerra | 115,000 | | | Fidelity Nat'l Title | |
| | | 2/13/2002 | Iftikhar Ahmad | Nancy Verna | 102,727 | Cash | | Fidelity Nat'l Title | |
| | | 11/6/2002 | refi | | | 116,250 | Stockton Mgmt & Dev | Chicago Title Co | |
| | | 1/13/2005 | I & R, Ilyas Ahmad | Iftikhar Ahmad | | | | Fidelity Nat'l Title | |
| | | 1/13/2005 | Manpreet Singh | I & R, Ilyas Ahmad | 460,000 | 391,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 11/29/2005 | NOTICE OF DEFAULT | | | | | | |
| | | 3/27/2006 | FORECLOSURE | | | | | | |
| | | 3/27/2006 | Long Beach Mtg Trust | California Reconveyance | 421,223 | | | Title Court | |

Page 3

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | | 6/9/2006 | John Yap / Irene Loke | Deutsche Bk Natl | 270,000 | 240,000 | Private-Hagmeyer 1989 | LSI Title | |
| 2000 | 2249 Vine Street | 1/12/2000 | Iftikhar Ahmad | California Fed Bank | 36,000 | Cash | | Fidelity Nat'l Title | 11 |
| | Stockton, CA | 12/21/2000 | Cindy Scott | Iftikhar Ahmad | 98,000 | 76,000 | Fremont Invs & Ln | Alliance Title Co | |
| | APN 14119216 | 7/31/2001 | Safdar Ali / Ghulam Hussain | Cindy Scott | unknown | Cash | | unknown | |
| | | | NOTICE OF DEFAULT | | | | | | |
| 2000 | 2227 E Taylor Street | 11/22/1999 | Iftikhar Ahmad | Bank of New York | 43,500 | Cash | | Old Republic Title | 2.5 |
| | Stockton, CA | 2/4/2000 | Iftikhar Ahmad | Iftikhar Ahmad | 85,000 | 81,000 | Beneficial CA | Fidelity Nat'l Title | |
| | APN 15533040 | 7/9/2001 | NOTICE OF DEFAULT | | | | | | |
| 2000 | 2855 McComb Avenue | 9/2/1999 | Iftikhar Ahmad | Washington Mutual | 45,000 | Cash | | Chicago Title | 4 |
| | Stockton, CA | 1/26/2000 | Jamshed Iqbal | Iftikhar Ahmad | 98,000 | 78,400 | Option One Mtg | Fidelity Nat'l Title | |
| | APN 11919033 | 2/28/2001 | FORCLOSURE | | | | | | |
| 2000 | 1820 E Anita | 7/20/1999 | Iftikhar Ahmad | Household Fin Svcs | 25,000 | 25,000 | Stockton Mtg | Fidelity Nat'l Title | 6 |
| | Stockton, CA | 2/4/2000 | Munraiz Ahmad | Iftikhar Ahmad | 75,000 | Cash | | Fidelity Nat'l Title | |
| | APN 14108215 | 3/17/2000 | refi | Munraiz Ahmad | 84,954 | 70,874 | Assoc Fin Svcs CA | Fidelity Nat'l Title | |
| | | 5/11/2001 | Duarte Camargo | Munraiz Ahmad | | 84,197 | National City Mtg | Chicago Title | |
| 2000 | 1507 Sierra Lane | 7/22/1999 | Iftikhar Ahmad | Buford Martin | 20,000 | 12,000 | Private-Buford Martin | Fidelity Nat'l Title | 9 |
| | Stockton, CA | 5/3/2000 | Jamshed Iqbal | Iftikhar Ahmad | 68,000 | 61,200 | Decision One Mtg Co | Fidelity Nat'l Title | |
| | APN 14118208 | 8/1/2001 | NOTICE OF DEFAULT | | | | | | |
| 2000 * | 1942 S San Joaquin St | 9/26/2000 | Iftikhar Ahmad | Gow Family Corp | 27,000 | 21,600 | Private-Gow Family Corp | Old Republic Title | 3 |
| | Stockton, CA | 12/27/2000 | Cindy Scott | Iftikhar Ahmad | 76,000 | 54,400 | Private-Iftikhar Ahmad | Fidelity Nat'l Title | |
| | APN 16704614 | 1/19/2001 | refi | Cindy Scott | unknown | 75,239 | Travelers Bk & Tr | Fidelity Nat'l Title | |
| | | 3/27/2003 | Iftikhar Ahmad | Cindy Scott | unknown | Cash | | Chicago Title Co | |
| | | 3/20/2003 | Armando Hernandez | Iftikhar Ahmad | 165,000 | 148,500 | Long Beach Mtg | Chicago Title Co | |
| | | 10/15/2004 | Alberto Barraza | Armando Hernandez | nominal | Cash | | | |
| 2000 | 1514 Spring Street | 5/5/1998 | Iftikhar Ahmad | Assoc Home Equity | 25,000 | 22,000 | Stockton Mtg | First American Title | 18 |
| | Stockton, CA | 10/16/1998 | refi | | | 56,000 | Beneficial CA | Central Valley Title Co | |
| | APN 16916604 | 1/7/2000 | Abdul Rashid | Iftikhar Ahmad | 78,000 | 63,680 | Alternative Fin Corp | Fidelity Nat'l Title | |
| | | 11/28/2000 | FORCLOSURE | | | | | | |
| 2000 | 612 E Sonora Street | 9/27/2000 | Iftikhar Ahmad | Gow Family Corp | unknown | 36,800 | Private-Gow Family | Old Republic Title | |
| | Stockton, CA | | | | | | | | |
| | APN 14926203 | | | | | | | | |

