JOHN M RUNFOLA SBN 96058
Attorney at Law
Pier 9, Suite 100
San Francisco, California 94111
Telephone: (415) 391-4243
Facsimile: (415) 391-5161
email: jrunfola@earthlink.net

Attorney for Defendant
IFTIKHAR AHMAD

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:07CR00386-01 |
| Plaintiff, | |
| vs. | DEFENDANT'S SENTENCING MEMORANDUM |
| IFTIKHAR AHMAD, | |
| Defendant. | |

## I. INTRODUCTION

Pursuant to a "cooperation" Plea Agreement, Iftikhar Ahmad (Ahmad) entered a plea of guilty to a violation of Title 18 USC 1341, Mail Fraud, and a violation of Title 18 USC 1957, Money Laundering. The United States Probation Office has prepared a Presentence Report (PSR) and concluded that the advisory United States Sentencing Guideline (USSG) in this case is Total Offense Level 22, Criminal History Category I.[1] Mr. Ahmad has no formal objection to the PSR.

Mr. Ahmad comes now before the Court requesting that the Court consider the nature of his offense behavior, his early cooperation with authorities, and his considerable family responsibilities, and impose a sentence of imprisonment of one year and one day, to be followed by a term of

---

[1] Mr. Ahmad had objected to the preliminary PSR's role in the offense upward adjustment of four levels (USSG 3B1.1(a)), requesting that just two levels be assessed. The final PSR compromises and recommends a three level upward adjustment. As the Level 22 and Level 21 overlap, Mr. Ahmad does not file a formal objection.

**DEFENDANT'S SENTENCING MEMORANDUM [2:07CR00386-01]**              **1**

supervised release conditioned upon the payment of the recommended restitution, which is a sentence that is a variance from the advisory Guideline.

## II. BACKGROUND

Iftikhar Ahmad is the youngest of six children of a Pakistani family. His father first migrated to the United States in 1921, before India and Pakistan divided into two countries. Ahmad's father was a farm laborer, a street food vendor, and hotel worker in Sacramento for many years. He became a United States citizen. He made periodic trips to Pakistan, married Ahmad's mother, a woman much younger than he. Ahmad was six months old when his father died. Ahmad's older siblings began the migration to the United States in 1976, when his older brother first moved here. The family settled in the Stockton area and more siblings followed. Ahmad came to the U.S. in 1984 at age 13, speaking no English.

After attending English as a Second Language classes in middle school, Ahmad entered Tokay High School in Stockton. He continued his ESL classes and graduated in 1988. While attending high school, Ahmad worked in restaurants and did summer farm labor and cannery work to help provide for his mother and siblings. After graduation from high school, he began working with his brother at the Imperial Hotel in Stockton, a family business.

In 1993, Ahmad married Rayhana Sultana Malik in an arranged marriage. Rayhana was born in England. Rayhana's and Ahmad's families knew one another. Rayhana has become a United States citizen. The Ahmad's have five children, ages 1 to 14. Their oldest child is a high school student, was born with a birth defect in her right arm, and has undergone several corrective surgeries.[2] The Ahmad's have a very traditional marriage. Rayhana stays home, cares for the children and the household, and does not even drive an automobile. Ahmad alone provides economically for the family.

Ahmad began his involvement with real estate transactions in 1998. He began by purchasing

---

[2] On August 16, 2007, Ahmad was arrested by agents at the hospital in Stockton, where Ahmad was waiting with his wife during one of his daughter's surgeries.

**DEFENDANT'S SENTENCING MEMORANDUM [2:07CR00386-01]**                     **2**

low cost houses that were in need of considerable repair. They were distressed properties that Stockton city officials deemed a blight. Ahmad bought the properties, one by one, performed all of the rehabilitation construction work himself, and then resold the properties for a profit. Two factors contributed to the success of his transactions: 1) Ahmad's hard work landscaping, repairing walls, ceilings, bathrooms, and kitchens, and 2) the beginning of the California real estate boom. As Ahmad repaired and sold property after property, he was told by city inspectors that he was performing a considerable community service. For the most part, the properties Ahmad worked on were sold to primarily lower income purchasers. However, there came a time when that changed.