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Amount | Seller | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 2000 | 1729 E Sonora Street Stockton, CA APN 15519026 | 1/6/2000 | Iftikhar Ahmad | unknown | unknown | 31,500 | Stockton Mgmt & Dev | First American Title Ins | |
| | * Incomplete information on autotrack | | | | | | | | |
| **2001: Properties sold by Iftikhar Ahmad** | | | | | | | | | |
| 2001 | 726 Lafayette Street Stockton, CA APN 14926303 | 6/20/2001 | Iftikhar Ahmad | 46,000 | Gow Family Corp | Cash | | Old Republic Title | 4.5 |
| | | 11/2/2001 | Mario Maldonado | 86,000 | Iftikhar Ahmad | 63,750 | Benchmark Lending | First American Title | |
| | | 5/25/2007 | refi | | | 234,600 | SCME Mtg Bankers | Fidelity Nat'l Title | |
| 2001* | 721 E Anderson St Stockton, CA APN 14729512 | 6/20/2001 | Iftikhar Ahmad | 48,000 | Gow Family Corp | Cash | | Old Republic Title | 5 |
| | | 11/27/2001 | Carmen Galindo | 95,000 | Iftikhar Ahmad | 71,250 | Fremont Invs & Ln | Central Valley Title | |
| | | 12/11/2001 | Carina Miner | 71,000 | Carmen Galindo | Cash | | Fidelity Nat'l Title | |
| | | 6/24/2002 | Iftikhar Ahmad | 120,000 | Carina Miner | Cash | | Fidelity Nat'l Title | 1 |
| | | 7/23/2002 | Oscar Rivera | 120,000 | Iftikhar Ahmad | 96,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| 2001 | 1219 S Stanislaus St Stockton, CA APN 14727040 | 9/28/2001 | Iftikhar Ahmad | 20,000 | Gow Family Corp | Cash | | Old Republic Title | 7.5 |
| | | 5/10/2001 | Sean Ford | 61,500 | Iftikhar Ahmad | 59,073 | Community Lending | Fidelity Nat'l Title | |
| 2001 | 27 S Pilgrim Street Stockton, CA APN 15120410 | 9/28/2000 | Iftikhar Ahmad | 54,000 | Gow Family Corp | 43,200 | Private-Gow Family Trust | Old Republic Title | 14 |
| | | 8/22/2001 | refi | | | 93,750 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 12/7/2001 | Julio Lopez | 160,000 | Iftikhar Ahmad | 128,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 2/19/2004 | Alfredo Gonzalez | 145,000 | Julio Lopez | 145,000 | National City Mtg | Fidelity Nat'l Title | |
| 2001 | 1138 S Grant Stockton, CA APN 14733027 | 9/27/2000 | Iftikhar Ahmad | 29,000 | Gow Family Corp | Cash | | Old Republic Title | 8 |
| | | 5/23/2001 | Shane Bailey | 76,000 | Iftikhar Ahmad | 64,600 | Long Beach Mtg | Chicago Title Co | |
| 2001 | 31 S Pilgrim Street Stockton, CA APN 15120411 | 9/27/2000 | Iftikhar Ahmad | 17,000 | Gow Family Corp | 13,600 | Private-Gow Family Corp | Old Republic Title | 6 |
| | | 3/22/2001 | Wayne Osborg | 38,000 | Iftikhar Ahmad | 38,000 | Private-Helwig Trust | Fidelity Nat'l Title | |
| 2001 | 4915 Dana Avenue Stockton, CA APN 15916002 | 3/26/2001 | Iftikhar Ahmad | 55,000 | Bank of New York | Cash | | Chicago Title | 2 |
| | | 6/1/2001 | Saeed Rehman | 70,000 | Iftikhar Ahmad | Cash | | Chicago Title | |
| | | 6/25/2004 | Mustapha Mohammad | 250,000 | Saeed Rehman | 199,960 | World Savings Bk | Chicago Title | |
| 2001 | 2049 Superior Street Stockton, CA | 4/6/2001 | Iftikhar Ahmad | 35,000 | Lois Hill | Cash | | Old Republic Title | 6.5 |
| | | 11/12/2001 | Gustavo Chavez | 110,000 | Iftikhar Ahmad | 99,000 | WMC Mtg | Fidelity Nat'l Title | |

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | APN 16920213 | 9/17/2002 | NOTICE OF DEFAULT | | | | | | |
| | | 10/7/2002 | FORCLOSURE | | | | | | |
| | | 10/7/2002 | Title Trust Deed Svc | Cal Asset LLC | 83,602 | | | | |
| | | 12/3/2002 | Cal Asset LLC | Rakesh Singh | 106,000 | 84,800 | Pacific Rep Mtg Corp | Chicago Title | |
| 2001 | 1703 N Palm Avenue Stockton, CA | 1/22/1999 | Iftikhar Ahmad | California Fed Bank | 25,000 | | | | |
| | APN 12721417 | 1/26/1999 | refi | Iftikhar Ahmad | | 18,750 | Beneficial CA | Fidelity Nat'l Title | 17.5 |
| | | 7/13/2001 | Jose & Maria Serrano | Iftikhar Ahmad | 105,000 | 83,300 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 1/28/2002 | NOTICE OF DEFAULT | | | | | | |
| | | 6/12/2002 | FORCLOSURE | | | | | | |
| | | 6/6/2002 | California Reconveyance | Fairbanks Capital Corp | 90,230 | | | First American Title | |
| | | 6/27/2003 | Fairbanks Capital Corp | Leopoldo Cisneros | 102,000 | Cash | | First American Title | |
| 2001* | 2611 S Bieghle Street Stockton, CA | 2/14/2001 | Iftikhar Ahmad | United Companies | 30,000 | Cash | | Fidelity Nat'l Title | 6.5 |
| | | 8/29/2001 | Gustavo Chavez | Iftikhar Ahmad | 95,000 | Cash | | Fidelity Nat'l Title | |
| | APN 17117024 | 8/31/2001 | refi | | unknown | 80,750 | BNC Mtg | Fidelity Nat'l Title | 1 |
| | | 1/25/2003 | Iftikhar Ahmad | Gustavo Chavez | unknown | Cash | | Chicago Title | |
| | | 2/25/2003 | Sylvia Jawaad | Iftikhar Ahmad | 161,000 | 152,950 | Long Beach Mtg | Chicago Title | |
| | | 5/14/2004 | Joanna Castellanos | Sylvia Jawaad | 180,000 | 144,000 | Long Beach Mtg | Chicago Title | |
| 2001 | 210 E Ellis Street Stockton, CA | 6/24/1999 | Iftikhar Ahmad | Federal Home Ln Mtg | 33,000 | 33,000 | | Old Republic Title | 27 |
| | | 7/13/1999 | refi | | nominal | 30,000 | Private-James Page | Old Republic Title | |
| | APN 12520034 | 9/1/2000 | Rayhana Ahmad | Iftikhar Ahmad | | 67,920 | Travelers Bk & Tr | Fidelity Nat'l Title | |
| | | 9/14/2001 | Robert Fitzpatrick | Rayhana Ahmad | 130,000 | 123,500 | LOANCITY.com | Fidelity Nat'l Title | |
| | | 8/22/2003 | Stanley Brazzel | Robert Fitzpatrick | unknown | 153,000 | Long Beach Mtg | First American Title | |
| 2001 | 729 E Sonora Street Stockton, CA | 8/4/1997 | Mohammed Azam | Mumraiz Ahmad | 85,000 | 63,750 | WMC Mtg Corp | Central Valley Title Co | |
| | APN 14926311 | 1/4/2000 | Iftikhar Ahmad | Bankers Trust TE | 35,000 | Cash | | First American Title | 14 |
| | | 3/16/2001 | Cindy Scott | Iftikhar Ahmad | 85,000 | 76,500 | Long Beach Mtg | Alliance Title Co | |
| | | 8/19/2002 | Iftikhar Ahmad | Cindy Scott | 62,500 | Cash | | Fidelity Nat'l Title | |
| | | 8/19/2002 | Oscar Rivera | Iftikhar Ahmad | 62,500 | 112,500 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 12/17/2003 | | | | 159,800 | All American Finance | Chicago Title Co | |
| | | 10/28/2004 | I & R | Oscar Rivera | 179,400 | Cash | | Fidelity Nat'l Title | |
| | | 1/11/2005 | Roberto Alfaro | I &R | 290,000 | 261,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 6/21/2005 | NOTICE OF DEFAULT | | | | | | |
| | | 10/21/2005 | FORCLOSURE | | | | | | |
| | | 10/18/2005 | Long Beach Mtg Ln trst | California Reconveyance | 281,373 | | | Fidelity Nat'l Title | |
| | | 7/25/2006 | Mohammed Ajmal | Long Beach Mtg Ln trst | 149,000 | Cash | | Fidelity Nat'l Title | |