Some time in 2001, the sale of one of Ahmad's rehabilitated properties was financed by Long Beach Savings and Loan through loan officer William Bridges. A second loan was then processed through Bridges. At that time, Ahmad was contacted by Bill Bridges, who told Ahmad that he was capable of processing more loans at attractive rates. Bridges encouraged Ahmad to sell more properties and stated that any loan applicants Ahmad sent his way would be approved. Bridges also told Ahmad to send anyone he could to Bridges for loans. He then instructed Ahmad in the ways of applying for loans using "straw buyers" and by providing down payments for properties. Volume was the goal of Bridges and he encouraged Ahmad to apply as often as he could. Ahmad, foolishly, took this instruction. Clearly, Bridges, a graduate of the University of Southern California and an experienced loan broker, had far more sophistication and experience than Ahmad. Ahmad had been doing well in his modest process of buying, rehabilitating, and reselling properties. His association with Bill Bridges, however, resulted in Ahmad making bad judgments and moving into illegal behavior.

Ahmad has fully acknowledged his wrongdoing. At the time of his arrest, he admitted his actions and pledged to assist the agents. Through counsel, he later entered into a formal cooperation agreement, the results of which will be presented to the Court by the United States Attorney.

Ahmad's arrest and prosecution has been devastating to him. He accepts that it was his actions, albeit at the entreaty of Bill Bridges, that has caused his present dilemma. However, it is

**DEFENDANT'S SENTENCING MEMORANDUM [2:07CR00386-01]**                3

important to note that Ahmad's family has experienced financial ruin. Ahmad has suffered greatly from depression as noted in the PSR (¶ 64) and is struggling to cope. His family will also suffer tremendously in his absence.

### III. APPLICABLE SENTENCING LAW

The landmark decision in *United States v. Booker*, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), changed sentencing in the Federal Courts. ***Booker*** renders the Guidelines as advisory only, and instructs the sentencing courts to consider the Guidelines in context of all of those factors enumerated in Title 18 USC 3553(a). The Court found that the mandatory application of the Guidelines was unconstitutional. In the ***Booker*** Remedy Opinion, the Court stated:

> "We answer the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. 3553(b)(1) (Supp. 2004), incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section, 3742(e) (main ed. And Supp. 2004), which depends upon the Guidelines mandatory nature. So modified, the Federal Sentencing Act, See Sentencing Reform Act of 1984, as amended, 18 U.S.C. 3551 *et seq*., 28 U.S.C. 991 *et seq*., makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see 3553(a) (Supp. 2004)." At 651.

Further, with respect to appellate review of sentencing decisions, the Court stated:

> "We infer appropriate review standards from related statutory language, the structure of the statute, and the 'sound administration of justice.' And in this instance those factors, in addition to the past two decades of appellate practice in cases involving departures, imply a practical standard of review already familiar to appellate courts: review for 'unreasonableness.'"

> . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." ***Booker***, at 660-661.

The Supreme Court addressed the issue of the "presumption of reasonableness" of a within Guidelines sentence in ***Rita v. United States***, 127 U.S. 2456, 168 L.Ed. 2d 203 (2007) and instructed that a within Guideline sentence is presumed reasonable only upon **appellate review**. The Court stated:

> "We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on

**DEFENDANT'S SENTENCING
MEMORANDUM [2:07CR00386-01]**                               **4**

appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. *18 U.S.C. § 3552(a); Fed. Rule Crim. Proc. 32.* He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines, to apply, *USSG § 5K2.0*, perhaps because the Guidelines sentence itself fails properly to reflect *§ 3553(a)* considerations, or perhaps because the case warrants a different sentence regardless. See *Rule 32(f)*. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See *Rules 32(f), (h), (i)(1)(C)* and *(i)(1)(D)*, see also *Burns v. United States, 501 U.S. 129, 136, 111 S. Ct. 2182, 115 L.Ed. 2d 123 (1991)* (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker, 543 U.S. at 259-260, 125 S.Ct. 738, 160 L. Ed. 2d 621.*" at 214.

Further, the Court instructed:

"The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that the appellate courts may not presume that every variance from the advisory Guidelines is unreasonable." at 216.