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 2001 | 343 S Stanislaus Street | 9/27/2000 | Iftikhar Ahmad | Gow Family Corp | 57,000 | 45,600 | Private-Gow Family Trust | Old Republic Title | |
| | Stockton, CA | 6/15/2001 | Redevip Agency Stockton | Iftikhar Ahmad | unknown | | | Fidelity Nat'l Title | |
| | APN 14926111 | | | | | | | | |
| 2002: Properties sold by Iftikhar Ahmad | | | | | | | | | |
| 2002 | 511 Sharon Avenue | 7/30/2002 | Iftikhar Ahmad | Juanita Harrington | 65,000 | Cash | | Fidelity Nat'l Title | 3 |
| | Stockton, CA | 10/18/2002 | Hilda Lopez | Iftikhar Ahmad | 143,000 | 128,000 | Long Beach Mtg | Chicago Title | |
| | APN 15537010 | 10/5/2005 | Benito Sanchez | Hilda Lopez | 280,000 | 224,000 | Fremont Invs & Ln | Financial Title | |
| 2002 | 748 Eugenia Avenue | 5/30/2002 | Iftikhar Ahmad | Shirley Smith | 57,000 | Cash | | Alliance Title Company | 4 |
| | Stockton, CA | 10/3/2002 | Lupe Campos | Iftikhar Ahmad | 130,000 | 100,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | APN 15507012 | 5/27/2004 | Maria Campos | Lupe Campos | nominal | 140,000 | Argent Mtg Co | Old Republic Title | |
| | | 9/9/2005 | refi | refi | nominal | 170,000 | ResMae Mtg | Chicago Title | |
| 2002 | 1525 S San Joaquin St | 3/11/2002 | Iftikhar Ahmad | Aurora Santiago | 50,000 | 105,000 | Stockton Mgmt & Dev | Central Valley Title | 7 |
| | Stockton, CA | 10/29/2002 | Kevin Wong | Iftikhar Ahmad | 220,000 | 209,000 | Long Beach Mtg | Chicago Title | |
| | APN 16702608 | 7/1/2004 | Jenny Wong | Kevin Wong | nominal | 280,500 | Heritage Mtg Corp | Fidelity Nat'l Title | |
| 2002 | 1732 N Berkeley Ave | 7/16/1997 | Iftikhar Ahmad | John Manos | 61,000 | 53,020 | Private-John Manos | Commonwealth Land Tit | 48 |
| | Stockton, CA | 7/11/2001 | Iftikhar Ahmad | Rayhana Ahmad | 35,000 | 60,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | APN 11718138 | 8/2/2002 | Alfonso Pichardo | Iftikhar Ahmad | 145,000 | unknown | | Fidelity Nat'l Title | |
| 2002 | 1145 E Clay Street | 6/20/2001 | Iftikhar Ahmad | Juan Gomez | 20,000 | Cash | | Fidelity Nat'l Title | 9 |
| | Stockton, CA | 3/26/2002 | Kemp Land Co | Iftikhar Ahmad | 35,000 | 35,000 | Private-Ed & Doris Marks | Fidelity Nat'l Title | |
| | APN 15134017 | 12/4/2002 | Tariq Din | Kemp Land Co | 50,000 | Cash | | Fidelity Nat'l Title | |
| | | 1/28/2003 | refi | | | 85,000 | | Alliance Title | |
| | | 4/1/2003 | Presidential Investors | Tariq Din | | Cash | | Attorney Only | |
| | | 7/18/2003 | Antonio Barragan | Presidential Investors | 149,000 | 146,921 | Guaranty Res Lending | Alliance Title | |
| | | 1/29/2007 | Maria Martinez | Antonio Barragan | 150,000 | 150,000 | Bank of America | Chicago Title | |
| 2002 | 1331 E Roosevelt St | 5/10/2001 | Iftikhar Ahmad | Azhar Majeed | 90,000 | 73,800 | Long Beach Mtg | Fidelity Nat'l Title | 15 |
| | Stockton, CA | 8/21/2002 | Mohammad Zaman | Iftikhar Ahmad | 108,000 | 76,734 | Bank of America | Chicago Title | |
| | APN 15103316 | 1/15/2004 | Terry Baca | Mohammad Zaman | unknown | 149,950 | Wells Fargo Hm Lns | Alliance Title | |
| 2002 | 2816 N Redwood Ave | 6/24/2002 | Iftikhar Ahmad | Charles Freer | 95,000 | Cash | | Fidelity National Title | 4 |
| | Stockton, CA | 10/23/2002 | Jose Esparza | Iftikhar Ahmad | 142,000 | 113,600 | Long Beach Mtg | Fidelity National Title | |
| | APN 11916027 | 5/20/2004 | Dejesus-Esparza | Jose Esparza | nominal | 151,000 | Countrywide Home Lns | North American Title | |

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 2002 * | 327 N Pilgrim Street | 10/6/1997 | Iftikhar Ahmad | Hal Lurtsema | 22,000 | 22,000 | Private-Hal Lurtsema | Fidelity Nat'l Title | 7 |
| | Stockton, CA | 7/20/1998 | refi | | | 55,300 | Beneficial CA | Central Valley Title Co | |
| | APN 15112042 | 2/22/2002 | refi | | | 93,500 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 7/18/2002 | Oscar Rivera | Iftikhar Ahmad | 120,000 | 112,500 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 12/18/2003 | I & R, Ilyas Ahmad | Oscar Rivera | 112,000 | Cash | | Fidelity Nat'l Title | |
| | | 6/18/2004 | Alfonso Ulloa | I & R | 172,000 | 137,600 | Long Beach Mtg | Alliance Title Co | |
| | | 9/10/2004 | I & R, Ilyas Ahmad | Alfonso Ulloa | 180,000 | Cash | | Fidelity Nat'l Title | |
| | | 6/9/2005 | Maria Villa | I & R, Ilyas Ahmad | 238,000 | | ?? | Alliance Title Co | |
| | | 2/22/2006 | Ruben Villa | Maria Villa | Nominal | N/A | N/A | N/A | |
| | | | | | | | | | |
| 2002 | 522 W Park Street | 2/5/2002 | Iftikhar Ahmad | Bogart-Harvey Inc | unknown | 91,500 | Stockton Mgmt & Dev | Alliance Title Co | |
| | Stockton, CA | 6/19/2002 | Mohammad Fazal | Iftikhar Ahmad | 275,000 | 142,500 | WMC Mtg Corp | Fidelity Nat'l Title | |
| | APN 13721303 | 12/13/2002 | Julio Lopez | Mohammad Fazal | 210,000 | 178,500 | Long Beach Mtg | Chicago Title Co | |
| | | 9/15/2003 | Gonzalo Zavala | Julio Lopez | 300,000 | 285,000 | Long Beach Mtg | Commonwealth Mtg Co | |
| | | 12/21/2004 | William Jackson | Gonzalo Zavala | 297,000 | 283,000 | Private-Gonzalo Zavala | Chicago Title Co | |
| | | 3/15/2006 | NOTICE OF DEFAULT-Gonzalo Zavala | | | | Other Indrs-Wachovia Bk | LSI Title | |
| | | 9/25/2006 | NOTICE OF DEFAULT-Gonzalo Zavala | | | | | Title Court | |
| | | 2/21/2007 | FORCLOSURE | | | | | | |
| | | 2/21/2007 | Gsamp Trust 2004 | Cal-Western Reconvey. | 323,954 | Cash | | Title Court | |
| 2003 Properties sold by Iftikhar Ahmad | | | | | | | | | |
| 2003 | 511 S Adelbert Ave | 10/1/2002 | Iftikhar Ahmad | Floyd Parsons | 75,000 | Cash | | Alliance Title Company | 4 |
| | Stockton, CA | 1/29/2003 | Silvia Jawwad | Iftikhar Ahmad | 165,000 | 156,750 | Long Beach Mtg | Chicago Title | |
| | APN 16731024 | 7/20/2005 | Sonia Branco | No doc re sale | | 204,000 | Greenpoint Mtg | Alliance Title Company | |
| | | 5/17/2005 | refi | | | 22,600 | Guild Mtg Co | Alliance Title Company | |
| | | | | | | | | | |
| 2003 | 3924 N American St | 1/2/2003 | Iftikhar Ahmad | Alan Serrano | 119,000 | Cash | | Old Republic Title | 2 |
| | Stockton, CA | 2/26/2003 | Ismael Nunez | Iftikhar Ahmad | 182,000 | 163,800 | Long Beach Mtg | Chicago Title | |
| | APN 11525408 | 7/10/2004 | Jose Valencia | Ismael Nunez | nominal | Cash | | Chicago Title | |
| | | 8/10/2004 | refi | | | 177,421 | Washington Mut Bank | | |
| | | | | | | | | | |
| 2003 | 127 E. Jefferson Street | 12/27/2002 | Iftikhar Ahmad | Robert Covarrubias | 63,000 | Cash | | Old Republic Title | 3.5 |
| | Stockton, CA | 4/15/2003 | Sylvia Jawwad | Iftikhar Ahmad | 167,000 | 150,300 | Long Beach Mtg | Chicago Title | |
| | APN 14715409 | 4/5/2004 | refi | | | 157,500 | Fremont Invs & Ln | First American Title | |