In ***Nelson v. United States***, 129 S.Ct. 890, 892 (2009), 172 L.Ed. 2d 719, as a reminder and perhaps for emphasis, the court stated:

"Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."

The Ninth Circuit was heard on the presumption of reasonableness and directs:

". . . A court of appeals may *not* presume that a non-Guidelines sentence is *un*reasonable. Although a court may presume on appeal that a sentence within the Guidelines range is reasonable, *id*, we decline to adopt such a presumption in this circuit." ***United States v. Carty***, 520 F.3d 984, 993 (9th Cir. 2008).

The Supreme Court has now articulated the process by which sentencing and appellate courts must implement the findings in ***Booker***, including the admonition of ***Rita***. The court has directed:

"As we explained in ***Rita***, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. . . . He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must

**DEFENDANT'S SENTENCING MEMORANDUM [2:07CR00386-01]**                         5

consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

. . . Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. . . . But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." **Gall v. United States**, 128 S.Ct. 586, 596-597, 169 L. Ed. 2d 445 (2007) (citations and footnotes omitted).

Before **Gall** and **Rita**, the 9th Circuit anticipated their instructions. It directed the sentencing court to accurately calculate the Guidelines, it may then determine if there are any justifiable departures from the Guidelines, and then consider the Guidelines as but one factor among all of the factors outlined in Title 18 USC 3553(a), to reach a reasonable sentence. **United States v. Menyweather**, 431 F.3d 692, 696 (9th Cir. 2005), reprinted as amended at 447 F.3d 625, 630 (9th Cir. 2006). See, also, **Carty**, *id* at 991-994. A formal determination of "departures," as required under a mandatory guideline system, may be both redundant or unnecessary, under a unitary determination of reasonableness of a sentence.[3] A determination of an allowable departure under the pre-**Booker** regime, however, may inform the court of the reasonableness of a sentence. **United States v. Mohamed**, 459 F.3d 979, 986-87 (9th Cir. 2006). See, also, **United States v. Cantrell**, 433 F.3d 1269, 1279 (9th Cir. 2006) (the district court is to first calculate the Guidelines accurately and then examine

---

[3] "The system of downward departures that still guides the sentencing court's determination of the Guidelines-recommended range as required under § 3553(a)(4) does not preclude the court's discretion to consider other § 3553(a) factors. . . . Just because a consideration was improper under the mandatory Guidelines regime does not mean that it is necessarily improper under the advisory Guidelines regime." **United States v. Garcia**, 497 F.3d 964, 971-72 (9th Cir. 2007).

**DEFENDANT'S SENTENCING MEMORANDUM [2:07CR00386-01]**                                    6

the sentence for reasonableness in light of 18 USC 3553(a)). Further, the court said, "An error in determining the Guidelines range, or in understanding the authority to depart from that range, can prevent district courts from properly considering the Guidelines." ***Menyweather***, *id*, at 630.

The Court must now consider 18 USC 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The court, in determining the particular sentence to be imposed, shall consider –

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed --

   (a) to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

   (b) to afford adequate deterrence to criminal conduct;

   (c) to protect the public from further crimes of the defendant; and

   (d) to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner;

The sentencing court is now required to consider factors that the Guidelines effectively prohibited from consideration (ie: Age, USSG 5H1.1; Education and Vocational Skills, USSG 5H1.2; Mental and Emotional Condition, USSG 5H1.3; Physical Condition Including Drug or Alcohol Dependence, USSG 5H1.4; Employment, USSG 5H1.5; Family Ties and Responsibilities, USSG 5H1.6; Socio-economic Status, USSG 5H1.10; Civic and Military Contributions, USSG 5H1.11; and Lack of Youthful Guidance, USSG 5H1.12.). ***United States v. Ameline***, 409 F.3d 1073, 1093 (9th Cir. 2005) (*en banc*). To consider the "history and characteristics of the defendant," the Court must now consider factors the Guidelines eschewed.

The Supreme Court has also cautioned that respect for the law is promoted in many ways, not always measured by the strictness of sentences or the nature of harsh sanctions. The Court stated:

> ". . . Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." ***Gall***, *id.*, at 599.