Page 8

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | | 7/18/2006 | Maria Ochoa | Sylvia Jawwad | unknown | 168,000 | New Century Mtg | First American Title | |
| 2003 | 2123 E 10th Street | 9/18/2002 | Iftikhar Ahmad | Frank Lee | 87,000 | 62,250 | Stockton Mgmt & Dev | Financial Title | 3.5 |
| | Stockton, CA | 1/6/2003 | Lelida Rosas / H Diaz | Iftikhar Ahmad | 155,000 | 147,250 | Long Beach Mtg | Chicago Title | |
| | APN 17123224 | 11/10/2004 | refi | | | 177,650 | Argent Mtg Co | Alliance Title Co | |
| | | 11/10/2004 | Heriberto Diaz | Leticia Rosas | nominal | Cash | | Placer Title Co | |
| | | 1/5/2006 | refi | | | 252,000 | Wilmington Fin Inc | Placer Title Co | |
| 2003 | 2427 N Myran Avenue | 7/14/2003 | Mumraiz Ahmad | Raymond Cole | 25,000 | 17,500 | Private-Wendy Berndt | First American Title | |
| | Stockton, CA | 12/23/1998 | Altaf Malik | Mumraiz Ahmad | 75,000 | cash | | Fidelity Nat'l Title | |
| | APN 11924019 | 7/10/2002 | Iftikhar Ahmad | Altaf Malik | 125,000 | 100,000 | BNC Mtg | Fidelity Nat'l Title | 8 |
| | | 4/2/2003 | Ismael Nunez | Iftikhar Ahmad | 166,000 | 132,800 | Long Beach Mtg | Chicago Title | |
| | | 4/23/2004 | Maria Vega | Ismael Nunez | 20,000 | cash | | | |
| | | 10/4/2004 | refi | | | 159,000 | New Century Mtg | Commonwealth Title | |
| | | 3/6/2007 | refi | | | 164,500 | First Magnus Fin Corp | First American Title | |
| 2003 * | 1214 Lafayette Street | 8/4/2003 | Iftikhar Ahmad | Elizabeth Johnson | 86,000 | Cash | | Central Valley Title Co | 3.5 |
| | Stockton, CA | 11/17/2003 | I & R | Iftikhar Ahmad | 160,000 | 152,000 | Long Beach Mtg | Commonwealth Title Co | |
| | APN 15127102 | 11/17/2003 | Rebecca Wood | I & R | 155,454 | Cash | | Commonwealth Title Co | |
| | | 9/10/2004 | | Rebecca Wood | 220,000 | 176,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 11/19/2004 | Jamie Ortiz | I & R | | 44,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 11/19/2004 | 2nd loan | | | | | | |
| | | 12/27/2005 | Jamie Ortiz | C Ortiz-Pozos | nominal | 263,150 | Fremont Invs & Ln | Alliance Title | |
| | | 6/18/2007 | NOTICE OF DEFAULT | | | | | | |
| | | 7/3/2007 | FORCLOSURE | | | | | | |
| 2003 | 2503 N Oregon Avenue | 4/17/2003 | Iftikhar Ahmad | Jamke | 120,000 | Cash | | Fidelity Nat'l Title | 3.5 |
| | Stockton, CA | 7/28/2003 | I & R | Iftikhar Ahmad | 275,000 | 247,500 | Long Beach Mtg | Commonwealth Title Co | |
| | APN 12109018 | 7/28/2003 | Gonzalo Zavala | I & R | 300,100 | 270,000 | New Century Mtg | Commonwealth Title Co | |
| | | 9/1/2004 | Maria Campos | Gonzalo Zavala | | | Home Q | Chicago Title | |
| | | 5/10/2007 | NOTICE OF DEFAULT | | | | | LSI Title Co | |
| 2003 | 2419 E Mistletoe Ave | 4/23/2003 | Iftikhar Ahmad | Donald Morrow | 112,500 | Cash | | Central Valley Title Co | 2 |
| | Stockton, CA | 6/23/2003 | I & R | Iftikhar Ahmad | | | | Commonwealth Title Co | |
| | APN 11904417 | 6/23/2003 | Ismael Nunez | I & R | 167,636 | 151,200 | Long Beach Mtg | Commonwealth Title Co | |