**DEFENDANT'S SENTENCING**
**MEMORANDUM [2:07CR00386-01]**                                7

In order to meet the mandate of the ***Booker*** remedy, then, this court must calculate the appropriate guidelines range and may consider appropriate departures. It must also apply the 3553(a) factors and address any other specific characteristics of the defendant or his offense that might impact the determination of a "reasonable" sentence under the particular circumstances of this case. The district court's sentencing decision will then be subject to an abuse-of-discretion review by the circuit.

Substantial assistance departures post-***Booker*** have changed to the extent that the Court may now consider such departures in fashioning a "reasonable" sentence. ***United States v. Mohamed***, 459 F.3d 979, 986 (9th Cir. 2006) (scheme of upward or downward departures is now replaced by a "reasonable sentence" standard.). However, it is clear that post-***Booker***, a government motion under Title 18 USC 3553(e) is still necessary in order to sentence below a statutory mandatory minimum sentence. ***Melendez v. United States***, 518 U.S. 120, 116 S.Ct. 2057, 135 L.Ed. 2d 427 (1996), ***United States v. Working***, 224 F.3d 1093 (9th Cir. 2000). Once the Court is enabled to go below a statutory minimum sentence, substantial assistance can be considered along with all other factors enumerated under Title 18 USC 3553(a). ***United States v. Zolp***, 479 F.3d 715 (9th Cir. 2007).

The Court is then empowered, indeed directed, to consider all of the factors related to the defendant's circumstances, his offense, and his cooperation, in fashioning a sentence that is "reasonable." The Court must reach its own conclusions about any departure and its extent and is not bound by the recommendation of the government, once a substantial assistance departure motion has been filed. ***United States v. Udo***, 963 F.2d 1318 (9th Cir. 1992).

### IV. A REASONABLE SENTENCE

In order to fashion a sentence that is "sufficient, but not greater than necessary" to fulfill the mandate of 18 USC 3553(b), it is requested that the Court consider that Iftikhar Ahmad would clearly not be involved in this offense had it not been for his unfortunate encounter with Bill Bridges, who was clearly the "mastermind" in developing this scheme and far more sophisticated, educated, and experienced than Ahmad. Up until that time, Ahmad was engaged in legitimate hard work

**DEFENDANT'S SENTENCING**
**MEMORANDUM [2:07CR00386-01]**                                    **8**

rehabilitating and selling properties. His work was consistent with his limited education. His modest success was due to his labor and the fortuitous escalation of real estate values in California, including Stockton. Bridges had other ideas and Ahmad succumbed to the profits he gained by participating. He is paying a significant price for his bad decisions, decisions for which he knows that he alone is responsible.

After his arrest, Ahmad made the decision to be honest with authorities and then entered into a cooperation agreement. He has been consistently honest during debriefings and his assistance to the Government has aided in the prosecution of others, including Bill Bridges.

Ahmad's family circumstances are compelling. He has a large very young family that is dependent upon him for economic survival. His wife does not work outside the home, as her responsibilities to the five children are significant. She does not drive and occupies a very traditional role in the marriage. Ahmad does not request that he avoid punishment because of his family responsibilities, but only requests that the impact on his family be minimized.

Mandatory restitution applies in this case and Ahmad intends to fulfill his obligation to Long Beach Savings and Loan by repaying to the best of his ability. Certainly, his ability to work will contribute to his ability to repay Long Beach Savings and Loan. As soon as he can return to productive endeavors he will be able to make restitution.

For all of the above reasons, 1) the manner in which he became involved in this offense and the clearly mores sophisticated nature of the person who initiated this illegal activity, 2) Ahmad's substantial assistance to the Government, and 3) his extraordinary family responsibilities, it is respectfully requested that the Court sentence Iftikhar Ahmad to one year and one day of imprisonment, to be followed by a term of supervised release conditioned upon the payment of restitution.

Respectfully submitted,

/s/*John M. Runfola*

John M. Runfola
Attorney for Defendant IFTIKHAR AHMAD

**DEFENDANT'S SENTENCING MEMORANDUM [2:07CR00386-01]**               9