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | | 12/29/2004 | Mhmd Wasim, Mhmd Waheed, Saeed U Rahman | Ismael Nunez | 153,000 | Cash | | Chicago Title | 9 |
| | | 8/27/2005 | Qulom Matthews | Mhmd Wasim | 260,000 | 259,950 | Amer Wholesale Lndr | Financial Title | |
| 2003 | 622 E Worth Street Stockton, CA APN 14729303 | 3/21/2003 | Iftikhar Ahmad | Maria Cruz | 50,000 | Cash | | Chicago Title | |
| | | 12/19/2003 | I & R | Iftikhar Ahmad | 180,000 | 162,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 3/9/2004 | Ignacio Alcaraz | I & R | 162,000 | Cash | | Fidelity Nat'l Title | |
| | | | Julio A Lopez | Ignacio Alcaraz | | | | Fidelity Nat'l Title | |
| | | 3/3/2006 | Emilio Ponce | Julio A Lopez | 180,000 | Cash | | Chicago Title | |
| 2003 | 14282 S Harlan Road Lathrop, CA APN 19607019 | 6/9/2003 | Iftikhar Ahmad | Turner Trust | 75,000 | Cash | | Financial Title | 6 |
| | | 12/16/2003 | I & R | Iftikhar Ahmad | | | | | |
| | | 12/18/2003 | Ramiro Serrano | I & R | 220,000 | 176,000 | Long Beach Mtg | Commonwealth Title Co | |
| | | 3/12/2005 | Manuel Santos | Ramiro Serrano | nominal | Cash | | | |
| | | 10/19/2005 | refi | | | 238,000 | Washington Mutual Bank | Fidelity Nat'l Title | |
| | | 12/27/2005 | refi | | | 65,000 | Stockton Mtg | Placer Title Co | |
| 2003 | 414 W Oak Street Lodi, CA APN 03729024 | 7/23/2003 | iftikhar Ahmad | Thomas Trust | 174,000 | 121,800 | Private-David Kellar | Alliance Title Co | 5 |
| | | 12/18/2003 | I & R | Iftikhar Ahmad | | | | Fidelity Nat'l Title | |
| | | 12/22/2003 | Teresa Paniagua | I & R | 264,500 | 211,600 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 12/22/2003 | 2nd Mtg | | | 52,900 | Long Beach Mtg | Fidelity Nat'l Title | |
| 2003 | 2709 Bristol Avenue Stockton, CA APN 12117006 | 9/22/2003 | I & R | Lola Perez | 155,500 | Cash | | Chicago Title Co | 2.5 |
| | | 12/4/2003 | Gilbert Rosas | I &R | 240,000 | 192,000 | Long Beach Mtg | Commonwealth Title Co | |
| | | 6/3/2005 | Jose Vasquez | Gilbert Rosas | 301,000 | 240,800 | Argent Mtg Co | Alliance Title Co | |
| | | 12/11/2006 | NOTICE OF DEFAULT | | | | Homecomings Financial | First American Title | |
| | | 3/16/2007 | NOTICE OF DEFAULT | | | | Homecomings Financial | Title Court | |
| | | 4/10/2007 | FORCLOSURE | | | | | | |
| | | 4/10/2007 | Bk of NY Trust Co | Executive Trustee Svcs | 261,558 | Cash | | First American Title | |
| 2003 | 808 Flower Street Stockton, CA APN 15934014 | 4/17/2003 | iftikhar Ahmad | Michael Kvidera | 152,000 | Cash | | Chicago Title Co | 5 |
| | | 8/21/2003 | I & R | Iftikhar Ahmad | | Cash | | Commonwealth Title Co | |
| | | 9/10/2003 | Rosella Nunez | I & R | 288,000 | 230,400 | Long Beach Mtg | Commonwealth Title Co | |
| | | 12/17/2004 | NOTICE OF DEFAULT | | | | US Nat'l Bank Assoc | Title Court | |
| | | 4/5/2005 | Carlos Perez | Rosella Nunez | 365,000 | 292,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 5/17/2006 | refi | | | 63,750 | World Savings Bank | Financial Title | |
| | | 5/17/2006 | refi | | | 318,750 | World Savings Bank | Financial Title | |
| | | 5/17/2007 | NOTICE OF DEFAULT | | | | World Savings Bank | First American Title | |
| 2003 | 533 N Oro Avenue Stockton, CA | 6/9/2003 | iftikhar Ahmad | Farley Trust | 90,000 | Cash | | Fidelity Nat'l Title | 3 |
| | | 9/15/2003 | I & R Inv Prop LLC | Iftikhar Ahmad | | | | Commonwealth Title | |

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | APN 14333019 | 9/15/2003 | Rebecca Wood | I & R Inv Prop LLC | 165,000 | 156,750 | Long Beach Mtg Co | Commonwealth Title | |
| | | 6/9/2006 | NOTICE OF DEFAULT | | | | Long Beach Mtg Co | LSI Title | |
| | | 9/13/2006 | NOTICE OF DEFAULT | | | | | Title Court | |
| | | 10/3/2006 | FORECLOSURE | | | | | | |
| 2003 | 2440 E Mistletoe Ave | 10/3/2006 | Washington Mutual Bank | California Reconveyance | 199,846 | Cash | | Title Court | |
| | Stockton, CA | 3/27/2007 | Jose Gil | Washington Mutual Bank | 138,000 | 141,642 | Private-John Myrtakis | Fidelity Nat'l Title | |
| | APN 11917014 | 5/22/2003 | I & R Inv Prop LLC | Najman Nisa | 97,000 | 57,000 | Private-Najman Nisa | Alliance Title Co | 2 |
| | | 7/28/2003 | V.Florentino, Beatriz Becerra | I & R Inv Prop LLC | 165,000 | 156,750 | Long Beach Mtg | Commonwealth Title Co | |
| | | 11/15/2005 | Beatriz Becerra | Villalobos Florentino | nominal | 200,000 | Argent Mtg Co | Fidelity Nat'l Title | |
| 2003 | 637 E Jackson Street | 3/7/2003 | Iftikhar Ahmad | Rose Perez | 55,000 | Cash | | Central Valley Title Co | 2 |
| | Stockton, CA | 5/12/2003 | Maria Ochoa | Iftikhar Ahmad | 165,000 | 148,500 | Long Beach Mortgage | Fidelity Nat'l Title | |
| | APN 14727027 | 1/22/2004 | Frank Serna | Maria Ochoa | 178,500 | 142,800 | Long Beach Mortgage | Fidelity Nat'l Title | |
| | | 6/7/2004 | Luis Breseno / Maria Vargas | Frank Serna | 8,500 | Cash | | None listed | |
| | | 3/7/2005 | refi | | | 207,090 | Argent Mtg Co | Fidelity Nat'l Title | |
| 2003 | 1345 E Lindsay Street | 9/9/2002 | Iftikhar Ahmad | Evangeline Arce | 65,000 | Cash | | Alliance Title Company | |
| | Stockton, CA | 10/27/2003 | Ismael Nunez | Iftikhar Ahmad | unknown | 144,400 | New Century Mtg Corp | Commonwealth Title | |
| | APN 15113010 | 6/30/2005 | NOTICE OF DEFAULT | | | | | Title Court | |
| | | 2/7/2007 | NOTICE OF DEFAULT | | | | Bk of NY TR CO | First American Title | |
| | | 5/16/2007 | NOTICE OF DEFAULT | | | | | First American Title | |
| 2003 | 1613 N Alpine Road | 12/27/2002 | Iftikhar Ahmad | Catherine Vargas | 120,000 | 183,600 | Stockton Mgmt & Dev | Old Republic Title | |
| | Stockton, CA | 3/6/2003 | Gary Hanna | Iftikhar Ahmad | unknown | Cash | | unknown | |
| | APN 10114016 | 7/25/2004 | refi | | | 25,000 | Private-Hatterie Trust (2240 W Turner Rd, Lodi) | | |
| | | 1/6/2004 | | | | 260,000 | Private-Thomas Hannelore | | |
| | | 7/15/2004 | Blitz & Kreig Mgmt Co | Gary Hanna | nominal | nominal | | First American Title | |
| | | 9/22/2004 | Gary Hanna | Blitz & Kreig Mgmt Co | unknown | 290,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 10/31/2006 | refi | | | 341,600 | First Bank Mtg | Placer Title | |
| 2003 | 1121 W Downs Street | 12/8/1999 | Iftikhar Ahmad | Washington Mutual Bk | 65,500 | Cash | | Chicago Title | |
| | Stockton, CA | 1/14/2000 | refi | | | 52,000 | Washington Mutual | Chicago Title | |
| | APN 11020421 | 1/14/2000 | refi | | | 68,000 | Option One Mtg | Chicago Title | |
| | | 8/31/2000 | refi | | | 39,561 | Travelers Bk & Trst | Fidelity Nat'l Title | |
| | | 5/23/2003 | Mhmd Malik,Mushtaq Ahmad | Iftikhar Ahmad | nominal | 163,000 | Long Beach Mtg | Alliance Title Co | |
| | | 4/30/2004 | Sophat Sok | Mushtaq Ahmad | 220,000 | 176,000 | Peoples Choice Hm Ln | First American Title | |
| | | 10/20/2005 | Kalina Yann | Sophat Sok | nominal | 270,000 | Long Beach Mtg | Alliance Title Co | |
| | | 4/25/2006 | refi | | | 33,500 | First Magnus Fin Grp | Alliance Title Co | |
| | | 4/25/2006 | refi | | | 288,000 | First Magnus Fin Grp | Alliance Title Co | |

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 2003 | 2064 E 10th Street | 4/17/2003 | Iftikhar Ahmad | Lorelei Tiwana | unknown | Cash | | Alliance Title Co | |
| | Stockton, CA | 6/25/2003 | I & R | Iftikhar Ahmad | | | | Commonwealth Title | |
| | APN 17121007 | 6/26/2003 | Ismael Nunez | I & R | 179,000 | 161,000 | Long Beach Mtg | Commonwealth Title | |
| | | 8/25/2004 | Jorge Perez | Ismael Nunez | 160,000 | | | Commonwealth Title | |
| | | 12/8/2004 | Ismael Nunez | Jorge Perez | nominal | | | | |
| | | 1/26/2005 | Jorge Perez | Erlinda Gutierrez | nominal | | | | |
| | | 1/24/2005 | Jose Vargas | Ismael Nunez | 230,000 | 184,000 | Long Beach Mtg | Alliance Title Co | |
| | | 1/24/2005 | 2nd Mtg | | | 46,000 | Long Beach Mtg | Alliance Title Co | |
| | | 1/26/2005 | Jorge Perez | Erlinda Gutierrez | nominal | | | | |
| | | 4/20/2006 | refi | | | 45,000 | Lending Center | North American Title | |
| | | 4/20/2006 | refi | | | 240,000 | Lending Center | North American Title | |
| 2003 | 102 Adrienne Avenue | 2/25/2003 | Iftikhar Ahmad | Paulina Diaz | 100,000 | Cash | | Financial Title | |
| | Stockton, CA | 5/12/2003 | Cuahutemoc Magana | Iftikhar Ahmad | unknown | 152,000 | Long Beach Mtg | Alliance Title Co | |
| | APN 15916015 | 6/9/2005 | refi | | | 192,000 | SCME Mtg Bankers | North American Title | |
| | | 6/8/2007 | refi | | | 256,000 | BankUnited FSB | North American Title | |
| 2003 | 1101 Wrangler Circle | 7/21/2003 | Iftikhar Ahmad | Lonnis Daniels | 155,500 | Cash | | Old Republic Title | |
| | Stockton, CA | 7/21/2003 | I&R | Iftikhar Ahmad | | | | Old Republic Title | |
| | APN 08807027 | 12/24/2003 | Bettye Simmons | I&R | unknown | 184,500 | Finance America LLC | Alliance Title Company | |
| | | 8/23/2006 | refi | | | 301,500 | Home123 Corp | Stewart Title | |
| 2003 | 7903 S Harlan Road | 8/21/2003 | I & R | Beatrice Fernandez | unknown | Cash | | Commonwealth Title | |
| | French Camp, CA | 8/21/2003 | Gonzalo Zavala | I & R | 225,000 | 202,500 | Long Beach Mtg | Commonwealth Title | |
| | APN 19316013 | 3/2/2005 | Manuel & Maria Diaz | Gonzalo Zavala | 265,000 | 251,750 | Wells Fargo Bank | Placer Title Co | |
| | | 9/25/2006 | refi | | | 276,500 | Wells Fargo Bank | North American Title | |
| 2003 | 1125 N Pilgrim Street | 10/23/2003 | I & R | Mohammad Zaman | unknown | Cash | | Commonwealth Title | |
| | Stockton, CA | 10/31/2003 | Malik Maskin | I & R | 165,000 | 156,750 | New Century Mtg Corp | Commonwealth Title | |
| | APN 15103112 | 2/3/2006 | refi | | | 116,000 | Bank of America | Placer Title Co | |
| | | 9/14/2006 | refi | | | 100,000 | Bank of America | Custom Recording | |
| 2003 | 3821 Dayton Street | 5/23/2002 | Iftikhar Ahmad | Unknown | 60,000 | unknown | | | |
| | Sacramento, CA | 2/6/2003 | Sylvia Jawwad | Iftikhar Ahmad | 180,000 | 162,000 | Long Beach Mtg | Chicago Title Co | 8 |
| | APN 25200810080000 | 11/23/2004 | William Jackson | Sylvia Jawwad | 190,000 | Cash | | Chicago Title Co | |

Page 12

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | | 7/18/2005 | refi-Const Ln | | | 84,000 | Private-Michael Samson | Alliance Title | |
| | | 1/10/2006 | refi | | | 361,250 | BNC Mtg | unknown | |
| 2003 | 1638 Rosalind Street, Sacramento, CA APN 251023000600000 | 11/16/2002 | Iftikhar Ahmad | Stephen Nielsen | 45,000 | unknown | | unknown Chicago Title | |
| **2003** | **Properties sold by Iftikhar Ahmad** | | | | | | | | |
| 2004 | 2215 E Vine Street, Stockton, CA APN 14119219 | 7/21/2003 | Ghulam Hussain | Jerry Wallis | 89,000 | 84,550 | Long Beach Mtg | First American Title | |
| | | 12/18/2003 | I & R | Ghulam Hussain | 89,000 | Cash | | Fidelity Nat'l Title | 3 |
| | | 2/19/2004 | Gilberto Rosas | I & R | 157,000 | 144,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 9/30/2005 | Maria Rodriguez et al | Gilberto Rosas | 260,000 | 208,000 | Long Beach Mtg | Chicago Title | |
| 2004 | 952 N Solari Avenue, Stockton, CA APN 14105011 | 12/2/2003 | I & R | Julian Girouard | 86,500 | Cash | | Chicago Title | 10 |
| | | 9/30/2004 | Manpreet Singh | I & R | 235,000 | 188,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| 2004 | 2630 S Lincoln Street, Stockton, CA APN 16530219 | 7/26/2004 | I & R Inv Prop LLC | Tariq Din | 110,000 | Cash | | Fidelity Nat'l Title | 3 |
| | | 10/26/2004 | Salvador Chavez | I & R Inv Prop LLC | 220,000 | 180,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 12/20/2005 | Juan Serrano/Salvador Chavez | Salvador Chavez | nominal | unk | N/A | Alliance Title | |
| | | 1/26/2007 | Juan Serrano/Salvador Chavez | Jose Martinez | nominal | unk | N/A | Fidelity Nat'l Title | |
| | | 2/23/2007 | Salvador Chavez | Juan Serrano | 243,000 | 243,000 | New Century Mort. Corp | Fidelity Nat'l Title | |
| 2004 | 1527 E Channel, Stockton, CA APN 15303027 | 9/26/2003 | Iftikhar Ahmad | Gerald Ford | 55,000 | Cash | | Alliance Title | 15 |
| | | 12/18/2003 | I & R | Iftikhar Ahmad | | | | | |
| | | 12/25/2004 | Jose Castillo | I & R | 155,000 | | unknown | Fidelity Nat'l Title | |
| | | 5/6/2005 | Jose Castillo/Yuren Ramirez | Jose/Erica Castillo | | 180,000(refi) | Fremont Invsmnt & Loan | First American Title | |
| | | 3/31/2006 | Jose Castillo/Yuren Ramirez | Jose/Erica Castillo | | 196,000 (refi) | HCI West (private individ.) | First American Title | |
| | | 4/3/2006 | Jose Castillo/Yuren Ramirez | unknown | | 49,000 | HCI West (private individ.) | First American Title | |
| | | 2/5/2007 | Yuren Ramirez | Jose Castillo | Nominal | N/A | N/A | | |
| | | 3/12/2007 | NOTICE OF DEFAULT | | | | | | |
| | | 6/15/2007 | NOTICE OF DEFAULT | | | | | | |
| | | 7/9/2007 | HSBC Mort. Services Inc | Housekey Fin. Group | 148,085 | unk | unk | Title Court | |
| 2004 | 1825 E Flora Street, Stockton, CA APN 14108506 | 6/22/2004 | I & R Inv Prop LLC | Mhmd Sualeheen | 105,000 | Cash | | Chicago Title Co | 3.5 |
| | | 10/5/2004 | Erick Lopez | I & R Inv Prop LLC | 192,000 | 153,600 | RBC Mtg Co | Fidelity Nat'l Title | |
| | | 8/26/2005 | Erick Lopez | refi | 217,800 | 217,800 | Sunset Mort. Co. LP | Financial Title | |

# Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | | | Erick Lopez | refi | 220,000 | 220,000 | Dollar Mort. Co. | Chicago Title Co | |
| 2004 | 120 W Jefferson | 12/9/2003 | I & R Inv Prop LLC | Charles Feldman | 130,000 | Cash | | Fidelity Nat'l Title | 11 |
| | Stockton, CA | 11/10/2004 | Yolanda Soriano | I & R Inv Prop LLC | 247,000 | 199,200 | Long Beach Mtg | Fidelity Nat'l Title | |
| | APN 14709604 | 12/7/2005 | Jose/Yolanda Soriano | refi (second mort.) | | 99,000 | Bank of America | integrated Loan Services | |
| | | 6/29/2006 | Jose E Tierrablanca | Yolonda Soriano | 387,000 | 303,960 | New Century Mort. Corp | Financial Title | |
| | | 9/19/2006 | Jose E Tierrablanca et al | Jose E Tierrablanca | Nominal | N/A | N/A | unknown | |
| 2004 | 2223 Mistletoe Avenue | 8/16/2004 | I & R Inv Prop LLC | James Tornasi | 115,000 | Cash | | Old Republic Title | 3 |
| | Stockton, CA | 11/16/2004 | Roberto Ortiz Alfaro | I & R Inv Prop LLC | 230,000 | 184,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | APN 11904115 | 5/18/2005 | NOTICE OF DEFAULT | | | | | | |
| | | 10/27/2005 | NOTICE OF DEFAULT | | | | | | |
| | | 2/3/2006 | NOTICE OF DEFAULT | | | | | | |
| **2005 - Properties sold by Iftikhar Ahmad** | | | | | | | | | |
| 2005 | 1721 E Scotts Avenue | 1/13/2005 | I & R | Jeffrey Rich | 225,000 | Cash | | Fidelity Nat'l Title | 4 |
| | Stockton, CA | 5/9/2005 | Esmeralda Romero | I & R | 375,000 | 337,500 | Long Beach Mtg | First American Title | |
| | APN 15506038 | | | | | | | | |
| 2005 | 727 E Clay St | 1/11/2005 | I & R | Hugo Sleven | 270,000 | Cash | | Fidelity Nat'l Title | 8 |
| | Stockton, CA | 9/8/2005 | Theya Kanagaratham | I & R | unknown | 344,000 | SCME Mtg Brokers | Alliance Title | |
| | APN 14734212 | | | | | | | | |
| 2005 | 4732 E Washington St | 2/7/2005 | I & R | Mary Zamora | 155,000 | Cash | | Chicago Title Co | 2.5 |
| | Stockton, CA | 4/29/2005 | Elias Corona | I & R | 213,000 | 170,400 | Encore Credit Corp | Placer Title Co | |
| | APN 16904404 | 4/29/2005 | 2nd Mtg | | | 42,600 | Encore Credit Corp | Placer Title Co | |
| | | 6/24/2005 | Erasmo Corona | Elias Corona | nominal | | | Placer Title Co | |
| | | 5/23/2007 | refi | | | 220,000 | Saxon Mtg | | |
| 2005 | 3416 Sierra Madre Ave | 9/1/1998 | Iftikhar Ahmad | Jean Fenner | 42,000 | 31,500 | North American Mtg Co | Central Valley Title Co | 6.5 years |
| | Stockton, CA | 5/26/1999 | refi | | | 138,400 | Beneficial CA | Fidelity Nat'l Title | |
| | APN 11533046 | 10/25/2004 | NOTICE OF DEFAULT | | | | | | |

Page 14

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | **Properties sold by Iftikhar Ahmad** | | | | | | | | |
| | (owner occupied by Ilyas Ahmad) | 2/10/2005 | I & R | Iftikhar Ahmad | | | | | |
| | | 2/2/2005 | Esmeralda Romero | I & R | 280,000 | 224,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | | Esmeralda Romero | | 280,000 | Cash | | First American Title | |
| | | 9/15/2005 | Ilyas Ahmad | Esmeralda Romero | | 32,500 | Amer Brokers Conduit | Chicago Title Co | |
| | | 5/24/2006 | refi | | | 32,500 | Amer Brokers Conduit | Chicago Title Co | |
| | | 5/24/2006 | refi | | | 260,000 | Amer Brokers Conduit | Chicago Title Co | |
| 2005 | 4 W Rose Street | 7/30/2004 | I & R Inv Prop LLC | Alan Litz | 270,000 | Cash | | Fidelity Nat'l Title | |
| | Stockton, CA | 9/15/2004 | refi | | | 160,000 | Stockton Mgmt & Dev | Alliance Title Co | |
| | APN 13712405 | 7/26/2005 | Kevin Doyle et al | I & R Inv Prop LLC | unknown | 376,000 | Paul Fin'l LLC | Alliance Title Co | |
| | | 7/26/2005 | 2nd Mtg | | | 47,000 | Paul Fin'l LLC | Alliance Title Co | |
| | | 2/9/2007 | Kevin Doyle et al | Kevin Doyle | | 400,000 | LOANCITY | Old Republic | |
| 2005 | 1519 S Aurora Street | 5/3/2005 | I & R | Mary Regalado | unknown | Cash | | Alliance Title Co | |
| | Stockton, CA | 8/24/2005 | Alfonso Ramirez | I & R | 270,000 | 216,000 | Long Beach Mtg | Alliance Title Co | |
| | APN 16718210 | 8/24/2005 | 2nd Mtg | | | 54,000 | Long Beach Mtg | Fidelity Nat'l Title | |
| | | 3/27/2006 | NOTICE OF DEFAULT | | | | Long Beach Mtg | Title Court Service | |
| | | 8/1/2006 | NOTICE OF DEFAULT | | | | EMC Mtg Corp | LSI Title Co | |
| | | 11/2/2006 | NOTICE OF DEFAULT | | | | | Title Court Service | |
| | | 11/28/2006 | FORCLOSURE | Cal-Western Reconvey | 204,000 | | | Title Court Service | |
| | | 11/28/2006 | EMC Mtg Corp | | | | | | |
| | **2006 - Properties sold by Iftikhar Ahmad** | | | | | | | | |
| 2006 | 1844 E 12th Street | 3/27/2006 | I & R | Anatolia Pena | 50,000 | Cash | | Fidelity Nat'l Title | 1 |
| | Stockton, CA | 4/21/2006 | Jimmy Naidu | I & R | 125,000 | Cash | | Fidelity Nat'l Title | |
| | APN 17117017 | | | | | | | | |
| 2006 | 2228 E Stadium Drive | 9/14/2004 | I & R | Guillermo Zapata | 99,000 | Cash | | Old Republic Title | 18 |
| | Stockton, CA | 10/11/2004 | I & R Inv Prop LLC | I & R | nominal | 146,250 | Stockton Mgmt & Dev | Old Republic Title | |
| | APN 11903204 | 1/10/2006 | NOTICE OF DEFAULT | | | | Stockton Mgmt & Dev | | |
| | | 3/8/2006 | Ilyas Ahmad | I & R Inv Prop LLC | 330,000 | 264,000 | Cit Grp/Consumer Fin | Alliance Title Co | |
| | | 10/24/2006 | Eduardo Rodriguez | Ilyas Ahmad | 350,000 | 280,000 | Decision One Mtg | Alliance Title Co | |
| | | 10/24/2006 | 2nd Mtg | | | 70,000 | Decision One Mtg | Alliance Title Co | |
| 2006 | 841 San Juan Avenue | 6/1/2006 | I & R | Anatolia Pena | 150,000 | 177,400 | Stockton Mgmt & Dev | Fidelity Nat'l Title | 4 |
| | Stockton, CA | 10/4/2006 | Oscar Rivera | I & R | 310,000 | 294,500 | Fremont Invs & Ln | Fidelity Nat'l Title | |
| | APN 13336016 | | | | | | | | |
| 2006 | 921 S San Joaquin St | 6/1/2006 | I & R | Anatolia Pena | 198,000 | 128,700 | Stockton Mgmt & Dev | Fidelity Nat'l Title | |
| | Stockton, CA | 12/19/2006 | Israel Rivera | I & R | 490,000 | 392,000 | New Century Mtg | Alliance Title | |

Page 15

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| | APN 14721209 | | | | | | | | |
| 2006 | 35 N Airport Way | 4/10/2006 | I & R | Anatolia Pena | 180,000 | 95,000 | Certified Capital Corp | Fidelity Nat'l Title | |
| | Stockton, CA | 11/15/2006 | Eduardo Rodriguez | | 410,000 | 328,000 | Washington Mutual | Alliance Title | |
| | APN 15120506 | | | | | | | | |
| 2006 | 350 S Oro Avenue | 4/10/2006 | I & R | Anatolia Pena | 170,000 | 90,000 | Certified Capital Corp | Fidelity Nat'l Title | |
| | Stockton, CA | 8/30/2006 | Oscar Rivera | I & R | 331,000 | 264,800 | Americas Wholesale | Fidelity Nat'l Title | |
| | APN 15732215 | | | | | | | | |
| 2006 | 1979 N Sunset Ave | 7/6/2006 | I & R | Donald Croy | 182,000 | 232,500 | Stockton Mgmt & Dev | Placer Title Co | 3 |
| | Stockton, CA | 10/27/2006 | Eduardo Rodriguez | I & R | 315,000 | 252,000 | First Nat'l Lndg Svcs | Alliance Title | |
| | APN 11921012 | | | | | | | | |
| 2006 | 2952 N F Street | 4/10/2006 | I & R | Anatolia Pena | 190,000 | 100,000 | Capital Corp PSP | Fidelity Title | |
| | Stockton, CA | 11/30/2006 | Oscar Rivera | I & R | 435,000 | 391,500 | New Century Mtg | Alliance Title Co | |
| | APN 11917003 | | | | | | | | |
| 2006 | 927 S Grant | 5/25/2006 | I & R | Anatolia Pena | 65,000 | cash | | Fidelity Title | |
| | Stockton, CA | 8/16/2006 | Stocktonians Taking Action | I & R | 110,000 | 1,500,000 | Guaranty Bank | Alliance Title | |
| | APN 14729508 | 3/2/2007 | refi | | | 500,000 | Catholic Healthcare West | Old Republic Title | |
| 2006 | 7087 E Highway 26 | 12/1/2004 | Park Center Exchange | Joseph Nomellini | 450,000 | Cash | | Chicago Title | |
| | Stockton, CA | 1/18/2005 | Armando Soto | Park Center Exchange | 450,000 | 360,000 | Long Beach Mtg | Chicago Title | |
| | APN 10113062 | 7/2/2005 | NOTICE OF DEFAULT | | | | Stockton Mtg | | |
| | | 2/28/2005 | I & R | Armando Soto | unknown | unknown | | Alliance Title Co | |
| | | 4/10/2006 | Illyas Ahmad | I & R | 650,000 | 520,000 | WMC Mtg Corp | Alliance Title Co | |
| | | 8/15/2006 | Israel Rivera | Illyas Ahmad | 730,000 | 584,000 | Decision One Mtg | Alliance Title Co | |
| | | 8/15/2006 | 2nd Mtg | | | 146,000 | Decision One Mtg | Alliance Title Co | |
| **2007** | **Properties sold by Iftikhar Ahmad** | | | | | | | | |
| 2007 | 1971 N Sunset Ave | 10/30/2006 | I & R | Nancy Croy | 158,000 | Cash | | Placer Title Co | |
| | Stockton, CA | 12/6/2006 | refi | | | 186,000 | Stockton Mgmt & Dev | Placer Title Co | |
| | APN 11921013 | 2/14/2007 | Eduardo Rodriguez | I & R | 322,000 | 305,900 | New Century Mtg | Alliance Title | |
| 2007 | 54 W 9th Street | 2/14/2007 | I & R | Pena A Q & A C Family | 230,000 | cash | | Placer Title Co | 4 |
| | Stockton, CA | 6/12/2007 | Israel Rivera | I & R | 330,000 | 313,500 | Wash Mutual Bk FA | Alliance Title Co | |
| | APN 16536018 | | | | | | | | |

## Properties purchased and sold by IFTIKHAR AHMAD and I & R

| Year Sold | Property address | Date Purch or Sold | Purchaser | Seller | Amount | Loan Amount | Lender | Title Company | Length of ownership by Iftikhar Ahmad (mos) |
|---|---|---|---|---|---|---|---|---|---|
| 2007 | 120 W Vine Street Stockton, CA APN 13712105 | 5/16/2007 5/16/2007 | I & R Ilyas Ahmad, Afsar Khan | Shakil Khan I & R | unknown 500,000 | 393,750 139,000 | Stockton Mtg Other Misc loans | Placer Title | |
| **Current Properties owned by Iftikhar Ahmad or relative** | | | | | | | | | |
| Curr Ilyas | 1506 E Mariposa Road Stockton, CA APN 17302012 | 5/18/2005 1/27/2006 1/27/2006 | I & R Ilyas Ahmad | Chandra Family Trust I & R | 1,301,500 | 745,000 1,500,000 1,100,000 | Ronald & Deb Jacobs Omni Financial LLC Other Lenders-I & R | Chicago Title Co Alliance Title Co Alliance Title Co | 7 |
| | | | | | | $2.6M loans on property | | | |
| | | 6/22/2007 | NOTICE OF DEFAULT | | | | Federal Home Loans | Service Link | |
| Curr | 1031 S. Sinclair Stockton, CA APN 15728308 | 2/13/2007 | I & R | M & S Real Estate–Subladan | 244,000 | cash | | Placer Title Co | |
| Curr | 1028 S Sinclair Ave Stockton, CA APN 15908115 | 2/13/2007 | I & R | M & S Real Estate | 319,000 | cash | | Placer Title Co | |
| Curr | 311 S Laurel Ave Stockton, CA APN 15521016 | 8/2/2006 | I & R | Terry McClellan | unknown | 105,000 | Stockton Mgmt & Dev | Alliance Title Co | |
| Curr | 726 Howard St Stockton, CA APN 16318054 | 6/22/2007 | I & R | Pena Anatolia '06 Trust | 281,500 | 213,250 | Stockton Mgmt & Dev | Placer Title Co | |
| Curr | 2145 S Stockton St Stockton, CA APN 16315018 | 6/22/2007 | I & R | Pena Anatolia '06 Trust | 287,500 | 221,250 | Stockton Mgmt & Dev | Placer Title Co | |

**\* Property was purchased and sold more than once by Iftikhar Ahmad.**

Page 17